**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF WISCONSIN**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>     Plaintiff,<br><br>     v.<br><br>CITY OF MILWAUKEE; CAVALIER JOHNSON, Mayor of Milwaukee, in his official capacity; EVAN GOYKE, City Attorney of Milwaukee, in his official capacity; JEFFREY NORMAN, Chief of Police, Milwaukee Police Department, in his official capacity,<br><br>     Defendants. | No. 26-cv-1293<br><br>**COMPLAINT** |

Plaintiff, the United States of America, by and through its undersigned counsel, brings this civil action for declaratory and injunctive relief, and alleges as follows:

**<u>INTRODUCTION</u>**

1.     For centuries, the Supreme Court has reaffirmed that States have no authority whatsoever to regulate the Federal Government. *United States v. Washington*, 596 U.S. 832, 838 (2022) (The Supremacy Clause "prohibit[s] state laws that *either* 'regulat[e] the United States directly *or* discriminat[e] against the Federal Government . . . .'"); *Mayo v. United States*, 319 U.S. 441, 445 (1943) (The Supremacy Clause renders "the activities of the Federal Government . . . free from regulation by any state."); *McCulloch v. Maryland*, 17 U.S. (4 Wheat.) 316, 427 (1819). A state law that directly regulates the Federal Government is invalid. *See Mayo*, 319 U.S. at 445.

2.     Despite that well-established principle, Milwaukee recently enacted an ordinance that purports to do exactly what constitutional law says it cannot: regulate how federal law enforcement officers carry out their official duties in that City.

1

3. Specifically, on April 21, 2026, the Common Council of the City of Milwaukee passed Common Council File No. 251797 (hereinafter the "Ordinance" or "Section 105-140"), which is codified at Milwaukee Code of Ordinances § 105-140. The Ordinance became effective on May 9, 2026.

4. Section 105-140 purports to require that no federal law enforcement officer "may wear a face covering while interacting with the public in the performance of the officer's duties," except during extreme weather and certain limited types of operations.

5. Section 105-140 also purports to require federal law enforcement officers, "[w]hen acting in an official capacity," to "[d]isplay on their uniforms the name or widely recognized initials of the officer's agency and the officer's last name, badge number, or identification number," or alternatively "verbally provide their agency affiliation and last name, badge number, or identification number" upon request, with limited exceptions.

6. Boldly, Section 105-140 subjects federal officers to civil liability for non-compliance. Specifically, Section 105-140 provides that "[a]ny person who willfully or knowingly violates [the Ordinance] shall, upon conviction thereof, be subject to a forfeiture of not less than $5,000, nor more than $10,000."

7. The Ordinance thus purports to directly regulate federal law enforcement officers by mandating them to comply with municipal uniform and identification requirements and penalizing those officers for complying with federal laws governing their official duties.

8. Members of the Milwaukee Common Council lauded the Ordinance's targeting of federal officers. Alderman Alex Brower indicated that the Ordinance is "a means of preventing

2

masked ICE [(U.S. Immigration and Customs Enforcement)] agents in Milwaukee[.]"[1] Alderwoman JoCasta Zamarripa announced: "If they continue to work here in a secret capacity with full masks on like I've seen, then we are asking MPD [(Milwaukee Police Department)] and the city attorney to act as the enforcement entity and write citations to ICE."[2]

9. Courts have uniformly enjoined materially similar state and local laws as unconstitutional direct regulation of the Federal Government. *See, e.g.*, *United States v. California*, 173 F.4th 1060, 1069 (9th Cir. 2026); *United States v. Commonwealth of Virginia*, No. 3:26-cv-545, 2026 WL 1909995, at *15 (E.D. Va. July 2, 2026); *United States v. City of Philadelphia*, No. 2:26-cv-4208, 2026 WL 1906075, at *14 (E.D. Pa. July 2, 2026).

10. Nevertheless, in the face of this overwhelming authority, on July 17, 2026, the City Attorney of Milwaukee reaffirmed the City's intent to enforce its unconstitutional law stating: "We will not advise our clients to exempt federal law enforcement officers from the Ordinance and we will prosecute properly cited offenders." *See* City Attorney Response Letter, *infra* ¶ 41.

11. This Court should join the growing number of others that are putting an end to this type of blatant unconstitutional regulation of the Federal Government and invalidate and enjoin Section 105-140.[3]

## JURISDICTION AND VENUE

12. The Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1345.

---

[1] Alex Brower, *Statement on committee approval of law enforcement ICE identification ordinance* (Mar. 12, 2026), https://city.milwaukee.gov/ImageLibrary/Groups/ccCouncil/News/2026/District-03/03-Statement-on-committee-approval-of-file-number-251797.pdf.

[2] Ben Jordan, *ICE says it will not comply with Milwaukee's federal agent mask ban ordinance, alderwoman wants accountability* (June 29, 2026), https://perma.cc/83V8-X4XB.

[3] The United States has grave concerns over the constitutionality of other components of Milwaukee's "ICE Out" legislation and reserves the right to bring additional challenges in the future.

3

13. Venue is proper under 28 U.S.C. § 1391(b)(1) because all defendants reside in this district.

14. The Court has the authority to provide the relief requested under 28 U.S.C. §§ 1651, 2201, and 2202, and its inherent equitable powers.

**PARTIES**

15. Plaintiff, the United States of America, enforces federal laws through its Executive agencies. Those agencies include but are not limited to the Department of Justice (DOJ) and its component law enforcement agencies—e.g., the Federal Bureau of Investigation (FBI) and the Drug Enforcement Administration (DEA)—and the Department of Homeland Security (DHS) and its component law enforcement agencies—e.g., U.S. Immigration and Customs Enforcement (ICE) (which includes Homeland Security Investigations (HSI)) and U.S. Customs and Border Protection (CBP).

16. Defendant City of Milwaukee is a municipality within the State of Wisconsin.

17. Defendant Cavalier Johnson is the Mayor of Milwaukee. Under Milwaukee City Charter § 3-01, the Mayor is the City's chief executive officer and is charged with ensuring that City ordinances "are duly observed and enforced." The Mayor is also the head of the police department with responsibility for ensuring that City officers discharge their respective duties. Milwaukee City Charter § 3-01. Mayor Johnson signed Ordinance § 105-140 into law. He is being sued in his official capacity.

18. Defendant Evan Goyke is the City Attorney of Milwaukee. The City Attorney's Office prosecutes ordinance violations in Milwaukee Municipal Court. On July 17, 2026, City Attorney Goyke advised the United States Department of Justice before this action was filed that he would not provide assurances against enforcement of § 105-140 and affirmed that his office

4

would prosecute any violations of the Ordinance. *See* City Attorney Response Letter, *infra* ¶ 41. He is being sued in his official capacity.

19. Defendant Jeffrey Norman is the Chief of Police of the Milwaukee Police Department. Under Wis. Stat. §§ 62.09(13)(a) and 62.50(23), the Chief of Police commands the police force and is responsible for enforcing City ordinances. He is being sued in his official capacity.

**LEGAL AND FACTUAL BACKGROUND**

**FEDERAL LAW ENFORCEMENT**

20. The President has a constitutional duty to "take Care that the Laws be faithfully executed." U.S. Const. art. II § 3.

21. Subordinate officers in various federal agencies, including DOJ, DHS, and their components, assist the President in discharging that duty. *See Seila L. LLC v. Consumer Fin. Prot. Bureau*, 591 U.S. 197, 203–04 (2020); *see also Tennessee v. Davis*, 100 U.S. 257, 263 (1879) (stating that the Federal Government "can act only through its officers and agents").

22. Federal law empowers the Executive to provide for and dictate the conduct of federal law enforcement officers in carrying out their official duties. *See, e.g.*, 5 U.S.C. § 301 (authorizing the head of an Executive or military department to "prescribe regulations for the government of his department [and] the conduct of its employees"); 28 U.S.C. § 509 (vesting all functions of other officers, agencies, and employees of DOJ in the Attorney General); 8 U.S.C. § 1103(a)(2) (giving the Secretary of Homeland Security the power to "control, direct[], and supervis[e]" all DHS employees).

23. Federal law similarly empowers the Executive to provide for and dictate federal law enforcement officers' uniforms and equipment when carrying out their official duties. *See,*

*e.g.*, 5 U.S.C. § 5901 (directing the head of each federal agency to furnish its employees a uniform or an allowance for a uniform); 29 U.S.C. § 668 (requiring heads of federal agencies to, as part of their occupational safety and health programs, acquire, maintain, and require the use of safety equipment, personal protective equipment, and devices reasonably necessary to protect employees); 10 U.S.C. § 723(b)(1) (providing exception to certain identification requirements to individuals who "do not wear a uniform or other distinguishing clothing or equipment in the regular performance of their official duties").

24. Because the Federal Government's authority to execute the laws "extend[s] over the whole territory of the Union, acting upon the States and upon the people of the States," federal officers "must act within the States." *Davis*, 100 U.S. at 263. Accordingly, federal law enforcement officers carry out their duties within the several states and their localities, including the City of Milwaukee.

25. For example, the DEA enforces our Nation's controlled substances laws. *See generally* The Controlled Substances Act, *codified as amended at* 21 U.S.C. §§ 801, *et seq.* In carrying out that mission, the DEA investigates and aids in the prosecution of major violators of controlled substances laws; seizes and forfeits assets derived from illicit drug trafficking; and manages a national drug intelligence program in cooperation with federal, state, local, and foreign officials. *See* 28 C.F.R. § 0.100–0.101.[4]

26. As another example, the FBI is charged with rooting out violent crime, defending the homeland against terrorist attacks, and investigating and combating cybercrime, among other

---

[4] *See also* DEA, Mission Statement, https://perma.cc/Y2FW-H3BV.

duties. It carries out this mission through numerous operations throughout the country and in partnership with federal, state, local, and foreign officials. *See id.* § 0.85.[5]

27.    DHS, through ICE and CBP, is principally responsible for enforcing our Nation's immigration laws, including the Immigration and Nationality Act (INA), which, pursuant to Congress's power to "establish an uniform Rule of Naturalization," U.S. Const. art. I § 8, cl. 4, make up the framework for the "governance of immigration and alien status," *see Arizona v. United States*, 567 U.S. 387, 395 (2012).

28.    The INA confers upon the Executive Branch broad authority to inspect, investigate, arrest, detain, and remove aliens who are unlawfully present in the United States. *See, e.g.*, 8 U.S.C. §§ 1182, 1225–29a, 1231. As part of those enforcement efforts, DHS, through HSI, also investigates transnational crime and threats, including incidents of human smuggling and human trafficking.  *See* 8 U.S.C. §§ 1324, 1232.

### MILWAUKEE CODE OF ORDINANCES § 105-140

29.    On April 21, 2026, Milwaukee Common Council passed the Ordinance titled "Law Enforcement Identification" (Common Council File No. 251797).[6] Exhibit A. Mayor Johnson signed the Ordinance on April 22, 2026, and it became effective on May 9, 2026.

30.    Members of the Milwaukee Common Council have publicly expressed the Ordinance's purpose as targeting federal officers. For example, in a statement by Alderman Alex Brower regarding a prior version of the Ordinance, he noted the legislation is "a means of

---

[5] *See also* FBI, About, Mission and Priorities, https://www.fbi.gov/about/mission (last visited July 23, 2026).

[6] Section 105-140's stated policy purposes of the Ordinance include "to promote public safety, prevent impersonation and fraud, and ensure transparency and accountability in law enforcement operations . . . ."

7

preventing masked ICE agents in Milwaukee[.]"[7] Alderwoman JoCasta Zamarripa stated, "If they continue to work here in a secret capacity with full masks on like I've seen, then we are asking MPD and the city attorney to act as the enforcement entity and write citations to ICE."[8]

31. Prior to its passage, City Attorney Goyke reviewed the proposed ordinance, stating that "[i]t is legal and enforceable." Exhibit B.

32. On its face, the Ordinance purports to apply to federal law enforcement officers by defining a "Law enforcement officer" to include "any employee or agent of the United States government who has authority to carry firearms and make warrantless arrests and whose duties involve the enforcement of criminal, customs, or immigration laws of the United States." Milwaukee, Wis., Code of Ordinances § 105-140(3) (2026) (incorporating Wis. Stat. § 165.85(2)(c)).[9]

33. The Ordinance provides that "[n]o law enforcement officer may wear a face covering while interacting with the public in the performance of the officer's duties." § 105-140(4).

34. The Ordinance defines "Face covering" to mean "any opaque mask, garment, or other item that conceals or obscures the facial identity of an individual, including a balaclava, tactical mask, neck gaiter, ski mask, or any similar type of facial covering or face-shielding item." § 105-140(3)(b). A face covering does not include "[a] translucent face shield or clear mask that does not conceal the wearer's facial identity[,]" "[a] medical mask to protect against transmission

---

[7] Alex Brower, *Statement on committee approval of law enforcement ICE identification ordinance* (Mar. 12, 2026), https://city.milwaukee.gov/ImageLibrary/Groups/ccCouncil/News/2026/District-03/03-Statement-on-committee-approval-of-file-number-251797.pdf.

[8] Ben Jordan, *ICE says it will not comply with Milwaukee's federal agent mask ban ordinance, alderwoman wants accountability* (June 29, 2026), https://perma.cc/83V8-X4XB.

[9] In relevant part, "Law enforcement officer" means "any person employed by the state or any political subdivision of the state, for the purpose of detecting and preventing crime and enforcing laws or ordinances and who is authorized to make arrests for violations of the laws or ordinances that the person is employed and sworn to enforce." Wis. Stat. § 165.85(2)(c).

8

of disease or infection, or any other mask or device necessary to protect against exposure to any toxin, gas, smoke, or any other hazardous environmental condition, including air-purifying respirators, full or half masks, or self-contained breathing apparatuses[,]" or "[a] helmet used to protect the wearer's head during transportation." § 105-140(3)(b-1)-(b-3).

35. The Ordinance contains limited exceptions. Section 105-140(6)(a) provides that "face coverings may be worn to provide protection against cold or other extreme weather during assignments requiring a law enforcement officer to be outdoors for long periods of time."

36. The Ordinance also excepts "[a] law enforcement officer engaged in an undercover operation" or "[a] special weapons and tactics team officer wearing protective gear while performing his or her special weapons and tactics [Special Weapons and Tactics (SWAT)] team responsibilities." § 105-140(6)(b), (b-1)-(b-2).

37. The Ordinance also provides that "[w]hen acting in an official capacity, all law enforcement officers shall do one or more of the following:

   a. Display on their uniforms the name or widely recognized initials of the officer's agency and the officer's last name, badge number, or identification number.
   b. Upon request, verbally provide their agency affiliation and last name, badge number, or identification number."

§ 105-140(5), (a)-(b).

38. This identification requirement also contains the limited exception for "undercover operation[s]" and SWAT actions. § 105-140(6)(b), (b-1)-(b-2).

39. The Ordinance penalizes "[a]ny person who willfully or knowingly violates" Section 105-140 by providing that they "shall, upon conviction thereof, be subject to a forfeiture of not less than $5,000, nor more than $10,000." § 105-140(7).

40. Before commencing this lawsuit, the Department of Justice by a letter dated July

9

10, 2026, to Mayor Johnson and City Attorney Goyke, advised that "federal officers will not comply with Milwaukee's unconstitutional ordinances and will continue to wear masks and not use individual identifiers in their discretion." Exhibit C. The letter sought "assurances that neither [their] offices, the Milwaukee Police Department, nor any other entity in Milwaukee plans to enforce [Section 105-140] against federal law enforcement officers." *Id.*

41.     On July 17, 2026, City Attorney Goyke reaffirmed the City's intent to enforce the Ordinance against federal officers, explaining that he "will not advise [his] clients to exempt federal law enforcement officers from enforcement of the Ordinance against them, and that [his] office will prosecute any validly issued citation for acts in violation of the Ordinance." Exhibit D. Mayor Johnson did not respond.

42.     Milwaukee Common Council has reportedly directed the Milwaukee Police Department to investigate and pursue federal officers for violations, including ICE agents.[10]

### MILWAUKEE CODE OF ORDINANCES § 105-140 IS UNLAWFUL

43.     Notwithstanding the Ordinance's clause that "[n]othing in this section shall be interpreted to prohibit, restrict, or interfere with the proper exercise of state or federal law enforcement[,]"[11] the challenged provisions imposing a facial coverings ban and identification requirements for law enforcement officers constitute unlawful regulation of the Federal Government. *See Washington*, 596 U.S. at 838.

---

[10] David Clarey, *Milwaukee council members request police investigate masked ICE agents* (July 7, 2026), https://www.jsonline.com/story/news/crime/2026/07/07/milwaukee-council-members-request-police-investigate-masked-ice-agents/90841445007/?gnt-cfr=1&gca-cat=p&gca-uir=true&gca-epti=z11xx55p115550l004450c115550e1190xxv11xx55d--85--b--85--&gca-ft=202&gca-ds=sophi.

[11] The Ordinance does not indicate what constitutes "proper exercise of . . . federal law enforcement" nor who determines what is "proper."

44.     Milwaukee's Ordinance purports to mandate that federal law enforcement officers within Milwaukee comply with municipal prohibitions and requirements on facial coverings and identification and to subject those officers to penalties for complying with federal laws and policies that govern their official duties and actions.

45.     While the Ordinance contains limited exceptions, they do not exclude federal officers from its scope. Moreover, although states and localities do not have authority to determine excepted activities and conduct of federal law enforcement officers, the exceptions nonetheless do not fully address instances in which the identification requirement could impede federal operations, including, for example, surveillance and plainclothes operations.

46.     Due to the nature of law enforcement operations, federal officers require flexibility to determine when to announce their identities. For example, CBP and ICE have discretion on when they permit their officers and agents to wear facial coverings, whether to add or remove individual identifiers, and what identification is provided to individuals upon request.[12] That is up to the agencies and officers based on the facts and circumstances in a particular case and cannot be subjected to bright-line or conflicting rules made by state or local governments. Removing this flexibility and requiring federal agencies and officers to comply with Milwaukee's stricter facial coverings and identification requirements would undermine officer safety and operational effectiveness.

47.     Denying federal agencies and officers discretion in these areas would chill federal law enforcement, threatening the safety of communities in Milwaukee.

---

[12] For instance, federal regulations provide that "an immigration officer who is authorized to execute an arrest" announce himself and the purpose of the arrest "as soon as it is practical and safe to do so." 8 C.F.R. § 287.8(c)(2)(iii).

48.     The Ordinance accordingly prevents effective federal law enforcement within Milwaukee and constitutes unlawful direct regulation of the Federal Government.

**SECTION 105-140 HARMS THE FEDERAL GOVERNMENT AND THE PUBLIC**

49.     The United States suffers a sovereign and irreparable injury from Section 105-140, *cf. Arizona v. Yellen*, 34 F.4th 841, 851–53 (9th Cir. 2022); *Vt. Agency of Nat. Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 771 (2000); *United States v. California*, 173 F.4th at 1069 ("[I]rreparable harm necessarily results from allowing California to enforce a law invalid under the doctrine of intergovernmental immunity."); *United States v. Ekblad*, 732 F.2d 562, 563 (7th Cir. 1984) ("The United States has standing to seek relief from actual or threatened interference with the performance of its proper governmental functions."). The United States has sovereign authority to manage federal law enforcement activities and, under the Supremacy Clause, need not cede that authority to Milwaukee (or any municipality) by complying with the City's purported requirements for federal law enforcement officers.

50.     Even beyond the sovereign injury, compliance with Section 105-140 would endanger officers and reduce operational effectiveness by, among other things, subjecting them to standards that conflict with and differ materially from applicable federal standards and policies.

51.     Federal law enforcement agents and officers cannot and will not comply with the challenged Section 105-140, which is unconstitutional and recklessly disregards officer safety, public safety, and federal operational needs.

52.     Law enforcement historically has been a dangerous job but now is even more so. Protecting the personal identities of federal officers and by extension their families is necessary in part due to the increasing threats of targeted harassment and retaliation against federal officers and agents for simply doing their jobs enforcing the laws enacted by Congress. While such threats have

12

always existed, the volatile political environment has increased such threats exponentially, requiring new tactics to mitigate the harms to officer safety and operational effectiveness.

53.     For instance, members of the public photograph, film, and publish federal enforcement actions online and include the personal identities of federal officers for the sole purpose of intimidation and harassment. This content is directly used by members of organized crime and transnational criminal organizations in serious and potentially deadly ways.

54.     For example, some individuals photograph officers' faces and run them through facial recognition applications that search social media and doxxing sites such as, for example, ICESpy.org. Once a match is made, they often search for family members, including children, and disseminate this information online, allowing people to track, harass, and obstruct law enforcement. This opens officers up to harassment, tracking, and assaults in the performance of their duties in the field.

55.     Federal agents around the country have recently been targeted for harm, including harassment, assault, and murder. These targeted threats have expanded to include extended family members. For example, an FBI agent earlier this year was forced to abandon his FBI vehicle when a crowd of protestors rushed a group of federal law enforcement agents. The crowd subsequently vandalized the vehicle and stole the agent's personal items, including his FBI credentials and driver's license. His name and local address were subsequently posted online. The threats to the agent and his extended family, via social media and U.S. mail, have continued to this day, necessitating the need for FBI protection measures.

56.     Facial coverings can prevent agitators from identifying and tracking officers, especially those using facial recognition or other tools. And while officers almost always wear tags identifying them as federal officers (with the exception of, for example, surveillance, undercover,

13

or plainclothes operations), personal identifiers carry similar risks that can allow agitators to identify and harass individual officers. Protecting officers' personal identities is particularly important during high-risk enforcement operations involving individuals with violent criminal history, gang affiliations, transnational criminal organizations, and known or suspected terrorists.

57. Facial coverings and removal of personal identifiers also prevent suspects from identifying officers who may be involved in future enforcement actions. Because suspects who recognize officers may take preemptive actions to evade apprehension and obstruct enforcement efforts, flexibility is critical for maintaining operational effectiveness, especially in areas where repeat offenders or organized criminal networks are prevalent. The existence of websites that contain information regarding individual officers' identities can also undermine undercover operations and plainclothes missions. *See, e.g.*, supra ¶ 54.

58. Finally, the threat of enforcement for noncompliance will only further exacerbate the chilling effects of these laws. Officers face a choice of whether to wear facial coverings or identify themselves and their agencies when it may be dangerous to themselves, others, and the operation, or face the threat of significant penalties. Either option presents serious risks and harms and purposefully works to chill the enforcement of federal law.

59. Moreover, enforcement is certainly impending: Section 105-140 has already taken effect; the challenged provisions plainly apply to federal law enforcement officers and carry penalties for noncompliance; numerous officers operating within Milwaukee routinely engage in the very conduct the Ordinance proscribes; and the City has indicated its intent to enforce its provisions against them.

60. The Ordinance also harms public safety because obstructing federal enforcement leaves dangerous individuals at large in Milwaukee, compromises undercover operations that

14

protect the broader community against gangs and trafficking organizations, and risks pushing federal officers to scale back enforcement in the City—leaving residents with less protection than people in jurisdictions without such ordinances. Bystanders near enforcement actions also face added risk when officers' identities are compelled to be disclosed in real time.

61.     More broadly, the public has an independent interest in the Federal Government's ability to carry out its enforcement functions without obstruction by Milwaukee's Ordinance.

## CLAIM FOR RELIEF

### VIOLATION OF THE SUPREMACY CLAUSE – MILWAUKEE CODE OF ORDINANCES § 105-140
### (UNLAWFUL REGULATION OF THE FEDERAL GOVERNMENT)

62.     Plaintiff hereby incorporates paragraphs 1 through 61 of the Complaint as if fully stated herein.

63.     The Supremacy Clause of the United States Constitution mandates that "[t]his Constitution, and the Laws of the United States which shall be made in Pursuance thereof . . . shall be the supreme Law of the Land . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2.

64.     The Supremacy Clause incorporates principles of intergovernmental immunity, and thus, a state enactment is invalid if it "regulat[es] the United States directly *or* discriminat[es] against the Federal Government or those with whom it deals." *Washington*, 596 U.S. at 838 (citation omitted).

65.     Section 105-140.4 purports to ban federal law enforcement officers from wearing facial coverings while performing their duties in Milwaukee and subjects those officers to penalties for noncompliance.

66.     Section 105-140.5(a) purports to require federal law enforcement officers to display

15

visible identification while performing their duties in Milwaukee and subjects those officers to penalties for noncompliance.

67.     Section 105-140.5(b) purports to alternatively require federal law enforcement officers to provide their agency affiliation and last name, badge number, or identification number on request while performing their duties in Milwaukee and subjects those officers to penalties for noncompliance.

68.     Milwaukee's enforcement of Section 105-140 against federal law enforcement officers constitutes unlawful regulation of the Federal Government.

69.     Accordingly, Milwaukee Code of Ordinances § 105-140 is invalid under the Supremacy Clause and its application to the Federal Government should be enjoined.

## PRAYER FOR RELIEF

WHEREFORE, the United States respectfully requests the following relief:

A.     That this Court enter a judgment declaring that Milwaukee Code of Ordinances § 105-140 violates the Supremacy Clause and is therefore invalid as to federal law enforcement officers;

B.     That this Court preliminarily and permanently enjoin Defendants, as well as their successors, agents, servants, employees and attorneys, and all those working in concert with them, from enforcing Section 105-140 against federal law enforcement officers;

C.     That this Court award the United States its costs and fees in this action; and

D.     That this Court award any other relief it deems just and proper.

DATED: July 23, 2026

16

Respectfully submitted,

STANLEY E. WOODWARD, JR.
Associate Attorney General

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

BRAD D. SCHIMEL
First Assistant United States Attorney
Eastern District of Wisconsin

ANNA EDWARDS
Counsel to the Associate Attorney General

CHARLES E.T. ROBERTS
Senior Counsel to the Assistant Attorney General
Civil Division

JACQUELINE COLEMAN SNEAD
Deputy Director

*/s/ Pooja D. Majmundar*
POOJA D. MAJMUNDAR
DC Bar No. 1779930
Trial Attorney
U.S. Department of Justice, Civil Division
Enforcement & Affirmative Litigation Branch
P.O. Box 386
Washington, D.C. 20044-0386
(202) 598-0280
Pooja.D.Majmundar@usdoj.gov

*Attorneys for the United States of America*

17