# EXHIBIT A

## CHAPTER 105
## PUBLIC SAFETY

TABLE

105-1        Riots; Unlawful Assemblies
105-1.5      Hiring of Professional
              Strikebreakers Prohibited
105-2        Assault and Battery
105-8        Veteran Grave Markers
105-16       Icicles on Buildings
105-19       Roller Skates, In-line Roller
              Skates and Skateboards
              Restricted
105-20.5     Baseball Regulations, etc., in
              Certain Areas
105-20.52    Penalty, General
105-21       Basketball, Baseball and Softball:
              Regulations
105-25        Railroad Quiet Zones
105-34       Carrying Dangerous Weapons
105-34.4     Use of Fire Bombs
105-35       Discharge of Firearms
105-36       Archery Ranges (Bow and Arrow)
105-37       Hunting with Bow and Arrow
              or Crossbow
105-39       Regulations for
             Shooting Galleries
              (Firearms)
105-40       Application for License
105-41       Specifications
105-42       Penalty
105-43.2     Waiting Period Required for
              Transfer of Handguns
105-45       Sale, Possession and Use of
              Laser Pointers
105-46       Sale of Electric Scooters
105-47       Fireworks
105-48       Smoking Prohibited
105-49       Smoking Prohibited on
             City Property
105-49.5     Use of Smokeless Tobacco
              Products Prohibited
105-50       Synthetic Marijuana
105-50.5     Age Restrictions on Hemp-derived
              THC Products
105-51       Hate Literature
105-53       Entrance to Government Pier
105-55       Soliciting of Magazines on Public
              Streets
105-55.5     Special Event Permits
105-56       Sales on Public Premises
105-57       Sales on Public Right of Way
              (Special Events)

105-59.5     Police Escorts
105-60       Abandoned Iceboxes
              or Refrigerators
105-64       Vehicle Parking on Private
              Property
105-65       Control of Abandoned Motor
              Vehicles and Trailers
105-66       On-Street Motor Vehicle Repair
105-67       Vehicle Glass Tinting
105-69       Harmful Substances
105-70       Toxic Glues
105-71       Vision Triangles
105-73       Municipal Silent Alarm Service
105-75       Private Alarm Systems and
              Regulations
105-77       Misuse of Emergency Telephone
              Numbers
105-78       Abandoned 911 Calls
105-79       Legal Occupant Lists for
              Residential Real Properties
105-81       Ultimate or Extreme Fighting
              Events Prohibited
105-91       Retail Establishment Security
              Measures
105-93       Motor Vehicle Rental
105-122      Seized Firearms or Ammunition, etc.
105-123      Disposition of Property Found on
              City Streets
105-124      Police May Enter Buildings to
              Make Arrests, Right of Entry
105-125      Power of Arrest
105-126      General Duties of Policemen
105-127      When to Arrest
105-133      Warrant for Assault Upon Officer
105-137      Assistance to Officers
              By Citizens
105-138      Resisting or Obstructing Officer
105-139      Protection of Poll Workers
105-140      Law Enforcement Identification

**105-1. Riots; Unlawful Assemblies.**

**1.** PURPOSE AND FINDINGS. This section is enacted to protect the health, safety and welfare of the public, to preserve order and to prevent harm or injury to persons and property. The city finds that police officers have a duty to suppress unlawful assemblies within their jurisdiction. For that reason

Case 2:26-cv-01293-NJ    Filed 07/23/26    Page 2 of 37    Document 1-1

they may order all persons who are part of an assembly to disperse. It is further found that unlawful assemblies involving motor vehicles increase the risk of harm or injury to persons or property, obstruct or impede lawful travel and commerce, are more difficult to disperse than other assemblies, and significantly increase the costs of enforcement.

**2.** DEFINITIONS. a. "Unlawful assembly" means an assembly which consists of 3 or more persons and which causes such a disturbance of public order that it is reasonable to believe that the assembly will cause injury to persons or damage to property unless it is immediately dispersed. An "unlawful assembly" includes an assembly of persons who assemble for the purpose of blocking or obstructing the lawful use by another person, or persons of any private or public thoroughfares, property or positions of access or exit to or from any private or public building, or dwelling place, or any portion thereof and which assembly does in fact so block or obstruct the lawful use by any other person, or persons of any such private or public thoroughfares, property or any position of access or exit to or from any private or public building, or dwelling place, or any portion thereof.

b. "Person participating in an unlawful assembly involving motor vehicles" includes any person who acts in a manner contributing to or promoting the disturbance of public order in an unlawful assembly involving 3 or more motor vehicles.

**3.** FAILURE OR REFUSAL TO WITHDRAW; PENALTIES. a. It is unlawful for any person to fail or refuse to withdraw from an unlawful assembly, which the person knows has been ordered to disperse.

b. Any person convicted of a violation of sub. a shall forfeit not more than $500 or, upon default of payment of forfeiture and costs, be imprisoned in the county jail or house of correction not more than 20 days.

c. Any person convicted of a violation of sub. a., who intentionally fails or refuses to withdraw from an unlawful assembly involving 3 or more motor vehicles, shall forfeit not less than $250 nor more than $1,000 or, upon default of payment of forfeiture and costs, be imprisoned in the county jail or house of correction not more than 40 days.

**4.** VEHICLES CONSTITUTING A PUBLIC NUISANCE; ABATEMENT. a. A motor vehicle operated 2 or more times in an unlawful assembly is declared to constitute a public nuisance.

b. The city attorney is authorized to initiate proceedings in abatement of a nuisance vehicle used 2 or more times by any operator or operators convicted of a violation of sub. 3-a, and to seek appropriate relief including, but not limited to, removal and sale of the vehicle.

**105-1.5. Hiring of Professional Strikebreakers Prohibited. 1.** FINDINGS. It is declared that the employment of those individuals, commonly known as professional strikebreakers within the community during the course of a labor dispute, substantially contribute to prolonged industrial strife and to the danger of violent activity endangering the lives and property of the residents of this city, thereby necessitating the prohibitions established by this section, which shall be deemed an exercise of the police powers for the protection of the peace, dignity, health and welfare of the people of the city of Milwaukee.

**2.** DEFINITIONS. When used in these sections:

a. The term "person" shall include one or more individuals, partnerships, corporations, associations, or firms, and shall include any officer, employee or agent thereof.

b. The term "labor dispute" shall mean a controversy between an employer and his employees which results in a strike or lockout.

c. The term "professional strikebreaker" shall mean any person who customarily and repeatedly secures or seeks to secure gainful occupation by offering to take the place or replacing any employee absent from his position of employment because of a labor dispute.

**3.** GENERAL PROVISIONS. a. No person shall recruit, procure, supply or refer for purposes of employment any professional strikebreaker in place of any employee involved in a labor dispute in which such person is not directly involved.

b. No person involved in a labor dispute shall either, directly or indirectly:

b-1. Employ in the place of any employee involved in such labor dispute any professional strikebreaker during the course of the labor dispute.

b-2. Contract or arrange with any other person to recruit, procure, supply or refer for purposes of employment any professional strikebreaker in place of employees involved in such a labor dispute.

c. No professional strikebreaker shall take or offer to take the place of any employee involved in a labor dispute during the course of that dispute.

Case 2:26-cv-01293-NJ Filed 07/23/26 Page 3 of 37 Document 1-1

**4.** EXCEPTIONS. Nothing in this section, other than the employment of any professional strikebreaker, shall be construed to prevent or prohibit a person involved in a labor dispute from conducting business operations during the course of such labor disputes.

**5.** PENALTIES. Any person who shall violate the provisions of this section shall, upon conviction thereof, be subject to a forfeiture of not less than $50 nor more than $500, together with the costs and disbursements of the prosecution, and, in default of payment thereof, shall be imprisoned in the county jail or house of correction of Milwaukee county until such forfeiture, costs and disbursements are paid, such imprisonment not to exceed 30 days.

**105-2. Assault and Battery.** Any person who shall commit an assault and battery upon another shall be punished by a fine of not more than $500, and for offenses occurring between the hours of 8:00 p.m. and 5:00 a.m. and upon a street designated as a cruising area under s. 101-20.5, including the land within the street lines whether or not improved by a fine of not less than $250 nor more than $500, and in default of payment thereof by imprisonment in the house of correction of Milwaukee county not less than 10 days nor more than 20 days.

**105-8. Veteran Grave Markers. 1.** USE RESTRICTED. No person, firm, or corporation shall sell, buy, exchange, handle or have in his or its possession any veteran's grave marker unless under and through a duly recognized veterans' post, order or organization.

**2.** PENALTY. Any person violating this section shall be fined not less than $25 nor more than $100 for each and every offense, or in default of payment thereof shall be punished by imprisonment in the house of correction of Milwaukee county for not more than 30 days.

**105-16. Icicles on Buildings. 1.** NOT TO CREATE DANGEROUS HAZARD. No person shall suffer, permit or allow icicles to remain upon any building in the city in such a manner as to be dangerous to any persons using public streets, alleys or highways. It shall be the duty of every person, firm or corporation owning any such buildings, and where such buildings are occupied by not more than 2 tenants, it shall be the duty of such tenants as well as of the owners to comply with the provisions of this section. It shall also be the duty of every such person, firm or corporation when notified by any city officer or inspector to

forthwith comply with such notice. Failures so to do shall be a violation of this section.

**2.** PENALTY. Any person, firm or corporation who shall violate the provisions of this section shall be subject to a penalty of not less than $5 nor more than $25 for each offense together with the costs of prosecution, and in default of payment of such fine and costs shall be imprisoned in the county jail or house of correction of Milwaukee county for a period not to exceed 60 days or until such fine and costs shall be paid.

**105-19. Roller Skates, In-line Roller Skates and Skateboards Restricted. 1.** RESTRICTIONS. No person may ride or otherwise use roller skates, in-line roller skates or skateboards upon public sidewalks in the following areas:

a. The area generally bounded on the north by State Street, south by Polk Street, east by the west side of North Harbor Drive and the west side of Lincoln Memorial Drive and west by Interstate 43, including all of the O'Donnell Park facility.

b. The area generally bounded by Downer Avenue between East Park Place on the north and East Webster Place on the south.

c. The area generally bounded by West Mitchell Street between South 5 Street on the east and South 16 Street on the west, including the green market.

d. Those public sidewalks adjacent to Milwaukee public library facilities and upon any Milwaukee public library parking lot.

e. The area generally bounded by East Brady Street between North Van Buren Street on the west and North Prospect Avenue on the east.

f. The area generally bounded by North Oakland Avenue between East Newberry Boulevard on the south and East Linnwood Avenue on the north.

g. The area generally bounded on the north by East Greenwich Avenue, south by East Kenilworth Place, east by North Prospect Avenue and west by North Oakland Avenue.

h. The area designated as North and South RiverWalk Way.

**2.** PENALTIES. Any person violating this section shall be subject to a forfeiture of not more than $25.

**105-20.5. Baseball Regulations, etc., in Certain Areas. 1.** HARDBALL PERMITTED.

a. The playing of baseball shall be permitted on baseball diamonds on the following premises:

Case 2:26-cv-01293-NJ    Filed 07/23/26    Page 4 of 37    Document 1-1

Adams playfield, 495 E. Morgan avenue
Auer Avenue playfield, 2221 W. Auer avenue
Bryant playfield, 5726 N. 89th street
Burnham playfield, 1755 S. 32nd street
Dyer playfield, 151 N. 80th street
Garden Homes playfield, 4456 N. Teutonia avenue
Hampton playfield, 5130 N. 53rd street
Hawthorne Glen, 1130 N. 60th street
Kinnickinnic playfield, 2821 S. Kinnickinnic avenue
Merrill Park playfield, 463 N. 35th street
Riverside Pumping Station, N. Humboldt avenue and E. Chambers street
Rogers playfield, S. 35th and W. Rogers streets
S. 78th street playfield, 7900 W. Tripoli avenu
Whitman playfield, 4200 S. 54th street
Wick playfield, 4929 W. Vliet street

b.	Baseball may be permitted on other turf areas when written permission has been given by the recreation division.

**2.**	SOFTBALL ON TURF DIAMONDS.

a.	The playing of softball on turf softball diamonds under the jurisdiction of the board of school directors shall allow for the use of a regulation 12 inch softball or larger on the following premises:

Adams playfield, 495 E. Morgan avenue
Auer Avenue playfield, 2221 W. Auer avenue
Barton playground, 5700 W. Green Tree road
Browning playground, 5575 N. 76th street
Bruce playground, 6453 N. 89th street
Bryant playfield, 5726 N. 89th street
Burbank playfield, 6225 W. Adler street
Burroughs playground, 6700 N. 80th street
Burnham playfield, 1755 S. 32nd street
Carmen playfield, 7320 W. Carmen avenue
Custer playfield, 4001 W. Custer avenue
Dyer playfield, 151 N. 80th street
S. 88th street playground, 3575 S. 88th street
N. 82nd street playground, 3778 N. 82nd street
Enderis playfield, 2938 N. 72nd street
Fairview playfield, 6311 W. Stack drive
N. 53rd street playground, 3618 N. 53rd street
Garden Homes playfield, 4456 N. Teutonia avenue
Hampton playfield, 5130 N. 53rd street
Hawthorn Glen, 1130 N. 60th street
Jefferson playground, 1029 N. Jefferson street
Jewell playfield, 1810 W. Wood avenue
Juneau playfield, 6500 W. Mt. Vernon avenue
Kilmer playground, 3120 W. Green avenue
Kinnickinnic playfield, 2821 S. Kinnickinnic avenue
Lancaster playground, 4931 N. 68th street
Lewis playfield, 1424 E. Pryor avenue

Lincoln playfield, 300 W. Lincoln avenue
Lowell playground, 4360 S. 20th street
Merrill Park playfield, 461 N. 35th street
Parklawn playfield, 4434 W. Marion street
Parkview playground, 10825 W. Villard avenue
Riverside Pumping Station, N. Humboldt avenue and E. Chambers street
Rogers playfield, S. 35th and W. Rogers streets
S. 78th street playfield, 7900 W. Tripoli avenu
N. 65th street playground, 6600 W. Melvina street
Stark playfield, 4951 N. 40th street
N. 24th street playground, 4950 N. 24th street
Warnimont playground, 3500 S. First street
Whitman playfield, 4200 S. 54th street
Wick playfield, 4929 W. Vliet street

b.	The listing playing of softball on the following turf softball diamonds shall be restricted to the use of a 12 inch, rubber-covered restricted-flight softball or a 14 inch softball or larger:

N. 95th street playground, 707 N. 94th street
Victory playground, 2222 W. Henry avenue

**3.**	SOFTBALL ON SURFACED DIAMONDS. The playing of softball shall be restricted to the use of a 12 inch rubber-covered restricted-flight softball or a 14 inch softball or larger on all surfaced softball diamonds on public school grounds, playgrounds, playfields, and other premises under the jurisdiction of the board of school directors, with the exceptions as listed in subs. 4 and 5.

**4.**	BALL PLAYING RESTRICTIONS.

a.	Softball Restricted. Ball playing shall be restricted to the use of a 14 inch leather-covered outseam softball or larger on the following premises, excepting only as the respective pupils at such schools may play such games during school hours on school days, but only under the direction of a teacher or some other person designated by the principals of the respective schools:

Doerfler, 3014 W. Scott street
Fourth Street, 1542 N. 4th street
Garfield, 2215 N. Fourth street
Grant, 2920 W. Grant street
Liberty, 4824 S. 27th street
Wisconsin Avenue, 2708 W. Wisconsin avenue

b.	Ball Playing Prohibited. Ball playing shall be prohibited on the play areas and practice fields of the following premises, excepting only as the respective pupils at such schools may play such games during school hours, on school days, but only under the direction of a teacher or some other person designated by the principal of the respective schools.

Case 2:26-cv-01293-NJ	Filed 07/23/26	Page 5 of 37	Document 1-1

Elementary School Exceptions:

Bartlett, 2964 N. Bartlett avenue

Berger, 3275 N. 3rd street

Browning, 5575 N. 76th street

Douglas Road, 3919 W. Douglas road Emerson, 9025 W. Lawrence avenue

Engleburg, 5100 N. 91st street

Eugene Field, 1226 S. Seventh street

Greenfield, 1711 S. 35th street

Hayes, 2431 S. 10th street

MacArthur, 3151 S. 60th street

Meinecke, 1369 W. Meinecke

Mound, 2148 S. Mound street

New Road, 4707 S. 13th street

Silver Spring, 5073 N. Green Bay avenue

N. 35th Street, 517 W. Courtland avenue

N. 36th, at 3620 W. Rohr avenue

N. 37th, at 1715 N. 37th street

N. 38th, at 2623 N. 38th street

Tippecanoe, 357 E. Howard avenue

Trowbridge, 1943 E. Trowbridge street

Walnut, 2318 W. Walnut street

Whittier, 4382 S. 3rd street

c.        Ball Playing Prohibited. Ball playing shall be prohibited at all times on the following playgrounds:

Hillside, 636 W. Plymouth

Wright, 2461 N. 55th street

**5.        BALL PLAYING ON SECONDARY SCHOOL GROUNDS. a. Prohibited.** Ball playing shall be prohibited on the play areas and practice fields of the following premises, excepting only as the respective pupils at such schools may play such games during school hours on school days, but only under the direction of a teacher or some other person designated by the principal of the respective schools.

Exceptions:

Bay View, 2751 S. Lenox street

Boys Tech, 319 W. Virginia street

Edison, 5372 N. 37th street

Juneau, 6415 W. Mt. Vernon avenue

King, 1801 W. Olive street

Lincoln, 816 E. Knapp street North, 1121 W. Center street

Pulaski, 2500 W. Oklahoma avenue

Riverside, 1615 E. Locust street

South, 1321 W. Lapham street

Washington, 2525 N. Sherman boulevard

Washington Annex, 6720 W. Moltke avenue

Wells, 830 N. 19th street

West, 2300 W. Highland avenue

b.        **Softball Allowed.** The playing of softball with a 12 inch regulation softball or larger may be allowed on the following secondary school grounds:

Audubon, 3300 S. 39th street

Bell, 6506 W. Warnimont avenue

Custer, 5075 N. Sherman boulevard

Fritsche, 2969 S. Howell avenue

Hamilton, 6215 W. Warnimont avenue

Kosciuszko, 971 W. Windlake avenue

Madison, 8135 W. Florist avenue

Marshall, 4141 N. 64th street

Morse, 4601 N. 84th street

Muir, 5496 N. 72nd street

Parkman, 3620 N. 18th street

Peckham, 3245 N. 37th street

Sholes, 4965 S. 20th street

Steuben, 2360 N. 52nd street

Walker, 1712 S. 32nd street

Wright, 8400 W. Burleigh street

**6.        OTHER REGULATIONS.** The batting of balls is permissible only from the home plate areas of the painted diamonds. The board of school directors shall prescribe the regulations applicable to the play of hard baseball and softball on all premises under its jurisdiction, and said board shall place one or more signs at least 2 feet square on all public school grounds, playgrounds, and playfields, informing the public as to which kind of ball playing is thereon permitted or prohibited. In the batting of softballs, the use of bats more than 34 inches in length or more than 2-1/8 inches in diameter at the thickest portion of the bat is prohibited. In the batting of hard baseballs, the use of bats more than 42 inches in length or more than 2-3/4 inches in diameter at the thickest portion of the bat is prohibited.

**7.        PLAY LOTS AND TOT LOTS.** The municipally owned play areas (play lots and tot lots) are under the exclusive control and management of the commissioner of public works who shall make all rules and regulations pertaining to the use thereof and post signs prominently in the play areas governing use of the areas. Violation of any of the rules and regulations of the commissioner of public works shall be punishable as prescribed in s.105-20.52.

**105-20.52. Penalty, General.** Any person of the age of 18 years or more violating any of the provisions of s. 105-20.5 shall, upon conviction thereof, be punished by a fine of not less than $5 nor more than $50 together with the costs of prosecution, and in default of payment thereof by imprisonment in the house of correction of Milwaukee county not less than 10 days nor more than 30 days; and any person under 18 years of age violating any of the provisions of said s. 105-20.5 shall be deemed to be a delinquent child as defined in s. 48.01, Wis. Stats.

Case 2:26-cv-01293-NJ     Filed 07/23/26     Page 6 of 37     Document 1-1

## 105-21. Basketball, Baseball and Softball: Regulations.

**1.** a. Where appropriate signs have been posted, any activity, including the playing of basketball, baseball and softball, and the use of recreational equipment, including basketballs, baseballs and softballs, on play areas, playgrounds and playfields in the city is prohibited between any of the following times:

a-1. Sunset and 8 a.m.

a-2. 8 p.m. and 8 a.m.

a-3. 10 p.m. and 8 a.m.

b. Notwithstanding the provisions of par. a, if a softball or baseball game which is part of an official league authorized by the Milwaukee public schools department of municipal recreation requires an extension of time to finish the game, the game may be completed.

**2.** The commissioner of public works, in conjunction with the superintendent of Milwaukee public schools or his or her designee, is authorized to create rules and regulations pertaining to the use of municipally owned playfields and playgrounds and Milwaukee public school playgrounds and shall post signs prominently governing the use of these areas.

**3.** Any person violating this section shall upon conviction be fined not less than $5 nor more than $50 together with the costs of prosecution and in default of payment thereof be imprisoned in the house of correction in Milwaukee county not less than one day nor more than 2 days.

## 105-25. Railroad Quiet Zones.

**1.** DEFINITION. In this section, "quiet zone" refers to the following areas where the blowing of train horns for non-emergency purposes is prohibited:

a. The area along the Canadian Pacific Railroad's mainline tracks between West Layton Avenue (Milepost 0079.71) and West Holt Avenue/South 6th Street (Milepost 0081.36).

b. The area along the Canadian Pacific Railroad's mainline track within approximately one-quarter mile of the North Plankinton Avenue crossing (between Milepost 85.18 and Milepost 85.68), with the exception of the area along the Canadian Pacific Railroad moveable swing bridge (B-316 ½) over the Menomonee River, and the area along the Amtrak station.

**2.** PROHIBITION. No railroad company or any of its agents or employees shall blow any horn or whistle within the quiet zone.

**3.** EXCEPTION. Nothing in this section shall be construed as forbidding or prohibiting the blowing of whistles or horns as signals of warning in case of peril or fire, collision, or other imminent danger.

## 105-34. Carrying Dangerous Weapons.

**1.** PROHIBITED. a. Except as provided under state law and this code, it shall be unlawful for any person except a peace officer to go armed with a concealed and dangerous weapon within the city of Milwaukee.

b. Unlawful carrying of weapons by licensees.

b-1. With the exceptions provided in par. b-2, it shall be unlawful for any licensee or out-of-state licensee to carry a permitted weapon or a firearm that is not a permitted weapon in any of the following places:

b-1-a. Any portion of a building that is a police station, sheriff's office, state patrol station, or the office of a division of criminal investigation special agent of the Wisconsin department of justice.

b-1-b. Any portion of a building that is a prison, jail, house of correction, or secured correctional facility.

b-1-c. Any portion of a building that is a county, state, or federal courthouse.

b-1-d. Any portion of a building that is a municipal courtroom if court is in session.

b-1-e. Any place beyond a security checkpoint in an airport.

b-2. The prohibitions under par. b-1 do not apply to any of the following:

b-2-a. A permitted weapon in a vehicle driven or parked in a parking facility located in a building that is used as, or any portion of which is used as, a location under par. b-1-a.

b-2-b. A permitted weapon in a courthouse or courtroom if a judge who is a licensee is carrying the weapon or if another licensee or out-of-state licensee, whom a judge has permitted in writing to carry a weapon, is carrying the weapon.

b-2-c. A permitted weapon in a courthouse or courtroom if a district attorney, or an assistant district attorney, who is a licensee is carrying the weapon.

**1.5.** EXEMPTION. This section shall not apply to employees and agents of Milwaukee county while they are on property owned by Milwaukee county under the control of General Mitchell International Airport or Timmerman Field.

**2.** DEFINITIONS. For purposes of this section:

a. "Carry" means to go armed with.

b. "Dangerous weapon" means any device designed as a weapon and capable of producing death or great bodily harm, any electric

Case 2:26-cv-01293-NJ    Filed 07/23/26    Page 7 of 37    Document 1-1

weapon as defined in s. 941.295(1c), Wis. Stats., and any similar electronic control device, or any other device or instrumentality which, in the manner it is used or intended to be used, is calculated or likely to produce death or great bodily harm. The following are dangerous per se: blackjack, billy, standclub, sandbag, bludgeon, nunchaku sticks, throwing stars, sling shot, slung shot, any instrument which impels a missile by compressed air, spring or other means, any weapon in which loaded or blank cartridges are used, crossknuckles, knuckles of any metal, barbed or blade type arrowhead, bowie knife, dirk knife, dirk, dagger, switch blade knife or any knife which has a blade that may be drawn without the necessity of contact with the blade itself or is automatically opened by pressure on the handle or some other part of the knife and is commonly known as a switch blade knife, straight-edge razor or any other knife having a blade 3 inches or longer.

c. "Handgun" means any weapon designed or redesigned, or made or remade, and intended to be fired while held in one hand and to use the energy of an explosive to expel a projectile through a smooth or rifled bore. "Handgun" does not include a machine gun, a short-barreled rifle or a shortbarreled shotgun, as defined in ss. 941.231 and 941.28, Wis. Stats.

d. "Firearm" means a handgun, rifle or shotgun which acts by force of gunpowder or explosive to expel a projectile through a smooth or rifled bore, excluding air guns, ammunition, antique firearms or any device which is neither designed nor redesigned for use as a weapon including signaling, pyrotechnic, line throwing, safety or fastening devices.

e. "Licensee" means an individual holding a valid license to carry a concealed weapon issued under s. 175.60, Wis. Stats.

f. "Out-of-state license" means a valid permit, license, approval, or other authorization issued by another state as defined in s. 175.60(1)(f), Wis. Stats.

g. "Peace officer" means any person employed by the state of Wisconsin or any political subdivision of the state, for the purpose of detecting and preventing crime and enforcing laws or ordinances and who is authorized to make arrests for violations of the laws or ordinances he or she is employed to enforce.

h. "Permitted weapon" means a handgun, an electric weapon, as defined in s. 941.295(1c), Wis. Stats., a knife other than a switchblade knife under s. 941.231, Wis. Stats., or a billy club, carried lawfully under license as provided in s. 175.60, Wis. Stats.

**3.** PENALTY. a. Any person violating sub. 1-a shall, upon conviction thereof:

a-1. Forfeit not less than $200 nor more than $500, and the costs and disbursements of the prosecution, with respect to going armed with a concealed and dangerous weapon other than a firearm and, in default of payment, may be imprisoned as provided by law.

a-2**.** Forfeit not less than $500 nor more than $1,000, and the costs and disbursements of the prosecution, with respect to going armed with a concealed firearm without a permit, and in default of payment, may be imprisoned as provided by law.

b. Any person violating sub. 1-b shall, upon conviction thereof forfeit not less than $200 nor more than $500 and the costs and disbursements of the prosecution and, in default of payment, may be imprisoned as provided by law.

c. For offenses occurring between the hours of 8:00 p.m. and 5:00 a.m. and upon a street designated as a cruising area under s. 101-20.5 including the land within the street lines whether or not improved, forfeit not less than $300 nor more than $500, and the costs and disbursements of prosecution, with respect to going armed with a concealed and dangerous weapon other than a firearm pursuant to sub. 1, and in default thereof, may be imprisoned as provided by law.

d. For offenses occurring between the hours of 8:00 p.m. and 5:00 a.m. and upon a street designated as a cruising area under s. 101-20.5 including the land within the street lines whether or not improved, forfeit not less than $750 nor more than $1,000, and the costs and disbursements of prosecution, with respect to going armed with a concealed firearm pursuant to sub. 1, and in default thereof, may be imprisoned as provided by law.

**4.** MISCELLANEOUS FIREARM OFFENSES. a. The following are prohibited:

a-1. The sale, possession, use or transport of any machine gun or other full automatic firearm in violation of s. 941.26, Wis. Stats.

a-2. The sale or offering to sell, transport, purchase, possess or go armed with a short-barreled rifle or short-barreled shotgun in violation of s. 941.28, Wis. Stats.

a-3. Possession of a firearm in violation of s. 941.29, Wis. Stats., prohibiting certain felons and other persons from possessing a firearm.

a-4. Possession of body armor in violation of s. 941.291, Wis. Stats.

a-5. Possession or use of armor-piercing ammunition in violation of s. 941.296, Wis. Stats.

Case 2:26-cv-01293-NJ    Filed 07/23/26    Page 8 of 37    Document 1-1

a-6.        The sale, delivery or possession of a firearm silencer in violation of s. 941.298, Wis. Stats.

b.        Any person violating par. a shall, upon conviction thereof, forfeit not less than $1,000 nor more than $5,000, and the costs and disbursements of the prosecution and in default of payment, may be imprisoned as provided by law.

**105-34.4. Use of Fire Bombs. 1.** PROHIBITED. No person shall make, carry, possess, sell, give, or use any type of "Molotov cocktail," which is defined to mean a flammable-liquid filled bottle or container with a fuse, wick or any other type of ignition or detonating device, flammable liquid fire bomb, or any other device or missile which can be ignited and cause ignition of any premises or material or which can cause damage by explosion.

**2.**        PENALTY. A violation of this section shall be punishable upon conviction by a fine of not less than $500 nor more than $1,000 or in lieu of nonpayment or default of such fine, costs and disbursements, by imprisonment in the Milwaukee county jail or house of correction for a period of not less than 90 days nor more than 180 days.

**105-35. Discharge of Firearms. 1.** POLICE PERMIT. No person shall fire or discharge any cannon, gun, fowling piece, pistol, firearm, air rifle, air gun of any description, or any instrument which impels a missile or pellet by compressed air, spring or other means, within the limits of the city; provided, however, that the chief of police may from time to time issue to an authorized person or authority a permit for a specified purpose and period of time to use, fire and discharge any of the aforesaid weapons or instruments within the limits of said city.

**1.5**        EXEMPTION. This section shall not apply to employees and agents of Milwaukee county while they are on property owned by Milwaukee county under the control of General Mitchell International Airport or Timmerman Field.

**2.**        REVOCATION. Any such permit may be revoked by said chief of police at any time. No such permit shall be transferred.

**105-36. Archery Ranges (Bow and Arrow).**

**1.**        DESIGNATED AREAS ONLY. No person shall shoot with or discharge in or upon any street, alley, public grounds or parks within the city any bow, spring gun or other similar device which is calculated or intended to propel or project an arrow or other projectile, nor in or upon any private grounds or building where the projectile propelled or discharged by the use of such bow or similar device may endanger the life, limb or property of another, or will

traverse any part of any street, alley, public grounds or parks; provided, however, that nothing in this section shall prevent the shooting with or discharging of bows or implements used in the practice of archery or implements for propelling arrows in or upon such properly supervised public areas as may be set aside and designated for that purpose by proper authority having jurisdiction and control over such public areas, or in or upon properly supervised private archery ranges constructed and maintained in such a manner as not to endanger life, limb or property, or to any shooting galleries using air rifles, when such shooting galleries are constructed and maintained as required by the commissioner of neighborhood services so as not to endanger life, limb or property.

**1.5.**        EXEMPTION. This section shall not apply to employees and agents of Milwaukee county while they are on property owned by Milwaukee county under the control of General Mitchell International Airport or Timmerman Field.

**2.**        PENALTY. It shall be mandatory that any person violating this section shall have the bow and arrow confiscated by the police department regardless of whether or not a fine is imposed. Any person violating this section shall be punished by a fine of not less than $1 nor more than $10 or by imprisonment in the house of correction of Milwaukee county for not less than 5 days nor more than 30 days, or by both such fine and imprisonment for each offense.

**105-37. Hunting with Bow and Arrow or Crossbow. 1.** RESTRICTION. Notwithstanding any other provision of this code to the contrary, no person shall hunt with a bow and arrow or crossbow within the city within 100 yards from a building located on the property of another person's land. This restriction does not apply if the person who owns the land on which the building is located allows the hunter to hunt within the specified distance of the building.

**2.**        DISCHARGE OF ARROW OR BOLT. No person who hunts with a bow and arrow or crossbow shall discharge the arrow or bolt in any direction, except toward the ground.

**3.**        PENALTY. Any person violating this section shall be subject to a forfeiture of not less than $25 nor more than $100, and, in default of payment, may be imprisoned as provided by law.

**105-39. Regulations for Shooting Galleries (Firearms). 1.** LICENSE REQUIRED. No premises shall be used or permitted to be used,

Case 2:26-cv-01293-NJ    Filed 07/23/26    Page 9 of 37    Document 1-1

leased or hired as a shooting gallery or place to practice target shooting, wherein firearms shall be discharged, without being duly licensed therefor. No license shall be required for a shooting range located on premises owned or operated by the United States, state of Wisconsin, Milwaukee county or city of Milwaukee and used for professional training purposes.

**2.** AUTHORIZING AGENT. No corporation, firm, association or club shall be granted a license to conduct in any manner a shooting gallery or place to practice target shooting within the limits of the city except to an agent thereof first duly appointed by it, who is, at the time of filing an application, an officer, manager or member thereof, and who shall have vested in him or her by properly authorized and executed written delegation full authority and control of the premises described in the license and of the conduct of all business and acts therein in any way relating to firearms and the use thereof or the shooting gallery or target shooting and who shall, with respect to his or her qualification, be satisfactory to the chief of police and the common council. Such agent shall be personally responsible for compliance with all the terms and provisions of this section.

**4.** FEE. See ch. 81 for the regular required license fee.

**105-40. Application for License. 2.** TO BE FILED WITH CITY CLERK. a. Application for a license for any specific premises sought to be used as a shooting gallery or place to practice target shooting shall be made on forms provided by the city clerk and accompanied by the entire license fee. Said application shall contain the following information:

a-1. Name and age of applicant, whether a firm, association, corporation or club.

a-2. Address of applicant.

a-3. Location and description of premises sought to be licensed.

a-4. Qualifications of licensee.

a-5. Name of agent.

a-6. Qualifications of agent.

b. No application shall be submitted to the common council unless said application shall have been approved by the chief of police and commissioner of neighborhood services. No premises shall be licensed unless constructed in accordance with the specifications set forth in s. 105-41.

**105-41. Specifications. 1.** USE AND CONSTRUCTION. The room, place or enclosure wherein the firing of firearms is to take place shall not be used for any other purpose whatsoever during the

progress of firing. The rear wall and side walls in front of the firing line shall be made bullet proof and shall be of at least the following construction:

a. 8 inch solid masonry or concrete.

b. 10 inch hollow concrete block.

c. Wood stud and plaster walls or equivalent construction covered with 1/4 inch steel plate and faced with wood one inch thick.

**2.** BULLET PROTECTING PLATES.

a. When the floor construction is other than reinforced concrete and there is a room below, such floor in front of the firing line for a distance of at least 10 feet shall be covered with a steel plate not less than 1/4 inch in thickness. When there is no room below such floor, the thickness of such steel plate may be 1/16 inch in order to provide fire protection for unburned powder.

b. When the ceiling construction is of other than reinforced concrete and there is a room above, such ceiling in front of the firing line for a distance of at least 10 feet shall be covered with a steel plate not less than 1/4 inch in thickness.

c. Exposed pipes, conduits, beams, pilasters, columns, lights or any other projecting surface in front of the firing line shall be provided with protecting steel plates not less than 1/4 inch in thickness faced with wood 2 inches in thickness to prevent damage by stray bullets and to prevent injury to persons by ricocheting bullets. These plates shall be set at such an angle that no bullet can possibly return towards the firing point.

**3.** DOOR AND WINDOW OPENINGS.

a. All door, window or other openings in the range, in front of the firing line, shall be protected with 1/4 inch steel plate faced with wood one inch thick.

b. All doors opening into the range, except those behind the firing line, shall be bolted from the inside.

**4.** BULLET STOPS. a. The bullet stop shall consist of a steel plate placed at an angle of 45E and running the width of the range. When only .22 caliber ammunition is used, the plate shall be 3/8 inch thick if of structural steel or 1/4 inch thick if of armor plate. The thickness shall be increased to 1/2 inch structural steel or 3/8 inch armor plate if .38 caliber or .45 caliber ammunition is used.

b. The plates of the bullet stop shall be butted tightly together and bolted to an angle or tee at the joints using countersunk heads on the face. Shiplap joints or welded joints can be used also. Targets should not be mounted in front of any joints.

c. The side walls at the bullet stop shall be covered by 1/4 inch steel plate, not less than 2

Case 2:26-cv-01293-NJ    Filed 07/23/26    Page 10 of 37    Document 1-1

feet wide, and slanting with the bullet stop to protect the walls from the splatter of lead.

d. At the base of the inclined bullet stop there shall be provided a box, not less than 5 feet wide and running the width of the range, with not less than 6 inches of clean sand or sawdust to catch the deflected bullets.

**5.** TARGETS. a. Targets shall be stationary bull's-eye type. All moving targets are prohibited.

b. There shall be provided a target carrier system or device for running the targets back and forth between the firing line and the bullet stop which will eliminate the necessity of anyone going in front of the firing line during the progress of firing for the purpose of changing targets.

**6.** FIRING LINE. At the firing line a bench, shelf or other separation, not less than 3 feet high and running the width of the range, shall be provided. The lower part of such bench, shelf or other separation shall be open to permit shooting under it in the kneeling, sitting, or prone position. No person, except the person in charge, shall be permitted in front of the firing line during the progress of firing.

**7.** SOUND QUIETING TREATMENT. Shooting premises, located adjacent to premises used in whole or in part for residence purposes, shall not be offensive by reason of the emission of noise to the outdoors. In such cases, where the noise of firing is conveyed to the outdoors, the walls and ceiling of the shooting premises or range shall be covered with sufficient sound absorbing material to eliminate the nuisance, or sound absorbing boxes, in which the muzzle of the gun is inserted before firing, shall be used.

**105-42. Penalty.** Any person, corporation, firm, association or club violating the provisions of ss. 105-39 to 105-41 shall be punished by a fine of not more than $100 for each offense together with the cost of prosecution, and in default of payment thereof shall be imprisoned in the county jail or house of correction of Milwaukee county until such fine and costs are paid, such imprisonment not to exceed 60 days; and in addition thereto a licensee shall forfeit any license issued hereunder without further notice and no license shall thereafter be granted such person, corporation, firm, association or club for a period of one year from the date of such revocation.

**105-43.2. Waiting Period Required for Transfer of Handguns.** No dangerous weapon dealer shall transfer possession of any handgun to any person other than a dealer for 48 hours following application

for sale or transfer of such handgun unless the period for receipt of a confirmation number from the Wisconsin department of justice is extended as provided in s. 175.35(2g)(c)4.c, Wis Stats., and then not until a confirmation number has been received or the extended period has expired, which first occurs.

**105-45. Sale, Possession and Use of Laser Pointers. 1.** DEFINITIONS. In this section:

a. "Laser pointer" means any hand-held device that emits light amplified by the stimulated emission of radiation which is visible to the human eye.

b. "Person" means an individual, firm, partnership, corporation or association.

**2.** PROHIBITED USE. No person may intentionally, and without good cause, direct a beam from a laser pointer at any part of the body of another individual.

**3.** SALES TO MINORS. No person, except a parent or legal guardian, employer, teacher or other person authorized to supervise minors, may sell or give away or in any way furnish a laser pointer to any person under the age of 18.

**4.** POSSESSION BY MINORS. No person under the age of 18 may possess a laser pointer in a public or private place, without the express permission of the owner or operator of the property.

**5.** RETAIL SALES REGULATIONS. Each person that owns, conducts, operates or manages a retail commercial establishment selling laser pointers shall:

a. Place a sign in the direct view of persons responsible for accepting customer payment for laser pointers stating:

SELLING LASER POINTERS TO PERSONS UNDER 18 YEARS OF AGE IS AGAINST THE LAW. VIOLATORS CAN BE FINED UP TO $5,000 OR IMPRISONED UP TO 90 DAYS.

b. Display laser pointers in one of the following ways:

b-1. Display laser pointers in such a manner as to make them inaccessible to a customer present in the area allocated for customer use without assistance from an employee of the establishment.

b-2. Display laser pointers in such a manner that cameras or personnel can readily observe customers during all times the establishment is open to the public. Observation by personnel may be facilitated by mirrors.

**6.** PENALTIES. a. Any person convicted of violating sub. 4 shall forfeit $200 per violation.

Case 2:26-cv-01293-NJ    Filed 07/23/26    Page 11 of 37    Document 1-1

b. Any person convicted of violating any provision of this section except sub. 4 shall forfeit not less than $500 nor more than $5,000 per violation or, upon default of payment, be imprisoned for not more than 90 days.

### 105-46. Sale of Electric Scooters.

**1.** DEFINITION. In this section, "electric scooter" means a vehicle which is designed and built to be stood or sat upon by the operator and that has 2 small-diameter wheels in tandem, upright t-shaped handlebars, and is powered by an internal combustion engine or electric motor that is capable of propelling the device with or without human propulsion. For the purposes of this section, an electric personal assistive mobility device, a moped, a motor bicycle or a motorcycle, as defined under s. 340.01, Wis. Stats., is not an electric scooter.

**2.** POSTING OF NOTICES TO BUYERS REQUIRED. Every retail commercial establishment selling electric scooters shall have posted on the premises in a prominent and conspicuous manner at or near the display of such item a placard stating as follows: "IMPORTANT NOTICE TO POTENTIAL ELECTRIC SCOOTER BUYERS: The operation of electric scooters upon public roadways, bicycle ways and sidewalks is against the law. Electric scooters may only be operated with permission on private property, and on private roads and driveways."

**3.** SIGNED STATEMENT REQUIRED. Every retail commercial establishment selling electric scooters shall obtain from every person buying an electric scooter a signed statement on forms provided by the city clerk stating that the buyer is aware that electric scooters cannot be operated within the city on public roadways, bicycle ways and sidewalks, as set forth in chs. 341 and 346, Wis. Stats., as amended. The seller must retain the statement for a period of not less than one year from the date of sale.

**4.** PENALTY. Any person convicted of violating any provision of this section, shall forfeit not less than $500 nor more than $5,000 per violation, or upon default of payment be imprisoned in the house of correction or the county jail for not more than 90 days or until such forfeiture costs are paid.

### 105-47. Fireworks. 1. SALES, DISCHARGE AND USE PROHIBITED. No person may sell, expose or offer for sale, use, keep or discharge, or explode in this city any firecracker, bottle rocket, cherry bomb, colored smoke bomb, toy cap, blank cartridge, toy pistol or cannon in which explosives are used, contrivances using explosive caps or cartridges, sparklers, display wheels, the type of balloon which requires fire underneath to propel it, torpedoes, sky rockets, Roman candles, aerial salutes, American or Chinese bombs or other fireworks of like construction, or any other fireworks containing any explosives of like construction, or any fireworks containing any explosives of flammable compound, or any tablets or other device commonly used and sold as fireworks containing nitrates, chlorates, oxylates, sulphides of lead, barium, antimony, arsenic, mercury, nitroglycerine, phosphorous, or any compound containing any of the same or other explosives.

**2.** STORAGE AND WHOLESALING. This section does not prohibit any resident, wholesaler, dealer or jobber firm from selling fireworks at wholesale, provided they are shipped or delivered directly outside the city limits.

**3.** PENALTY. a. Any person violating this section shall upon conviction forfeit not less than $500 nor more than $1000, and upon default thereof shall be imprisoned in the county jail or house of correction for a period not to exceed 40 days, or until the forfeiture costs are paid.

b. A parent or legal guardian of a minor who consents to the use of fireworks by the minor shall forfeit not more than $1000, and upon default thereof shall be imprisoned in the county jail or house of correction for a period not to exceed 40 days, or until the forfeiture costs are paid.

### 105-48. Smoking Prohibited. 1. ADOPTION OF STATE LAW. The city adopts the provisions of s. 101.123, Wis. Stats., regulating smoking except as otherwise provided in city provisions not in conflict with s. 101.123, Wis. Stats., or other state statutes or administrative rules.

**2.** DEFINITIONS. In this section:

a. "City building," as referenced in s. 101.123(2)(a)8r, Wis. Stats., means a building, or portion of any building, owned or leased by the city including any enclosed walkway connecting city buildings or structures.

b. "Enclosed place" means all space between a floor and ceiling that is bounded by walls, doors, or windows, whether open or closed, covering more than 50 percent of the combined surface area of vertical planes constituting the perimeter of the area. A wall includes any retractable divider, garage door, or other physical barrier, whether temporary or permanent. A 0.011 gauge screen with an 18 by 16 mesh count is not a wall.

Case 2:26-cv-01293-NJ     Filed 07/23/26     Page 12 of 37     Document 1-1

**3.** EXCEPTIONS. Prohibitions against smoking shall not apply to any of the following:

a. A private residence.

b. A room used by only one person in an assisted living facility as his or her residence.

c. A room in an assisted living facility in which 2 or more persons reside if every person who lives in that room smokes and each of those persons has made a written request to the person in charge of the assisted living facility to be placed in a room where smoking is allowed.

d. A retail tobacco store that has been in existence since June 3, 2009, and in which the smoking of cigars and pipes has been allowed.

e. A tobacco bar that has been in existence since June 3, 2009, and in which only the smoking of cigars and pipes has been allowed.

**4.** ELECTRONIC CIGARETTES. Prohibitions against smoking under this section shall include use of an electronic smoking device and electronic smoking device paraphernalia, as defined in s. 106-30.2-1.

**5.** PENALTIES. a. Any person violating the state prohibition against smoking in enclosed places or upon those unenclosed spaces identified in s. 101.123(d) and (e), Wis. Stats., shall be subject to a forfeiture of not less than $100 nor more than $250, and upon failure to pay the forfeiture, may be subject to not less than 2 nor more than 5 days of confinement in the county jail or house of correction.

b. Any person in charge of property as defined in s. 101.123(1)(d) Wis. Stats., who violates the provisions of s. 101.123(2m)(b) to (d), Wis. Stats., shall be subject to a forfeiture of $100 and, upon failure to pay the forfeiture, may be confined in the county jail or house of correction for a period of 2 days. No person may be held subject to more than $100 total forfeiture for violations occurring on the same calendar day. For violations subject to the forfeiture provided in this paragraph, no citation shall be issued to a person in charge who has not received a prior written warning notice.

c. Any person using an electronic smoking device as defined in s. 106-30.2-1 in a place where smoking cigarettes is prohibited by state law shall upon conviction forfeit not less than $100 nor more than $250.

d. Any person using electronic smoking device paraphernalia as defined in s. 106-30.2-1 in a place where smoking cigarettes is prohibited by state law shall upon conviction forfeit not less than $100 nor more than $250.

**105-49. Smoking Prohibited on City Property.**

**1.** SMOKING PROHIBITED UPON UNENCLOSED CITY PROPERTY. a. The commissioner of public works may designate unenclosed properties owned or leased by the city as areas where smoking is prohibited for the purpose of protecting and preserving the health and comfort of the public.

b. Smoking or carrying, possessing, or being in control of any lit tobacco product is prohibited within 30 feet of any public building owned or leased by the city.

**2.** STATE SIGNAGE REQUIREMENTS. Signs setting forth the prohibition against smoking shall comply with requirements established by the state of Wisconsin department of safety and professional services, if any, and shall include information reasonably sufficient to inform individuals of the physical area within which smoking shall not be permitted. It is a violation of this section for an individual, following warning by any city employee or by any member of the public, to continue smoking within the posted area.

**3.** DESIGNATION OF OUTSIDE SMOKING AREAS. Notwithstanding any other provision of this section, any person in charge of a restaurant, tavern, private club or retail establishment may designate an outside area that is a reasonable distance from any entrance to the restaurant, tavern, private club or retail establishment where customers, employees, or persons associated with the restaurant, tavern, private club or retail establishment may smoke as provided in s. 101.123(4m), Wis. Stats., governing local authority to regulate smoking on public property. Any person in charge of a restaurant, tavern, private club or retail establishment that designates an area for smoking which is a reasonable distance from any entrance to a restaurant, tavern, private club or retail establishment shall assure that the designated area is kept free of litter including cigarette butts or other tobacco products.

**4.** ELECTRONIC CIGARETTES. Prohibitions against smoking on city property under this section shall include use of an electronic smoking device and electronic smoking device paraphernalia, as defined in s. 106-30.2-1.

**105-49.5. Use of Smokeless Tobacco Products Prohibited. 1.** DEFINITIONS. In this section:

a. "Person in charge" means the person, or his or her agent, who ultimately controls, governs or directs the activities at a sporting event venue where the use of smokeless tobacco is prohibited under this section.

Case 2:26-cv-01293-NJ    Filed 07/23/26    Page 13 of 37    Document 1-1

b. "Smokeless tobacco" means any product that contains cut, ground, powdered or leaf tobacco and is intended to be placed in the oral or nasal cavity for purposes other than smoking, including chewing tobacco, dipping tobacco, dissolvable tobacco products, snuff and snus, but does not include any product that has been approved by the U.S. Food and Drug Administration for sale as a tobacco cessation product or for other therapeutic purposes where such product is marketed and sold solely for such an approved purpose.

c. "Sporting event venue" means any venue in which sporting events occur. This includes the entire physical area in which the sporting event occurs, including open, semi-open and enclosed spaces and structures, playing fields, dugouts, bullpens, training rooms, locker rooms, team bench areas, spectator seating areas, pedestrian walkways, bathrooms, dining areas, vendor areas, offices, recreational areas, parking lots and designated tailgating areas.

d. "Sporting event" means any professional, collegiate, high school or organized amateur game or athletic competition organized by a league or association of persons, including but not limited to baseball, softball, football, basketball, hockey, track and field, field hockey, lacrosse or soccer.

**2.** USE OF SMOKELESS TOBACCO PROHIBITED. The use of smokeless tobacco is prohibited at sporting event venues.

**3.** RESPONSIBILITY OF PERSONS IN CHARGE.

a. No person in charge may allow any person to use smokeless tobacco in violation of sub. 2 at a location that is under the control or direction of the person in charge.

b. A person in charge shall comply with par. a by doing all of the following:

b-1. Posting signs setting forth the prohibition and providing other appropriate notification and information concerning the prohibition.

b-2. Refusing to serve food or drink to a person who is in violation of sub. 2.

b-3. Asking a person who is in violation of sub. 2 to refrain from using smokeless tobacco and, if the person refuses to do so, asking the person to leave the sporting event venue.

b-4. If a person refuses to leave a sporting event venue after being requested to do so as provided in subd. 3, the person in charge shall immediately notify an appropriate law enforcement agency of the violation.

**4.** PENALTIES.

a. Any person violating the prohibition set forth in sub. 2 shall be subject to a forfeiture of not less than $100 nor more than $250.

b. Except as provided in par. c or d, any person in charge who violates sub. 3 shall be subject to a forfeiture of $100 for each violation.

c. For violations subject to the forfeiture under par. b, if the person in charge has not previously received a warning notice for a violation of sub. 3, the law enforcement officer shall issue the person in charge a warning notice and may not issue a citation.

d. No person in charge may be required under par. b to forfeit more than $100 in total for all violations of sub. 3 occurring on a single day.

**105-50. Synthetic Marijuana 1.** POSSESSION, SALE AND USE PROHIBITED. No person shall possess, purchase, display for sale, attempt to sell, sell, give, barter or use any chemical derivative of marijuana, or any other substance, designed to mimic the physical, psychological, intoxicating, narcotic or other effects of marijuana.

**2.** MEDICAL AND DENTAL USE ALLOWED. Acts prohibited under par. 1 shall not be unlawful if done by or under the direction or prescription of a licensed physician, dentist, or other medical health professional authorized to direct or prescribe such acts, provided use is permitted under state and federal laws.

**3.** PENALTIES. Persons violating this section shall be subject to a forfeiture of not less than $100 nor more than $500 together with the cost of prosecution, and upon default shall be imprisoned in the county jail or house of correction for a period not to exceed 40 days, or until the forfeiture costs are paid.

**105-50.5. Age Restrictions on Hemp-derived THC Products 1.** DEFINITION. a. In this section, "hemp-derived cannabinoid" means either of the following:

a-1. A cannabinoid other than delta-9 tetrahydrocannibinal (THC) or an isomer derived from such cannabinoid (delta-8 THC, delta-10 THC, hexahydrocannabinol (HHC), HHC-O, THCA, THC-O, THCP, THCV).

a-2. A hemp-derived product containing delta-9 tetrahydrocannibol in a concentration of 0.3 percent or less.

b. "Hemp-derived cannabinoid" shall not mean any non-intoxicating cannabinoids, including cannabidiol (CBD), which is an active ingredient in cannabis, but does not cause intoxication by itself, is not addictive, and does not contain other isomers as listed in par. a.

**2.** AGE RESTRICTION ON THE SALE OF HEMP-DERIVED CANNABINOID. No person shall sell or provide hemp-derived cannabinoids to any person under the age of 21 at the time of transaction.

**3.** PENALTIES. Any person violating this section shall be subject to a forfeiture of not less than $400 nor more than $1,000 together with the cost of prosecution, and upon default may be imprisoned as provided by law.

**105-51. Hate Literature. 1.** DEFINITIONS. The word "person" when used in this section shall mean any person, individual, firm, partnership, corporation, organization or any officer, employee or agent thereof.

**2.** ANONYMOUS PUBLICATIONS PROHIBITED. It shall be unlawful for any person to print, post, publish, distribute, exhibit or cause to be printed, posted, published, distributed or exhibited, by any means or in any manner whatsoever, any handbill, dodger, circular, booklet, pamphlet, leaflet, card, sticker, periodical, pictorial print, picture, painting, literature or paper which tends to expose any individual or any racial or religious group to hatred, contempt, ridicule or obloquy, or tends to incite religious or racial hatred, unless the same has clearly printed or written thereon:

a. The true name and post office address of the person, individual, firm, partnership, corporation, or organization causing the same to be printed, posted, published, distributed or exhibited; and

b. If such name is that of a firm, corporation, or organization, the name and post office address of any individual acting in its behalf in causing such printing, posting, publication, distribution or exhibition.

**3.** PENALTY. Any person who shall violate, or cause to be violated, any provisions of this section shall upon conviction thereof be fined not less than $10 nor more than $500 together with the costs of prosecution, and, in default of payment of either such fine or costs, shall be confined in the house of correction of Milwaukee county for not less than 10 days and not more than 6 months.

**105-52. Kratom and Kava Prohibited**

**1.** POSSESSION, SALE, AND USE PROHIBITED. No person shall possess, purchase, display for sale, attempt to sell, sell, give, barter or use any chemical derivative of kratom or kava.

**2.** MEDICAL AND DENTAL USE ALLOWED. Acts prohibited under par. 1 shall not be unlawful if done by or under the direction or prescription of a licensed physician, dentist, or other medical health professional authorized to direct or prescribe such acts, provided use is permitted under state and federal laws.

**3.** PENALTIES. Any person violating this section shall, upon conviction, be subject to a forfeiture of not less than $100 nor more than $500 together with the cost of prosecution, and upon default shall be imprisoned as provided by law.

**105-53. Entrance to Government Pier.**

**1.** WARNING SIGNS. It shall be unlawful for any person to enter upon or remain on the government breakwater, known as government pier, located in the McKinley beach area at the point where E. Brady Street extended east intersects the shore of Lake Michigan, at such times as warning signals or signs are displayed at or near the entrances indicating admission onto the breakwater as closed to all persons. Such warning devices shall consist of a red light, the sounding of a siren, or the posting of a sign at or near the entrances to the government breakwater. Nothing contained in this section shall be construed as to interfere with interstate commerce or with the federal government's paramount right to the use of said government breakwater.

**2.** PENALTY. Any person who violates the provisions of this section shall be punished by a fine of not less than $10 nor more than $50 or by imprisonment in the house of correction of Milwaukee county for not more than 30 days.

**105-55. Soliciting of Magazines on Public Streets. 1.** UNLAWFUL. It shall be unlawful to engage in the business of soliciting or taking subscriptions for any magazines or periodicals for future delivery in or upon any public street or alley, or sidewalk, or in any area or doorway or entranceway immediately abutting thereon.

**2.** PENALTY. Any person who shall violate any of the provisions of this section shall, upon conviction thereof, be punished by a fine not to exceed $100, or, in default of payment thereof, be committed to the county jail or house of correction of Milwaukee county not to exceed 30 days or until such fine and costs shall have been paid.

Case 2:26-cv-01293-NJ    Filed 07/23/26    Page 15 of 37    Document 1-1

**105-55.5. Special Event Permits.**

**1.** DEFINITIONS. In this section:

a. "Class AA event" means a special event authorized by the common council and mayor by separate agreement or resolution for purposes of safely facilitating large public gatherings of people by restricting vehicular and pedestrian access and use within a designated area larger than one contiguous city block and within a defined timeframe in excess of 2 days, and that requires more than 150 hours of services as determined and documented by the police department and the department of public works based on the size, nature and location of the event.

b. "Class A event" means a special event, other than a Class AA event, requiring at least 100 hours of service as determined by the police department, based on the size, nature and location of the event.

c. "Class B event" means a special event requiring a minimum of 25 and a maximum of 99 hours of service as determined by the police department, based on the size, nature and location of the event.

d. "Class C event" means a special event requiring less than 25 hours of service as

determined by the police department, based on the size, nature and location of the event, or:

e. "Class D event" means a special event requiring no hours of service as determined by the police department, based on the size, nature and location of the event, or:

e-1. Special events sponsored by the city or veterans groups.

e-2. Elementary and secondary school events under the direction and supervision of school authorities.

e-3. Demonstrations conducted for the purpose of indicating approval or disapproval of governmental policies or practices, expressing a view on public issues, or bringing into public notice any issue or other matter.

f. "Special event" means any planned extraordinary, temporary use of the public right-of-way or public premises, including sidewalks, streets, alleys, designated parking spaces and loading zones, or any other public space under the jurisdiction of the department of public works, for any of the following:

f-1. A parade, procession, demonstration, race or festival.

f-2. A block party for residents of one contiguous block.

f-3. A photo, film or video shoot.

f-4. The parking, loading, unloading and idling of motor buses, semi-truck tractors and trailers, cargo trucks, passenger or cargo vehicles, or cargo trailers associated with an event at a licensed public

entertainment premises or other permitted event, or associated with nearby lodging or a civic, social, familial or business event.

f-5. The storage of equipment, materials or supplies associated with an event at a licensed public entertainment premises or other permitted event or associated with nearby lodging or a civic, social, familial or business event.

f-6. A school recess play area.

f-7. A pedestrian and vehicular traffic safety zone imposing directional requirements and exclusive use and access restrictions.

**2.** APPLICATION.

a. Filing of Application. Any person, group, organization or association, other than a city official for city business, desiring to hold a special event on the public right-of-way or public premises shall make written application and file same in duplicate with the commissioner of public works not less than 7 calendar days prior to Class D events, except not less than 2 working days prior to demonstrations as specified in sub. 1-e-3; not more than 365 nor fewer than 60 days prior to Class A, B, and C events; and not more than 365 nor fewer than 90 days prior to Class AA events and to Class A, B and C events classified as "downtown events." For purposes of this section, "downtown events" are those special events to be held on the public right-of-way or public premises in the area bounded by St. Paul Avenue on the south and Juneau Avenue on the north, Prospect Avenue on the east and north 10th Street on the west, and shall also include the Civic Center Plaza, bounded by west Wells Street on the south and west State Street on the north, north 7th Street on the east and north 9th Street on the west.

b. Contents of Application. The application shall contain the following information:

b-1. The name, address, home and business telephone numbers of the applicant, or if the applicant is an organization, the name, address, home and business telephone numbers of the authorized representative of the organization who will be responsible for the conduct of the special event.

b-2. The date on which the special event is to be conducted and the hours when such special event is expected to start and terminate.

b-3. A detailed map of the proposed route.

b-4. The approximate number of persons, animals and vehicles which will be used in the special event and a brief description of the animals and vehicles.

b-5. A description of the portion of the width of the streets proposed to be traversed, and the location by street address of any assembly areas.

Case 2:26-cv-01293-NJ     Filed 07/23/26     Page 16 of 37     Document 1-1

b-6.    If an applicant for a permit will be conducting a street festival as defined in s. 92-1-9, the applicant shall provide a list of all persons and their respective permanent addresses, including peddlers and solicitors, who have obtained permission from the respective festival organization to sell goods or take orders for the later delivery of goods within the barricaded area of the street festival, no later than 2 working days prior to each event for all non-food vendors and 7 working days for food vendors.

c.    Approval or Denial of Permit. Upon receipt of a completed application, the commissioner shall submit the application for review to the chief of police and the common council members in whose districts the event is to occur. The police department, in consultation with the commissioner and the local common council member or members, shall determine the classification of each special event. The commissioner shall have the authority to modify the route, time and place of a special event to facilitate crowd control in the interest of relieving congestion and promoting public safety, provided that the applicant's right of free speech is not denied thereby. The commissioner shall issue a permit unless:

c-1.    The special event is of such a size or nature requiring the diversion of so great a number of police officers, ambulances or other emergency services as to deny reasonable emergency services to the city as a whole.

c-2.    The time, route, size and nature of the special event will unreasonably disrupt the safe and orderly use of any street or any public place, or material portion thereof, which is ordinarily subject to great congestion or traffic at the proposed time, or substantially interrupt the safe and orderly movement of other traffic.

c-3.    The vehicles, equipment or other materials used in the special event do not comply with or meet all applicable health, fire and safety requirements.

c-4.    The special event will interfere or conflict with another special event for which a permit has already been issued, or with a construction or public works project.

c-5.    The conduct of the special event will be contrary to law, including noise regulations.

c-6.    The application for the permit, including any required attachments and submissions, is not fully completed and executed.

c-7.    The applicant has not tendered the required application fee with the application or has not tendered the required user fee, indemnification agreement, insurance certificate, or security deposit within the times prescribed by the commissioner of public works.

c-8.    The application for permit contains a material falsehood or misrepresentation.

c-9.    The applicant is legally incompetent to contract or to sue or be sued.

c-10.    The applicant or the person on whose behalf the application for permit was made has on prior occasions damaged city property and has not paid in full for such damage.

c-11.    The common council member in whose district the event is to occur, opposes the issuance of the permit based on guidelines specified in subds. 1 to 10.

d.    Appeal of Permit Denials. The commissioner of public works shall grant or deny the application for a special event permit and notify the applicant of a denial within 3 working days after the filing of an application for a Class D special event permit, except as soon as possible but not more than one working day for demonstrations as specified in sub. 1-e-3 or within 30 working days after the filing of an application for a Class AA, A, B or C special event permit. Any applicant who has been denied a special event permit may upon written request filed with the city clerk within 10 calendar days of issuance of the denial, have the denial reviewed by the appropriate common council standing committee, which shall forward its recommendation to the common council for affirmation or reversal of the initial action on the application. Such determination by the common council shall constitute final action. If the committee and the common council are unable to convene prior to the proposed date of the special event, the applicant may seek judicial review of the denial.

e.    Fees. The applicant for a special event permit shall pay the appropriate fee for the city services set forth in s. 81-114.6, no later than 3 days prior to the date of the special event. The commissioner of public works may establish fees for provision of additional city services requested by the applicant not set forth in s. 81-114.6. Permits shall be issued upon payment of appropriate fees.

f.    Exemptions. A permit fee is not required for Class D events. The commissioner of public works may establish fees for provision of additional city services requested by the applicant not set forth in s. 81-114.6.

g.    Refunds. Permit fee payments may be refunded, except for a $50 permit processing fee, if an application for a special event permit is denied by the commissioner of public works or if notification of cancellation of a permitted special event is received by the department of public works is at least 10 working days prior to the scheduled event.

**3.** CONTENTS OF PERMIT. Each special permit shall state the following information:

a. The name, address, home and business telephone numbers of the person or organization named on the permit.

b. A description of activity for which the permit has been issued.

c. The date, hour and location for the special event.

d. The expiration time and date.

e. When possible, the estimated attendance for the special event.

f. Where applicable, the minimum and maximum speeds, and maximum intervals of space to be maintained by units of a parade.

g. Portions of the streets that may be occupied by the special event.

h. Such other information as the commissioner of public works shall find necessary to the enforcement of this section.

**4.** PERMIT REGULATIONS.

a. City Not Liable. The special event permit application shall contain a statement that: "The applicant agrees to indemnify and save harmless the city from and against all liabilities, claims, demands, judgments, losses and all suits at law or in equity, costs and expenses including reasonable attorney fees, for injury or death of any person or loss or damage to the property of any person, firm, organization or corporation, including both parties thereto and their employees, arising as a consequence of granting of the permit for such special event." No permit may be issued unless the applicant has agreed to the terms of this statement on the written application.

b. Insurance. b-1. Each applicant for a Class AA, A, B or C event shall furnish with the application fee submitted to the department of public works a certificate of insurance written by a company licensed in the state of Wisconsin, approved by the city and covering any and all liability or obligations which may result from the operations by the applicants' employees, agents, contractors or subcontractors, and including worker's compensation coverage in accordance with ch. 101, Wis. Stats. The certificate shall provide that the company will furnish the city with a 10-day written notice of cancellation, non-renewal or material change. The insurance shall be written in comprehensive form and shall protect the applicant and city against all claims arising from injuries to members of the public or damage to property of others arising out of any act or omission of the applicant, its employees, agents, contractors and subcontractors.

b-2. The policy of insurance shall provide minimum combined single limits for bodily injury and property damage of $1,000,000, or such other insurance as deemed to be adequate by the city attorney.

c. No Discrimination. The special event permit application shall contain a statement that: "The applicant agrees that the sponsoring organization will not exclude any person from the public area described in the permit because of race, color, national origin or handicap." No permit may be issued unless the applicant has agreed to the terms of this statement on the written application.

**5.** PENALTY. Any person violating the provision of this section, upon conviction, shall forfeit a maximum of $500 and the costs and disbursements of such action, and in default of payment thereof be confined in the county jail or house of correction for not more than 20 days, or until such forfeiture costs are paid.

**105-56. Sales on Public Premises.**

**1.** PURPOSE. It is determined and declared that the use of certain public premises for the specific public purposes to which such premises are intended is preeminent. It is further determined and declared that sales on the designated public premises interfere with their use for their intended purposes. It is further determined and declared that the use of the public sidewalk and streets outside of the entrance to the Wisconsin Center, the Auditorium, the Arena, the Milwaukee Public Museum, the Fiserv Forum, the Performing Arts Center, the Rave/Eagles Club, the Riverside Theater, Summerfest and American Family Field parking facilities, for sales interferes with the orderly ingress and egress to and from those premises and therefore with their use for their intended purposes.

**2.** REGULATIONS. a. It shall be unlawful for any person to sell or offer for sale any goods, merchandise, foodstuffs, tickets or any other articles of any kind on public premises reserved for specific public purposes and posted as such without the express written consent of the custodian of such premises.

b. It shall be unlawful for any person to sell, or offer to sell, any goods, merchandise, foodstuffs, tickets or any other article of any kind on any public street or public sidewalk within 500 feet of the premises of the Wisconsin Center, the Auditorium, the Arena, the Milwaukee Public Museum, the Fiserv Forum, the Performing Arts Center, the Rave/Eagles

Case 2:26-cv-01293-NJ    Filed 07/23/26    Page 18 of 37    Document 1-1

Club, the Riverside Theater, Summerfest or American Family Field parking facilities, for the period of time beginning 2 hours immediately before the commencement of any scheduled event therein and ending one hour immediately after the conclusion of the event. This paragraph does not apply to any sales or offers to sell on the premises listed.

**3.** EXCEPTIONS. Nothing in this section shall be construed to prohibit the resale of tickets to entertainment or sporting events at or below face value.

**4.** PENALTY. Any person convicted of violating any provisions of this section shall be fined not less than $20 nor more than $200 for each violation plus costs of prosecution. Each day's violation shall constitute a separate offense.

### 105-57. Sales on Public Right of Way (Special Events).

**1.** PURPOSE. It is determined and declared that the use of certain public right of way on the days on which certain special events listed in sub. 2 are scheduled for the specific public purposes to which the right of way is intended is preeminent. It is further determined and declared that sales on the designated public right of way in sub. 2 interferes with their use for their intended purposes. It is further determined and declared that the use of the public sidewalk and streets outside of the designated right of way for events listed in sub. 2 interferes with the orderly ingress and egress to and from those special events and therefore with their use for their intended purposes.

**2.** SPECIAL EVENTS; DESIGNATED RIGHT OF WAY. The right of way for Jazz in the Park, River Rhythms, the Westown Farmer's Market, and certain special events designated by the commissioner of public works shall be as described in the application for the special event permit issued by the department of public works.

**3.** REGULATIONS. a. It shall be unlawful for any person to sell, or offer to sell, any goods, merchandise, foodstuffs, tickets or any other article of any kind on any public street or public sidewalk within 500 feet of the right of way for special events designated in sub. 2, for the period of time beginning 2 hours immediately before the commencement of any scheduled event therein and ending one hour immediately after the conclusion of the event. This paragraph does not apply to any sales or offers to sell within the designated right of way of the special events listed in sub. 2.

b. An organization sponsoring a special event specified in sub. 2 shall assign locations to vendors for the event. All vendor vehicles or tents must be located at least 15 feet apart from each other.

**4.** EXCEPTIONS. Nothing in this section shall be construed to prohibit the resale of tickets to entertainment or sporting events at or below face value.

**5.** PENALTY. Any person convicted of violating this section shall be fined $300 plus costs of prosecution, or in default of payment the violator shall be imprisoned for not more that 10 days.

**105-59.5. Police Escorts.** All requests for police escorts for funerals and other special events shall be made to the police department. Escorts shall be authorized at the discretion of the chief of police.

### 105-60. Abandoned Iceboxes or Refrigerators.

**1.** DECLARED A PUBLIC HAZARD. The abandonment or dangerous exposure of any icebox or refrigerator with its door, or doors, in normal latching or locking condition is declared to be a public nuisance and a serious menace to life because of the danger to children entering such iceboxes or refrigerators and becoming locked therein and suffocating.

**2.** REMOVAL OF LOCKS AND DOORS REQUIRED. It shall be unlawful for any person, firm or corporation to leave outside of any building or dwelling in a place accessible to children, any abandoned, unattended or discarded icebox, refrigerator, or any other container of any kind which has an airtight snap lock or other device therein without first removing the said snap lock or doors from said icebox, refrigerator or container.

**3.** PENALTY. Any person, firm or corporation violating any provisions of this section shall upon conviction thereof be punished by a fine not to exceed $100, and in default of payment, by imprisonment in the county jail or house of correction of Milwaukee county for a period not to exceed 90 days. Each day such violation is committed or permitted to continue shall constitute a separate offense and shall be punishable as such hereunder.

### 105-64. Vehicle Parking on Private Property.

**1.** Except as provided in sub. 2, no motor vehicle shall be left or parked within the front yard or the front, rear street, side street or side setback of the principal building of any residential property, including single family, 2-family and multi-family dwellings.

Case 2:26-cv-01293-NJ    Filed 07/23/26    Page 19 of 37    Document 1-1

**2.** For single and 2-family dwellings, access drives may be used for parking, including access drives on setbacks. For multi-family dwellings, access drives within a front, side street or rear street setback shall not be used for parking.

**3.** A vehicle owner whose vehicle is parked in violation of this section shall be subject to a forfeiture of not less than $50 nor more than $500, together with the costs of prosecution, for each violation.

**4.** CITATIONS. In addition to other applicable enforcement procedures and pursuant to ch. 800, Wis. Stats., the commissioner of public works and the commissioners designees may issue citations pursuant to the citation procedure in s. 50-25 to any person violating this section.

**105-65. Control of Abandoned Motor Vehicles and Trailers. 1.** ABANDONMENT PROHIBITED. No person shall abandon any motor vehicle or trailer on any highway or public or private property within the city, and no person shall leave any motor vehicle or trailer unattended on such highway or property within the city for such time and under such circumstances as to cause such motor vehicle or trailer reasonably to appear to have been abandoned. Motor vehicles or trailers which are in a condition of disrepair and lack valid registration plates shall be deemed to have been abandoned within the meaning of this section. Whenever any other motor vehicle or trailer has been allowed to remain standing on such highway or public property in the city for more than 72 hours after a police officer, or the commissioner of public works or the commissioner's designee placards the motor vehicle or trailer and 48 hours after mailing of a notice to the last known address of the owner, the same shall be deemed to have been abandoned within the meaning of this section. The notice shall inform the owner of the manner of avoiding a declaration of abandonment, of the means of reclaiming the motor vehicle or trailer should it be deemed abandoned, and of the availability of a review before the city attorney.

**2.** ABANDONED VEHICLES ON PRIVATE PROPERTY. Whenever any motor vehicle or trailer has been allowed to remain on any private property in ordinary public view without the consent of the property owner, or agent, and for longer than 72 hours after a police officer, or the commissioner of public works or the commissioner's designee placards the vehicle, said vehicle or trailer shall be deemed abandoned.

**3.** REMOVING AND IMPOUND- ING. The chief of police or the commissioner of public works or any person acting on their behalf is authorized to remove or cause to be removed any motor vehicle or trailer which reasonably appears to be in violation of subs. 1 or 2, except that the removal of a motor vehicle or trailer in violation of sub. 1 may only be performed by or under the direction of a traffic officer or towing contractor under contract to the city. Whenever the vehicle reclamation charges as provided in s. 101-25-1 are paid, the vehicle shall as released to its owner. Whenever the citation upon which removal and storage is authorized is released by the chief of police, or by the city attorney after a review, or whenever the charge for which the citation upon which removal and storage is authorized is dismissed by the court, the commissioner of public works shall release the vehicle without payment of vehicle reclamation charges and shall refund any vehicle reclamation charges for such vehicle which shall have been previously paid.

**4.** DISPOSAL OF UNCLAIMED VEHICLES AND TRAILERS. a. As soon as practical after the removal, a duly authorized representative of the commissioner of public works shall appraise the value of the motor vehicle or trailer based on the prevailing salvage market.

a-1. If the commissioner or the commissioner's authorized representative determines that towing and storage charges exceed the value of the vehicle or trailer, the vehicle or trailer shall be retained in storage for a period of not less than 15 days after notice has been sent to the last known address of the owner of record to permit reclamation of the vehicle or trailer. The notice shall inform the owner of any rights to reclaim personal property, the amount of storage charges which are accruing and any right to reclaim the vehicle within the appropriate period. The commissioner or the commissioner's duly authorized representative may perform a salvage value appraisal of a vehicle or trailer.

a-2. If the commissioner of public works or the commissioner's authorized representative determines that the value of a motor vehicle or trailer, based on the prevailing salvage market, exceeds the towing and storage charges, or that the vehicle is substantially complete and in excess of 19 model years of age, the vehicle or trailer shall be retained in storage for a period of not less than 30 days after certified mail notice has been sent to the owners and lienholders of record to permit reclamation of the

Case 2:26-cv-01293-NJ     Filed 07/23/26     Page 20 of 37     Document 1-1

vehicle or trailer. The notice shall inform the owner or lienholder of record of any rights to reclaim personal property, the amount of storage charges that are accruing, and any right to reclaim the vehicle within the appropriate period. The notice shall set forth the year, make, model and serial number of the abandoned motor vehicle or trailer, the place where the vehicle or trailer is being held, and that the failure of the owner or lienholder to exercise his or her rights to reclaim the vehicle or trailer under this section shall be deemed a waiver of all right, title and interest in the vehicle or trailer and a consent to the sale or other disposal of the vehicle or trailer in the manner prescribed in par. b. Each retained vehicle or trailer not reclaimed by its owner or lienholder may be sold, scrapped or otherwise disposed of in a manner prescribed by the commissioner.

b. After the motor vehicle or trailer shall have been stored and notice given as provided for in par. a-1, and the vehicle or trailer shall not have been reclaimed, the commissioner of public works or a person authorized by the commissioner may sell or dispose of the vehicle or trailer unless it is a substantially complete vehicle older than 19 model years of age.

b-1. Notice of the sale shall be published in a daily newspaper having a general circulation in the city for 3 consecutive days, but the same notice may include one or more motor vehicles or trailers. Upon sale, the highest bid for any motor vehicle or trailer shall be accepted unless the highest bid is inadequate in the judgment of the commissioner in which event all bids may be rejected. In case all bids are rejected or no bid is received, the commissioner may, in his or her discretion, readvertise the sale or adjourn the same from time to time to a definite date each time, or sell, scrap or otherwise dispose of the motor vehicle or trailer without further public notice.

b-2. After the motor vehicle or trailer shall have been stored and notice given as provided for in par. a, the commissioner is authorized to make any motor vehicle or trailer remaining unclaimed available for use for municipal purposes, when deemed by the central board of purchases to be in the best interests of the city. No city department may use or remove from storage any unclaimed motor vehicle or trailer, for any purpose, without first obtaining approval from the central board of purchases. An inventory shall be maintained pursuant to s. 66.0139, Wis. Stats.

c. At any time prior to the removal of impounded motor vehicles or trailers which have been sold as herein provided, any person establishing his ownership or right of possession to such vehicle or trailer may reclaim and obtain possession of the same by satisfying the statutory lien for accrued storage, towing and other expenses incident to the care of the same. Whenever a vehicle or trailer is reclaimed under this paragraph, the commissioner shall refund any payment made by a purchaser for the reclaimed vehicle or trailer.

d. Following the city's sale of an abandoned motor vehicle or trailer as provided in par. b, the purchaser shall have 10 days to remove the vehicle or trailer from the storage area, but shall pay a reasonable storage fee established by the city for each day the vehicle remains in storage after the second business day subsequent to the sales date. Ten days after the sale, the purchaser shall forfeit all interest in the vehicle or trailer and the vehicle or trailer shall be deemed to be abandoned and may be sold again.

**6.** PENALTY. Any person violating sub. 1 or 2 shall be fined not less than $10 nor more than $200 and costs of prosecution, and in default of payment thereof, shall be imprisoned in the county jail or house of correction of Milwaukee county until such fine and costs are paid, such imprisonment not to exceed 90 days.

**7.** CITATIONS. In addition to other applicable enforcement procedures and pursuant to ch. 800, Wis. Stats., the commissioner of public works and the commissioners designees may issue citations pursuant to the citation procedure in s. 50-25 to any person violating this section.

Case 2:26-cv-01293-NJ    Filed 07/23/26    Page 21 of 37    Document 1-1

**105-66. On-Street Motor Vehicle Repair.**

**1.** PROHIBITED. No person shall use any street within the city as a site or place to repair, grease or lubricate any motor vehicle while said motor vehicle is parked, stopped or left standing, attended or unattended.

**2.** DEFINITIONS. For the purposes of this section "motor vehicle" shall mean a vehicle as defined in s. 340.01(35), Wis. Stats., and "street" shall mean a street as defined in s. 340.01(64), Wis. Stats.

**3.** DISABLED VEHICLES. This section shall not apply to emergency or temporary repairs as may be necessary to move such vehicle when such vehicle becomes disabled while on the street in such a manner or such an extent that it is impossible to avoid stopping or temporarily leaving the vehicle on the street.

**3.5** ENFORCEMENT. The police department and the department of public works shall enforce this section.

**4.** PENALTY. Any person violating this section shall, upon conviction thereof, be subject to a forfeiture of not less than $10, nor more than $100, and in default of payment thereof, shall be imprisoned as provided by law. In addition, a citation may be issued for any violation of this section with or without prior notice, in accordance with s. 50-25.

**105-67. Vehicle Glass Tinting. 1**. DEFINITIONS. In this section:

a. "Tinted glass" means vehicle glass to which any film or other material or process has been applied to darken or restrict the passage of light through vehicle glass.

b. "Vehicle glass" means the glass vent, side and rear windows of any vehicle traveling on public roadways.

**2.** PROHIBITED. No person shall tint, or cause to be tinted, vehicle glass such that the glass is reflective, or fails to meet the tint standards set by this section for the passage of visible light striking the glass.

**3.** TINT STANDARDS. Vehicle glass or tinted glass shall not restrict the passage of visible light such that:

a. Less than 50% of the visible light striking the vent and front side windows passes through the vehicle glass or tinted glass.

b. Less than 35% of the visible light striking the rear side windows and the rear window passes through the vehicle glass or tinted glass.

**4.** Exception. Upon the recommendation of a physician or a Christian Science practitioner treating a vehicle owner, or an immediate family member of the owner of a vehicle, vehicle glass or tinted glass may block the passage of more than 50%

of visible light striking the vent and side windows, but not more than 65%.

**5.** ENFORCEMENT. The police department shall enforce this section.

**6.** PENALTY. Any person violating this section shall, upon conviction thereof, be subject to a forfeiture of not less than $500, nor more than $1,000, and in default of payment thereof, shall be imprisoned as provided by law. In addition, a citation may be issued for any violation of this section with or without prior notice, in accordance with s. 50-25.

**105-69. Harmful Substances. 1.** DEFINITION. Harmful substances shall mean any substance, other than toxic glues as defined in s. 105-70, having the property of releasing toxic vapors or which vaporizes to produce a vapor, gas or fume which when inhaled produces intoxication, stupefaction, irrational behavior, paralysis, or changing, distorting or disturbing his or her eyesight, thinking process, judgment, balance or muscular coordination.

**2.** SMELLING OR INHALATION PROHIBITED. No person shall within the limits of the city smell gases or inhale the fumes or vapors of any harmful substance with the intent of being intoxicated, stupified, irrational, paralyzed or of changing or distorting or disturbing his or her eyesight, thinking process, judgment, balance or muscular coordination.

**3.** SALE OR TRANSFER. No person shall, within the limits of the city, for the purpose of violating or aiding another to violate this section, possess, buy, sell, transfer possession, or receive possession of any harmful substance. No person shall sell or transfer possession of any aerosol spray paint containing a harmful substance having the property of releasing toxic vapors to any person under 18 years of age.

**4.** PENALTY. Any person, firm or corporation violating this section shall upon conviction thereof be punished by a fine of not less than $100 nor more than $500 together with the costs and disbursements of the prosecution and in default of payment thereof shall be imprisoned in the county jail or house of correction for a period of time not to exceed 60 days. Each day that each violation continues shall be considered a separate offense.

**105-70. Toxic Glues. 1.** DEFINITION. Toxic glue shall mean any glue, adhesive cement, mucilage, plastic cement, or any similar substance containing one or more of the following volatile substances: Acetone, benzene, butyl alcohol, cyclohexanone, ethyl acetate, ethyl alcohol, ethylene dichloride, hexane, isopropyl alcohol, methyl alcohol, methyl cellosolve, acetate, methyl ethyl ketone, methyl isobutyl ketone, pentachlorophenol, petroleum ether, trichlorethylene, tricresyl phosphate, toluene, toluol or

Case 2:26-cv-01293-NJ    Filed 07/23/26    Page 22 of 37    Document 1-1

any other chemical capable of producing intoxication when inhaled.

**2.** INHALATION PROHIBITED. No person shall inhale or otherwise introduce into his respiratory tract any toxic glue or any vapors or fumes which may be released from any toxic glue with the intent of becoming intoxicated, elated, excited, stupified, irrational, paralyzed or of changing, distorting, or disturbing his eyesight, thinking process, judgment, balance or muscular coordination.

**3.** SALE OR TRANSFER. No person shall, for the purpose of violating or aiding another to violate this section, possess, buy, sell, transfer possession or receive possession of any toxic glue. No person shall sell or transfer possession of any toxic glue to any person under 18 years of age, provided, however, that one tube or container of toxic glue may be sold or transferred to a child under 18 years of age immediately in conjunction with the sale or transfer of a model kit, if the kit requires approximately such quantity of the glue for assembly of the model, and provided, further, that nothing herein contained shall be applicable to the transfer of a tube or other container of such glue from a parent to his child or from a legal guardian to his ward.

**4.** PENALTY. Any person, firm or corporation violating this section shall upon conviction thereof be punished by a fine of not less than $100 nor more than $500 together with the costs and disbursements of the prosecution, and in default of payment thereof shall be imprisoned in the county jail or house of correction for a period of time not to exceed 60 days. Each day that each violation continues shall be considered a separate offense.

**105-71. Vision Triangles.**

**1.** STANDARDS. a. Vision Triangles Established. Vision triangles at grade intersections of streets, streets and alleys and streets and access drives shall be as established in s. 295-405-1-g.

b. Objects Within Vision Triangle. Opaque fences and other opaque objects, such as but not limited to coniferous trees and shrubs and utility boxes, located in the vision triangle shall not exceed 3 feet in height. Semi-opaque and open fences and other semi-opaque objects, such as but not limited to deciduous trees and shrubs, sign and utility poles, traffic standards, and masonry fence piers not exceeding 16 inches in width shall be permitted if they are sufficiently transparent to ensure vehicular and pedestrian safety. Any bushes, hedges, fences, trees or other obstructions, except those permitted as stated in this paragraph, located within the vision triangle are declared to be public nuisances.

d. Within the area established by the vision setback line and the highway lot lines, there shall be no bushes, hedges, fences, trees or other obstructions, except natural lot grade and legally parked vehicles, with a height of more than 3 feet above the elevation of the center of the street, alley or street and alley intersection, excepting necessary highway and traffic signs, public utility lines and open fences through which there is clear vision, and excepting that tall trees shall be permitted in such areas, provided that the lowest branches shall not be lower than 5 feet above the elevation of the center of the intersections, and excepting further that the provisions of this section shall not apply where the building and zoning code permits a principal use building to occupy the area described above. Any bushes, hedges, fences, trees or other obstructions, except those permitted as stated above, located within the area established by the vision setback line and the highway lot lines are hereby declared to be public nuisances.

**2.** DEFINITIONS. The definitions contained in s. 340.01, Wis. Stats., shall apply to this section.

**3.** INVESTIGATION. Investigation of violations of this section shall be conducted by the police department.

**4.** VIOLATIONS. Whenever the safety commission shall find that any bushes, hedges, fences, trees or other obstructions growing or located upon private premises are a public nuisance as defined in this section, or endanger the life, health, safety or property of the public, the commission shall notify the owner or agent in writing or by publication in a newspaper of general circulation in the city that the nuisance must be removed or otherwise abated as directed in the notice within the time specified, which shall not be less than 10 days, unless the commission shall determine that immediate correction or removal is necessary for the public safety. With respect to fences, the commission shall inform the commissioner of neighborhood services and he or she shall proceed according to the provisions of subch. 3, ch. 200.

**5.** APPEALS. Appeals relating to violations of sub. 1 and subsequent notification to remove or abate nuisances pursuant to sub. 4 may be made to the administrative review appeals board, pursuant to s. 320-11.

**6.** COMPLIANCE. If the owner of such premises or his agent shall refuse or neglect to comply with the notice within the time specified, the commissioner of public works, with respect to bushes, hedges and trees, shall cause the nuisance to be removed or otherwise abated at the expense of the owner of the land whereon the same is located.

**7.** COST ASSESSMENTS. The commissioner of public works shall keep a strict account of the labor expended upon such work and

Case 2:26-cv-01293-NJ    Filed 07/23/26    Page 23 of 37    Document 1-1

the cost thereof and make a report to the comptroller monthly on the first of each month for each district in the city, stating and certifying the description of the lots, parts of lots, or parcels of land, in front or rear of, or upon which such work shall have been done, and the comptroller shall at the time of making his annual report to the common council of lots or parcels of land subject to a special tax or assessment include therein the said lots or parcels so reported to him by said commissioner of public works with the aggregate amount chargeable thereto according to such report and such amounts shall be levied on the lots or parcels of land respectively to which they are so chargeable in like manner as other special taxes are levied in said city.

**8.** INTERFERENCE. No person, corporation or association shall prevent, delay or interfere with the employees of the department of public works in the investigation of alleged violations of this section and in the removal of any nuisances as defined in this section herein.

**9.** PENALTY. Any person, firm or corporation, or any agent or employee thereof, who violates this section shall, upon being found guilty thereof, be subject to a forfeiture of not less than $20 nor more than $100, together with the costs and disbursements of prosecution, and in default of payment thereof, be imprisoned in the county jail or house of correction of Milwaukee county until such fine, costs and disbursements are paid, such imprisonment not to exceed more than 30 days.

**10.** APPLICABILITY. The provisions of this section shall apply to all presently existing uses of property.

**105-73. Municipal Silent Alarm Service.** Direct fire or burglary alarm service between any private firm or government agency with any agency of the city may be authorized upon adoption of a resolution authorizing the service between the private firm or government agency with a city agency. See s. 81-2.5 for the required service fee.

**105-75. Private Alarm Systems and Regulations. 1.** PURPOSE. The purpose of this section is to regulate alarm systems and to minimize false alarms from these systems. Alarm businesses shall be licensed by the city under this section. A direct alarm connection to any agency of the city shall comply with s. 105-73.

**2.** DEFINITIONS. In this section:

a. "Alarm business" means any person engaged in providing, selling, leasing, renting, installing, monitoring, servicing, altering, moving or causing any alarm system to be sold, installed, monitored, serviced or altered in or on any other person's building, place of business, structure, residence or other facility for compensation. Excluded from this definition is any person engaged solely in the business of designing the system for the location.

b. "Alarm monitoring service" means any person that provides service to alarm users by receiving signals, at a central station or other site, from an alarm system or systems that indicate an activation of a fire, burglary or robbery alarm, notifies or dispatches alarm representatives or a first responder service to alarm sites or reviews appropriate real-time electronic or other verification, and relays alarm messages to fire or police departments. An alarm monitoring service may be located within the state of Wisconsin or at locations outside this state. An alarm monitoring service does not include monitoring of any person's own business or residential alarm.

c. "Alarm representative" means any person employed or contracted by an alarm business or monitoring service whose duties include the altering, installing, maintaining, repairing, servicing, monitoring or responding to an alarm system.

d. "Alarm sales" means activities related to marketing and sales, rental or leasing of alarm systems, alarm systems installation, and maintenance intended for residential or business alarm users. Alarm sales activities include the distribution of product and service information to members of the public by electronic, telephonic, broadcast, signage, posting of printed material or other written means and include oral information provided door-to-door or otherwise. Excluded from this definition are retail establishment sales of alarm system hardware to on-site customers and who provide no other alarm system services with the exception of equipment warranty coverage.

e. "Alarm sales personnel" means that person or those persons employed by, contracted by, or otherwise engaged in the sale, rental or leasing of alarm systems within the city. "Alarm sales personnel" does not mean a person or persons employed or contracted by a retail establishment to assist customers in on-site sale of alarm system hardware and selling no other alarm system services with the exception of equipment warranty coverage. "Alarm sales personnel" does not mean any person or persons engaged in the preparation or design of marketing or sales information or materials and not engaged in other alarm system sales activities.

f. "Alarm system" means any mechanical or electrical equipment arranged to signal the occurrence of a fire, burglary or robbery alarm requiring immediate fire or police department notification, including local alarms which are audible or visible upon the exterior of a structure.

g. "Alarm user" means the person in control of any building, structure or facility or portion thereof in which an alarm system is in operation.

Case 2:26-cv-01293-NJ    Filed 07/23/26    Page 24 of 37    Document 1-1

h.      "False alarm" means an alarm notification summoning a city agency to the location of an alarm activation, when the responding officer finds no indication of burglary, attempted burglary, robbery, attempted robbery or fire. "False alarm" does not include an alarm activation signal caused by extraordinary conditions of weather such as high winds, thunder and lightning storms or other systemic electric disturbances.

i.      "Falsely verified alarm" means a verified alarm in which the police responded and determined the alarm to be a false alarm.

j.      "Local alarm system" means any equipment arranged to signal the occurrence of a robbery or burglary with alarms from the premises in the immediate area of the structure.

k.      "Non-verified alarm" means an alarm which has not been verified by a person or private first responder.

L.      "Person" means an individual, firm, partnership, association, corporation or any other business entity with the exception of any government agency, government employees or individuals acting in the course of government business.

m.      "Private first responder service" means a service provided by an alarm business, either through an alarm representative or through a private security company is under contract with the business, that determines, by means of on-site inspection, whether a cause for alarm has occurred at the site of an activated burglary alarm. Excluded from the definition of private first responder service are those services or personnel directly employed or contracted by businesses to respond to their own alarm systems.

n.      "Prompt dispatch" means that the arrival at the alarm site of an alarm representative for verifying the alarm occurs within 30 minutes of alarm activation in the absence of unanticipated or extraordinary circumstances.

o.      "Verified alarm" means an alarm that a person or private first responder has determined is not a false alarm prior to contacting the police department.

**3.**      LICENSE REQUIRED.

a.      No alarm business, alarm sales business or private first responder service shall engage in business without first obtaining an alarm business license.

b.      Application for an alarm business license, private first responder service license or for an alarm sales license shall be filed with the city clerk on a form provided therefor. The application shall require:

b-1.      The name and home address of the applicant.

b-2.      The name of the alarm business, the alarm sales business, or the private first responder service.

b-3.      If the applicant is a corporation, the name of the corporation shall be set forth exactly as it is set forth in its articles of incorporation, together with the names and home address of each of its officers, directors and designated managers, if any. The application shall be verified by an officer of the corporation. If one or more of the officers is a corporation, the provisions of this section pertaining to a corporate applicant shall apply to the corporate officers.

b-4.      If the applicant is a partnership, the application shall set forth the name and home address of each of the partners, including limited partners, and the application shall be verified by each partner. If one or more of the partners is a corporation, the provisions of this section pertaining to a corporate applicant shall apply to the corporate partners.

b-5.      If the applicant is a club, association or other organization which is neither a corporation or partnership, the application shall set forth the exact name of the entity together with the names and home addresses of all officers and be verified by an officer of the club, association or organization.

b-6.      The date of birth of the applicant.

b-7.      If the applicant is an alarm business or alarm sales business, a detailed plan of operation that includes the following information:

b-7-a.      Identification of any subcontracting or cooperating business that provides or will provide services related to alarm systems installed or to be installed within the city, including monitoring services, private first responder services, repair and maintenance services, together with contact information for each. All private first responder services identified under this section, whether or not licensed, shall comply with the verified response requirements of sub. 14-c-4.

b-7-b.      Information identifying operations managers or supervisors with oversight of alarm system sales, installation and monitoring of private alarm systems or oversight of private alarm systems response activities within the city including phone numbers, fax numbers, and electronic mail addresses.

b-7-c.      A statement detailing the manner in which alarm sales activities will be conducted and certification that all alarm sales personnel will receive a minimum of 14 hours training within the first 2 weeks of employment in sales activities.

11/22/2016                                    -602

b-7-d.　If the application is for an alarm sales business license, a certification that a list of alarm sales personnel will be registered with the city clerk and updated within 10 days of employment of any additional alarm sales personnel and within 10 days of the termination of sales activities by any person previously registered as a salesperson.

b-7-e.　A certification that photographs of alarm sales personnel for all personnel who engage the public directly and in person in the course of sales activities will be submitted to the city clerk promptly upon engagement of alarm sales personnel in sales activities. The list provided in subpar. d shall separately identify those individuals who engage members of the public directly and in person in the course of sales activities from those individuals whose contact with members of the public is limited to telephonic or other electronic or remote medium of communication, or to individuals engaged in activities of posting or distribution of brochures, placards, flyers or other written communications.

b-7-f.　A list of any additional services provided to alarm users or subscribers which shall be updated within 10 days of any change in service subcontractor.

b-7-g.　If a private first responder service is provided either directly or by subcontract, a statement whether prompt dispatch is guaranteed.

b-7-h.　A statement whether the applicant will accept service of process or other notice by first class mail and providing the address for receipt of first class mail.

b-8.　Such other reasonable and pertinent information the common council or the proper licensing committee may from time to time require.

b-9.　All applicants not maintaining a place of business in the state of Wisconsin shall continuously maintain in this state a registered office and a registered agent for service of process, notice or demand required and permitted by law to be served on foreign corporations, the address of such office and the name and address of such agent to be filed with the city clerk.

c.　Post office box numbers shall not be acceptable for addresses required on applications.

d.　All applicants for licenses issued under this chapter shall be exempt from the fingerprinting requirement provided in s. 85-21-1.

**4.**　CHANGES TO BE REPORTED.

a.　A licensee shall notify the city clerk whenever there is a change in any information that is reported in the application form or renewal application form. The licensee shall make this notification in writing within 5 days after the change occurs.

b.　Whenever an alarm business changes any of its corporate officers, directors or agents, the corporation shall file the appropriate application and pay the fee required in s. 81-2-5. This application shall be completed and processed in the same manner as a new application subject to all the requirements of this section.

**5.**　FEE. All applications for alarm business licenses, alarm sales licenses and private first responder service licenses shall be accompanied by the fee specified in s. 81-2.

**6.**　INVESTIGATION AND COMMON COUNCIL ACTION; APPLICATION FOR NEW LICENSE. Each license application shall be referred to the chief of police, who shall cause an investigation to be made and report his or her findings to the city clerk. If the chief files no written report summarizing the arrests and convictions of the applicant which could form a basis for denial, the city clerk shall issue the license. If the chief files a written report summarizing the arrests and convictions of the applicant which could form a basis for denial, the application shall be subject to common council review and approval in accordance with the provisions of ss. 85-2.5 and 85-2.7.

**7.**　RENEWAL AND NON- RENEWAL.

a.　Procedure for Renewal. Applications for renewal shall be made to the city clerk. Each license application shall be referred to the chief of police, who shall cause an investigation to be made and report his or her findings to the city clerk. If the chief files no written report summarizing the arrests and convictions of the applicant which could form a basis for denial, and no written objection is filed pursuant to 85-3.3, the city clerk shall issue the license. If the chief files a written report summarizing the arrests and convictions of the applicant which could form a basis for denial, and no written objection is filed, the application shall be subject to common council review and approval in accordance with the provisions of s. 85-4. For any application for renewal of an alarm business license for an alarm business which provides to alarm users alarm monitoring

Case 2:26-cv-01293-NJ　Filed 07/23/26　Page 26 of 37　Document 1-1

services for the receiving of burglary alarm messages, the application shall state that among the services offered by the alarm business to alarm users is a private first responder service that verifies, in the case of an activated burglary alarm, that an attempted or actual crime has occurred at the alarm site before the alarm signal is transmitted to the police department.

b. Non-Renewal. If there is a possibility that the committee will not recommend renewal of a permit, the procedures for notice, hearing and review by the common council provided in sub. 8 shall govern.

**7.5.** DISQUALIFICATION. Whenever any application is denied, or license not renewed, revoked or surrendered, the procedures for disqualification for license and change of circumstances provided in ss. 85-13 and 85-15 shall apply.

**8.** PROCEDURES FOR NON-RENEWAL, SUSPENSION OR REVOCATION.

a. Any license issued under this section may be non-renewed, suspended or revoked for cause by the common council after notice to the licensee and a hearing.

b. Non-renewal, suspension or revocation proceedings may be instituted by the licensing committee upon its own motion, or upon sworn written charges made and filed with the city clerk by the chief of police or upon a sworn written complaint filed with the city clerk by any interested party.

c. Due Process Hearing and Review by the Common Council. If there is a possibility that the licensing committee will not recommend renewal of the license, or when revocation or suspension proceedings are initiated, the procedures for notice and committee hearing and for the committee report, recommendations and common council consideration provided in ss. 85-3 to 85-5 shall govern.

d. Grounds for Non-renewal or Revocation. The recommendation of the committee regarding the licensee shall be based on evidence presented at the hearing. Probative evidence concerning non-renewal or revocation may include evidence of:

d-1. Failure of the licensee to meet the municipal qualifications, including failure to comply with the plan of operation submitted by the licensee as a part of the license application as it may be amended and including compliance with the requirement to timely report changes in the licensee's plan of operation and changes in the licensee's address for receipt of first-class mail.

d-2. Pending charges against or the conviction of any felony, misdemeanor, municipal offense or other offense, the circumstances of which substantially relate to the circumstances of the licensed activity, by the licensee or by any employee of the licensee.

d-3. Failure of the alarm company to keep adequate records as to the locations where alarm systems are installed as well as the name, home or billing address, and telephone numbers of the purchaser or subscriber or alarm systems or service.

d-4. Failure of the licensee to obtain, in the case of a burglary alarm, a verified response that a cause for alarm has occurred at the alarm site before transmitting the alarm signal or information about the alarm signal to a city agency.

d-5. Failure to provide a private first responder service, as required by sub. 14-c-4.

d-6. Any other factor which reasonably relates to the public health, safety and welfare.

e. Licenses to be Treated Separately. A recommendation by the committee that an alarm business license, alarm sales license or a private first responder service license be suspended, revoked or not renewed shall not be based on any adverse recommendation relating to a license separately held by the applicant or licensee. Nothing in this paragraph shall prohibit or limit the discretion of the committee in considering any related business activities of an applicant or licensee in making the committee's recommendation to the common council

**10.** REQUEST TO SURRENDER A LICENSE. a. If a licensee wishes to surrender his or her license after receiving a notice for a hearing on non-renewal or revocation, the licensee must request, in writing, permission from the licensing committee to do so prior to the commencement of the hearing. The committee may approve the request, or deny the request and proceed with the hearing.

b. In the event a licensee who has surrendered his or her license wishes to have the surrendered license returned, regardless of whether the license was surrendered pursuant to par. a, the licensee must request, in writing, permission from the licensing committee to do so and appear before the committee at the date, time and place specified in written notice provided to the licensee by the city clerk. The committee may approve the request and return the license without further action by the common council, or make a recommendation to the common council to deny the request based on the same grounds set forth in this section for non-renewal or revocation. If the committee makes a recommendation to deny the request for the return of

Case 2:26-cv-01293-NJ    Filed 07/23/26    Page 27 of 37    Document 1-1

the license, all committee recommendations shall be prepared and common council actions conducted in the same manner set forth in this section for non-renewal or revocation.

11.     PROHIBITED SYSTEMS.

a.     Automated Alarm Notification Prohibited. No person may use or operate, attempt to use or operate, or cause to be used or operated, or arrange, adjust, program or otherwise provide or install any alarm system that upon activation will initiate, transmit, or deliver an alarm notification to any city agency by automated means except for fire alarms.

b.     Panic Alarm Notification Prohibited. No person may initiate, transmit, or deliver an alarm notification in the nature of a panic alert, police alert, medical alert or disturbance alert to any city agency by automated means, electronic or telephonic means, or other miscellaneous signal or message as distinguished from burglary, robbery (hold-up) or fire alarms.

c.     Multiple Trip Sensor and Audio Sensor Notification Prohibited. No person may initiate, transmit, or deliver by automatic means, electronic or telephonic means, any request for service to any city agency based upon multiple trip sensors or audio sensors.

d.     Exception. d-1. A request for service may be made to any city agency based upon a recorded and reproducible video or 2-way voice intercom by any person able to provide specific information based upon personal observation to the operator, dispatch personnel or officer of a city agency and able to respond to questions of the operator, dispatch personnel or officer to support a conclusion that there exists a cause for alarm or an emergency is in progress. Communications made to a city agency under this paragraph shall be treated as a reported incident and not as an alarm requiring verification by a first responder service.

d-2.     Any recordings relating to reproducible video or 2-way voice intercom shall be provided to the police department within 24 hours and submitted as an e-mail attachment sent to a police Internet site or in such other manner as otherwise directed by the police department. Electronic files submitted under this subdivision shall be in a standard format designated by the department.

13.     ALARM MONITORING SERVICE.

a.     Any alarm monitoring service providing the service of receiving burglary, robbery or fire alarm messages from alarm systems and relaying alarm information to a city agency shall have trained employees on duty at all times. In the case of an

activated burglary alarm, the alarm monitoring service shall relay the message to the police department only after the monitoring service's private first responder service has verified that a cause for alarm exists at the alarm site. An alarm monitoring service shall provide pertinent information to the department at the time of telephone notification of the activation of any alarm, which shall include:

a-1.     The alarm user name, address location of the activated alarm, identification of the type of alarm signal and telephone number of the alarm user

a-2.     The name and address of the alarm business or agent which has the responsibility for the alarm system activation.

b.     Any business which maintains keys to the alarm site shall promptly dispatch an alarm representative with keys to the alarm site upon request of the responding department.

c.     An alarm business which does not maintain keys to the premises shall operate in the following manner:

c-1.     Notification to the fire or police department shall include notice that the alarm business does not maintain keys to the alarm site and will not arrive at the scene while the department is present.

c-2.     The alarm business shall file a report with the responding department within 72 hours of the occurrence which shall include:

c-2-a.     Alarm business name and address.

c-2-b.     Alarm user name and address, and telephone numbers.

c-2-c.     Time of occurrence reported to the alarm business and time relayed to the department.

c-2-d.     Cause of alarm, if known.

c-2-e.     Action taken by alarm business.

c-3.     An alarm business which does not maintain keys to the premises shall not be exempt from the requirement of par. a to obtain, in the case of a burglary alarm, a verified response that an attempted or actual crime has occurred before relaying the message to the police department.

14.     ALARM SALES AND ALARM BUSINESS REQUIREMENTS.

a.     A business engaged in alarm sales activities shall:

a-1.     Provide the city clerk with the name, address and an electronic file containing an accurate depiction of the photo-identification badge for alarm sales personnel prior to the conduct of any sales activities by that alarm sales personnel.

Case 2:26-cv-01293-NJ     Filed 07/23/26     Page 28 of 37     Document 1-1

a-2. Require all alarm sales personnel to complete 14 hours of sales training within 2 weeks of first engaging in alarm sales activities on behalf of the alarm sales licensee.

a-3. Require that no person employed with or on behalf of the alarm sales licensee engage in sales activities with any prospective alarm user prior to completion of 14 hours of sales training except in the direct presence of a registered sales personnel who has received a minimum of 14 hours of sales training.

a-4. Require that all alarm sales personnel display photo-identification badges that include the names of the sales persons, the names of the alarm sales business, and the names of the alarm business, if different. Photo-identification badges shall also prominently display telephone contact information for the alarm sales business licensee.

b. All contracts with alarm users shall:

b-1. Be in writing and identify the services to be provided by the licensee. A copy of contracts proposed for alarm sale, installation, maintenance, monitoring, responder and any other alarm services shall be written in plain language with key points in bold or 10-point font. Failure of the applicant or licensee to provide an accurate copy of proposed contracts meeting these specifications shall be subject to the penalties provided in sub. 15-d.

b-2. Be presented to prospective individual customers together with a pamphlet or other written information, prepared or approved by the city clerk, that includes a statement of rights and responsibilities of alarm users.

b-3. State that, after a city agency is notified of 2 false alarms within a calendar year, the alarm user is subject to municipal citation as provided in sub. 15.

b-4. Include, at the time of renewal, a written statement of the provisions of subd. 3 together with a written statement of any changes in the terms of service or the identity of service providers from the original or most recently renewed contract.

c. An alarm business shall:

c-1. Be responsible for the proper installation of alarm systems by persons licensed under s. 222-11.

c-2. Be responsible for insuring that private alarm systems under maintenance contracts are maintained in good working order and that defects which could cause false alarms are promptly repaired.

c-3. Instruct appropriate personnel as to the operation of private alarm systems, including the setting, activation or resetting of the alarm equipment.

c-4. Provide a private first responder service, unless the alarm system transmits the alarm signal as provided in sub. 11-d, that shall verify, in the case of an activated burglary alarm, that a cause for alarm exists at the alarm site before the alarm signal is transmitted to the police department; any person employed by a first responder service who engages in on-site verification shall hold a valid state private security person permit issued by the Wisconsin department of safety and professional services.

c-5. In the case of an activated burglary alarm, relay the message to the police department only after a private first responder service has verified that a cause for alarm exists at the alarm site.

15. PENALTIES. a. No alarm user shall cause or permit a city agency to be notified of a false alarm. If after a city agency is notified of 2 false alarms within a calendar year, the alarm user shall be subject to a forfeiture of not less than $50 nor more than $100 for the first false alarm thereafter. Subsequent false alarms shall be subject to a forfeiture of not less than $100 nor more than $250.

b. No alarm business shall cause or permit a city agency to be notified of a non-verified alarm. An alarm business shall be subject to a forfeiture of not less than $50 nor more than $100 for the first non-verified alarm. Subsequent notification of non-verified alarms at the same site within 2 years of the first offense shall subject the alarm business to a forfeiture of not less than $100 nor more than $250.

c. Any violation of sub. 11-b or c is subject to a forfeiture of not less than $100 nor more than $200 for a first offense and not less than $200 nor more than $400 for each subsequent offense occurring at a single site or caused by a single alarm or sensor within 5 years of any prior offense.

d. Except as otherwise provided in this section, any person violating any provision of this section shall upon conviction forfeit not more than $500, together with the costs of prosecution.

**105-77. Misuse of Emergency Telephone Numbers. 1.** PROHIBITED ACTS. No person shall:

a. Intentionally dial the emergency telephone number "911" or the secondary emergency phone numbers "347-2323" and "765-2323" to report an emergency to city departments knowing that the fact situation which he or she reports does not exist.

b. Intentionally dial the emergency telephone number "911" or the secondary emergency phone numbers "347-2323" and "765-2323" for purposes of communication not relating to the reporting of an actual emergency.

Case 2:26-cv-01293-NJ    Filed 07/23/26    Page 29 of 37    Document 1-1

**2.** RESPONSIBILITY OF PARENTS. No parent, guardian or other adult person having the care and custody of a person under the age of 18 years shall suffer or permit or by inefficient control to allow such persons to violate sub. 1.

**3.** PENALTY. Any person violating the provisions of this section shall, upon conviction, be subject to a forfeiture of not less than $50 nor more than $300, together with the costs of prosecution, and upon default of payment be imprisoned in the county jail or house of correction not less than 2 days nor more than 12 days.

**105-78. Abandoned 911 Calls. 1.** FINDINGS. The common council finds that abandoned, unintentional or phantom calls to the city's "911" emergency phone number, because they must be answered by police telecommunicators and require call-backs to the telephone or wireless device, consume and waste valuable police time that could otherwise be used to respond to intentional "911" calls, some of which involve actual life-threatening emergencies. The common council further finds that responding to abandoned, unintentional or phantom "911" calls drains city financial resources.

**2.** REPEATED CALLS PROHIBITED. No owner of a telephone or wireless device shall cause or permit to cause 3 or more abandoned, unintentional or phantom calls from the telephone or wireless device to the city's "911" emergency phone number within a calendar year.

**3.** PENALTIES. Any person violating sub. 2 shall be subject to a forfeiture of not less than $50 nor more $100 for the 3rd abandoned, unintentional or phantom call to the "911" number in a calendar year. Subsequent calls within the same calendar year shall be subject to a forfeiture of not less than $100 nor more than $250 each.

**4.** TELEPHONE SERVICE CARRIER ASSISTANCE. The provider or carrier of the telephone service of the telephone or wireless device from which 3 or more abandoned, unintentional or phantom calls to the "911" number are transmitted in a calendar year shall, upon request, provide the police department with the name and mailing address of the owner of the telephone or wireless device. If the telephone service provider or carrier fails to provide this information to the police department within 72 hours of the request, the provider or carrier shall be subject to the penalties in sub. 3.

**105-79. Legal Occupant Lists for Residential Real Properties. 1.** LIST REQUIRED. The owner of any residential real property shall maintain a current list of all tenants, occupants, residents and sublessees authorized to occupy the building or buildings on such property. Upon written request to the owner, this list shall be made available to public safety personnel within 24 hours.

**2.** PENALTIES. The penalties provided in s. 200-19, including the minimum penalties, shall apply to any person found to be in violation of this section.

**105-81. Ultimate or Extreme Fighting Events Prohibited. 1.** In this section, "ultimate or extreme fighting event" means a fighting bout or tournament that meets the following criteria:

a. A state license under ch. 444, Wis. Stats. has not been issued for the event.

b. Participants use any combination of boxing, kicking, wrestling, hitting, punching or other combative contact techniques, which combination of techniques is not specifically authorized by and conducted pursuant to ch. 444, Wis. Stats.

**2.** No person shall advertise, operate, maintain, attend, participate in, promote or assist in advertising, operating, maintaining, attending, participating in or promoting an ultimate or extreme fighting event held within Milwaukee.

**3.** A person who violates this section shall upon conviction be subject to a forfeiture of not less than $500 nor more than $5,000 together with the costs and disbursements of the prosecution, and in default of payment thereof, shall be imprisoned in the county jail or house of correction for not less than 20 nor more than 90 days.

**105-91. Retail Establishment Security Measures. 1.** FINDINGS. In order to promote safe and orderly public places such as retail establishments and to assist police investigations of crimes and ordinance violations, the common council finds that any retail establishment that has facilitated or been the location of 3 or more incidents of qualified activity within a one-year period may be required to install a security camera system to help ensure the safety and welfare of the people of the city of Milwaukee.

**2.** DEFINITIONS. In this section: a. "Other responsible party" means any individual or entity other than the owner of the premises that is licensed or subject to license in the operation of a retail establishment upon the premises.

b. "Person associated with a premises" means the premises owner, operator, manager,

Case 2:26-cv-01293-NJ    Filed 07/23/26    Page 30 of 37    Document 1-1

resident, occupant, guest, visitor, patron or employee or agent of any of these persons.

c. "Qualified activity" means any of the following activities, behaviors or conduct whenever engaged in by any person associated with a premises:

c-1. Crimes against life and bodily security as enumerated in ss. 940.01 to 940.32, Wis. Stats., except as provided in subd. 2.

c-2. Robbery as enumerated in s. 943.32, Wis. Stats.

c-3. Theft as defined in s. 110-16 of the code or s. 943.20, Wis. Stats.

c-4. Crimes involving illegal possession or use of firearms as defined in ch. 941 and s. 948.60, Wis. Stats.

c-5. Discharge of a firearm as defined in s. 105-35.

c-6. Disorderly conduct as defined in s. 106-1 of the code or s. 947.01, Wis. Stats.

c-7. Keeping a place of prostitution as defined in s. 106-3 of the code or s. 944.34, Wis. Stats., or leasing a building for the purposes of prostitution as defined in s. 106-4 of the code.

c-8. Possession, manufacture or delivery of a controlled substance or related offenses as defined in ch. 961, Wis. Stats.

c-9. Gambling as defined in ss. 107-1 and 2 of the code or s. 945.02, Wis. Stats.

c-10. Underage alcohol activities, as defined in s. 90-18.

c-11. The sale, offering for sale, bartering or giving away of any intoxicating liquors or fermented malt beverages without a license or to be in violation of the terms of such license as provided in s. 90-3-1 of the code or s. 125.04(1), Wis. Stats.

c-12. Any crime subject to an increased penalty for the use of a dangerous weapon as defined in s. 939.63, Wis. Stats.

c-13. Exceeding maximum authorized occupancy as defined in. s. 85-23.

c-14. Conducting or operating public entertainment without a license as provided in s. 108-5.

d. "Retail establishment" means an establishment providing retail sale of new products to the public and rendering services incidental to the sale of such products, including, but not limited to, sale of: art supplies and picture frames, art works, auto parts, baked goods, bicycles, books, newspapers and magazines, collectibles, dry goods, notions and novelties, flowers and plants, food and beverages, furniture and floor coverings, hardware, hobbies, toys and games, household goods, jewelry, luggage, major appliances, music, records, compact discs and tapes, paint and wallpaper, pets, pharmaceutical products, photo equipment and processing, sewing apparatus, sporting goods, stationery, tobacco products and wearing apparel. This term includes, but is not limited to, a grocery store, specialty food store, antique store, licensed alcohol beverage establishment, butcher shop, delicatessen, portrait studio, furniture or appliance rental establishment or video rental or sales business, adult book store, lumber yard, building supply or home improvement center, garden center or secondhand store.

**3.** PROCEDURE. a. Whenever the chief of police determines 3 or more separate incidents of qualified activity have occurred at a retail establishment within a one-year period, the chief of police may notify the premises owner or other responsible party in writing that the premises owner or other responsible party is required to install a security camera system and comply with all regulations set forth in sub. 4. The premises owner or other responsible party shall have 60 days from the date of notification to install and maintain for 2 years a security camera pursuant to sub. 4. This notice shall be deemed to be properly delivered if sent either by first-class mail to the premises owner's or other responsible party's last known address or if delivered in person to the premises owner or other responsible party. If the premises owner or other responsible party cannot be located, the notice shall be deemed to be properly delivered if a copy of it is left at the premises owner's or other responsible party's usual place of abode in the presence of some competent member of the family at least 14 years of age or a competent adult currently residing there and who shall be informed of the contents of the notice. If a current address cannot be located, it shall be deemed sufficient if a copy of the notice is sent by first-class mail to the last known address of the owner or other responsible party as identified by records of the commissioner of assessments. For purposes of this section, each separate and distinct incident shall constitute a qualified activity, and 2 or more separate and distinct incidents occurring on the same day shall be counted separately. This notice shall contain:

a-1. The street address or legal description sufficient for identification of the premises.

a-2 A description of the qualified activity that has occurred at the premises.

a-3. A notice of the premises owner's or other responsible party's right to appeal pursuant to sub. 5.

b. Failure of a licensee to comply with the regulations of this paragraph shall constitute

Case 2:26-cv-01293-NJ    Filed 07/23/26    Page 31 of 37    Document 1-1

grounds for non-renewal, suspension or revocation of a license.

**4.** SECURITY CAMERA REQUIREMENTS. a. Any premises owner or other responsible party subject to sub. 3 shall comply with the following regulations:

a-1. Security cameras shall be installed and maintained in proper working order and operate during all hours the retail establishment is open to customers. Each security camera shall display an accurate date and time stamp on each image and produce retrievable images suitable for permanent police records.

a-2. Security cameras shall be installed so as to provide clear images of the entire premises, including areas as specified on the license as well as the public right-of-way abutting the premises and any off-street parking lot used expressly for patron parking. In addition, at least one security camera shall provide an overall view of each counter and register area, and at least one security camera shall be positioned to provide a clear, identifiable, full-frame image of the face of each person entering and leaving the retail establishment. Security camera views shall not be obstructed by premises fixtures or displays. The police may encourage retail establishments to position and use additional security cameras to bolster overall crime-prevention efforts.

a-3. If a time-lapse digital video recorder is operated, recorded images shall not be recorded at a slower speed than 24 hours.

a-4. All digital video records shall be stored and maintained in good viewing order for 30 days after recording.

a-5. All digital video shall be made available upon request to the licensing committee and law enforcement officers. Digital video recordings shall be dated and time-stamped, and all copies of video recordings shall be marked with the accurate date the media was recorded. At least one blank copy per security camera shall be available during all hours the retail establishment is open to customers to replace copies provided to the licensing committee or law enforcement officers, or to replace video recording media that fail.

a-6. Security camera systems shall be capable of copying all images in an accessible form while maintaining the native format. Digital video recordings recorded by security camera systems on a disk storage format, such as CDs or DVDs, shall be copied onto a disk storage format whenever the system's video recording media reaches capacity, but not less frequently than once every 30 days. All security camera system recorded images requested by the licensing committee and law enforcement

officers shall be provided on a disk storage format, such as CDRs or DVD-Rs. Security camera system playback software needed to view recorded images shall be copied onto each disk storage format used to store recorded video images.

a-7. On-duty retail establishment employees shall provide a copy of recorded digital images to law enforcement officers immediately upon request.

a-8. The surveillance security cameras shall be maintained in proper working order for a period of 2 years from the date of delivery of the notice in sub. 3.

**5.** APPEAL. Appeal of the determination of the chief of police pursuant to sub. 3 may be submitted to the administrative review appeals board as provided in s. 320-11. The administrative review appeals board may extend the installation period beyond 60 days in the case of a financial hardship.

**6.** PENALITIES. Any premises owner or other responsible party who violates any of the provisions of this section, shall upon conviction, forfeit not less than $500 nor more than $1,000, and in default of payment thereof, be imprisoned as provided by law.

**105-93. Motor Vehicle Rental. 1.** KEY SECURITY. All keys to motor vehicles offered for rent at a car rental agency located within the city shall be placed in a secure lockbox inside the rental agency's building at all times when the agency is not open for business.

**2**. EXEMPTIONS. The following shall be exempt from the requirement provided in sub. 1.

a. Any car rental agency which has a security officer present on the premises when the rental agency is not open for business.

b. Any car rental agency which has installed a theft-deterrent system, commonly known as a "crash barrier" or "plate barrier" at each entrance or exit.

**3.** PENALTY. a. Any person violating this section shall, upon conviction for a first offense, forfeit not less than $150 nor more than $1,000, together with the costs of prosecution and, in default of payment, may be imprisoned as provided by law.

b. Any person violating this section shall, upon conviction for a second or subsequent offense, forfeit not less than $500 nor more than $2,000, together with the costs of prosecution, and, in default of payment, may be imprisoned as provided by law.

Case 2:26-cv-01293-NJ    Filed 07/23/26    Page 32 of 37    Document 1-1

**105-122. Seized Firearms or Ammunition, etc.**

**1.** ABANDONED OR UNCLAIMED PROPERTY. a. Dangerous Materials. The chief of police may, by any lawful means, safely dispose of abandoned or unclaimed flammable, explosive or incendiary substances, materials or devices in his custody posing a danger to life or property in their storage, transportation or use immediately after taking possession of such substances, materials or devices.

b. In Custody of Chief of Police. The chief of police may dispose of firearms or ammunition in the custody of the chief of police which have been abandoned or remain unclaimed for a period of 12 months after the taking of possession of such property by the chief of police, by return to the rightful owner, destruction or transfer to the state crime laboratory under s. 165.75, Wis. Stats., the division of law enforcement services of the Department of Justice, the Federal Bureau of Investigation or the Alcohol, Tobacco and Firearms Bureau of the U.S. Department of the Treasury.

c. Other Personal Property. Except for abandoned motor vehicles and trailers, the chief of police may dispose of all other personal property in the chief's custody which has been abandoned or remains unclaimed for a period of 30 days after acquisition by the chief by using an Internet auction service contracting with the department of administration. The proceeds of such sales shall be paid to the city treasurer. The chief of police may dispose of abandoned or unclaimed property by other means set forth in s. 310-29 only with prior authorization of the department of administration and in accordance with the requirements of s. 310-29-2 to 4. Property delivered to the department of administration for disposition shall be disposed of by the department of administration in accordance with s. 310-29. Abandoned motor vehicles and trailers shall be disposed of in accordance with s. 105-65.

**2.** DISPOSITION OF SEIZED FIRE-ARMS OR AMMUNITION. a. Seized Firearms or Ammunition Posing a Danger to Life or Property or Constituting Contraband. If firearms or ammunition seized by the chief of police are not required for evidence or further investigation but pose a danger to life or property in their storage, transportation or use or constitute contraband, the chief of police may safely dispose of such firearms or ammunition by any lawful means.

b. Seized Firearms or Ammunition Which Do Not Pose a Danger to Life or Property or Constitute Contraband. If firearms or ammunition seized by the chief of police are not required for evidence or further investigation or do not appear to be or are not reported stolen, and have not been disposed of pursuant to court order at the completion of a criminal action or proceeding or in accordance with par. a, and the rightful owner has not requested their return within 12 months after the taking of possession of such firearms or ammunition by the chief of police, such firearms or ammunition may be shipped by the chief of police to the state crime laboratory for disposition under s. 968.20(3)(a), Wis. Stats.

c. Seized Firearms or Ammunition Which Appear to be or are Reported Stolen. If firearms or ammunition seized by the chief of police appear to be or are reported stolen but are not required for evidence or further investigation and have not been disposed of pursuant to court order at the completion of a criminal action or proceeding or in accordance with par. a, and the rightful owner has not requested their return within 12 months after the taking of possession of such firearms or ammunition by the chief of police, the chief of police may ship such firearms or ammunition to the state crime laboratory for disposition under s. 968.20(3)(a), Wis. Stats., after the chief of police shall have made a reasonable effort to notify the rightful owner, and the rightful owner shall not have requested their return within 30 days following receipt of such notification. If after a reasonable effort the chief of police is unable to notify the rightful owner, the chief of police may ship such firearms or ammunition to the state crime laboratory for disposition under s. 968.20(3)(a), Wis. Stats., provided not less than 15 months shall have elapsed since the taking of possession of such firearms or ammunition by the chief of police.

**3.** OTHER SEIZED PROPERTY. If property other than firearms or ammunition is seized by the chief of police and is not requested for evidence or investigation, and such property poses a danger to life or property in its storage, transportation or use or constitutes contraband, the chief of police may safely dispose of such property by any lawful means.

Case 2:26-cv-01293-NJ    Filed 07/23/26    Page 33 of 37    Document 1-1

**105-123. Disposition of Property Found on City Streets. 1.** RECEIPT ISSUED. If any person shall find any money or property and if the owner thereof be unknown, such person shall within 5 days after finding such money or property deliver the same to the chief of police. The chief of police may for the purpose of this section designate members of his department to perform the duties herein referred to. The chief of police, upon receipt of such found money, shall within 60 days separate such money from its container, if there be one, and deposit such found money with the city treasurer for safekeeping; provided, however, that the chief of police may, in his discretion, hold such money without depositing the same with the city treasurer. A copy of such deposit memorandum by the chief of police shall be forwarded to the city comptroller. All property except money delivered to the chief of police pursuant to the terms of this section shall be disposed of pursuant to ss. 105-122 and 310-29.

**2.** SPECIAL TRUST FUND. a. The city treasurer shall immediately, upon receipt of such found money, deposit such found money in a trust account to be known as the police department trust fund; and he shall not disburse such money to any person or persons unless he shall first have received from the chief of police a payment certification approved by the city comptroller stating the amount to be disbursed and that either the payee on such payment certification is the lawful owner of such money, or that the payee is the finder of such money; and, in the latter case, the payment certificate shall also state that such money was delivered to the police department at least 6 months prior to the date of such payment certification.

b. If such found money is not claimed within one year of the date of delivery to the police department, said money shall be deposited in the city general fund and be credited to miscellaneous general revenue.

**3.** RETURN TO OWNER, ETC. The chief of police or persons designated by him, upon receipt of found money or property, shall investigate and attempt to ascertain the true owner thereof. The chief of police shall issue a receipt to the finder which shall, in the case of money, show the amount and denomination and contain a description of the container in which such money was found; and in the case of other property, the receipt shall describe the property. If the chief of police shall discover the owner of such money, he shall issue a payment certification to such owner which shall meet the requirement of sub. 2. In the case of other property, the chief of police may turn such property over to the true owner. If the chief of police shall ascertain the true owner, but find it impossible to locate and notify said true owner or fail to receive response from said true owner, he shall, upon request, issue payment certification to the finder thereof which shall also comply with the provisions of sub. 2 with the exception of the provision which relates to the finder's 6 month's waiting period. In case of a known true owner, the finder's waiting period shall be 12 months. If the true owner cannot be ascertained after an investigation by the chief of police, he shall upon request issue a payment certification to the finder thereof which shall also comply with the provisions of sub. 2. If the chief of police cannot after an investigation determine who is entitled to the money or the property, he shall withhold the issuance of a payment certification until such time as he is directed by written order from a judge or a court of record directing him to issue such payment certification or directing him to turn over such property.

**4.** PENALTY. If any person shall find money or property and shall fail to deliver up such money or property within 5 days to the chief of police, or otherwise fail to comply with the provisions of this section, such person shall be guilty of a violation of this section and shall, upon conviction thereof, be fined not to exceed $5 or upon default of the payment thereof be imprisoned in the house of correction not to exceed 10 days.

**105-124. Police May Enter Buildings to Make Arrests, Right of Entry.** The chief of police and the policemen are respectively authorized and empowered, in a peaceable manner, or, if refused admittance after demand is made, with force and arms, to enter any house, store, shop, grocery or other place or building, whatever or whatsoever in said city, in which any person or persons may reasonably be suspected to be for unlawful purposes, and if any person or persons shall be found therein guilty of any crime or misdemeanor, or violation of any law or ordinance for the preservation of the peace and good order of the city, or who may reasonably be suspected thereof, or who shall be aiding and abetting

Case 2:26-cv-01293-NJ    Filed 07/23/26    Page 34 of 37    Document 1-1

such person or persons so found, said officer or policeman shall apprehend and keep in custody such person or persons as in case of other arrests made by police officers, until they be discharged by due course of law.

**105-125. Power of Arrest.** The chief of police and policemen respectively shall have full power and authority, and it shall be their duty to arrest all persons in the city found in the act of violating any law or ordinance of the city, or aiding or abetting in any such violation, and shall arrest all persons found under suspicious circumstances, and shall take all such persons in charge and confine them until a reasonable time to bring such persons before the county court in and for the county of Milwaukee, to be dealt with according to law.

**105-126. General Duties of Policemen.** The members of the police force shall obey the orders of the chief of police and shall report to the chief of police all violations of the city ordinances, and all suspicious persons, bawdy houses, pawn-brokers' shops, gambling houses, and all places where idlers, tipplers, gamblers and other disorderly and suspicious persons congregate. And it shall also be their duty to caution strangers and others against going into such places, and against pickpockets, watch stuffers, droppers, mock auctioneers and all other suspicious persons, to render assistance to officers of justice, to direct strangers to the nearest way to their places of destination, and when necessary to cause them to be accompanied by one of the police.

**105-127. When to Arrest.** Each policeman shall carefully watch all disorderly houses. He shall arrest all and every person who shall be seen by him violating any ordinance of the city, or who shall be found in the street drunk, noisy or using boisterous and threatening or insulting language tending to produce a quarrel or breach of the peace; all persons who shall be guilty of indecent conduct or of any indecent exposure of the person; all persons who shall be in the act of committing a felony or misdemeanor, or who shall be reasonably suspected of having committed any felony. He may lawfully make an arrest without a warrant for a misdemeanor whenever the officer has reasonable grounds to believe that the person to be arrested has committed a misdemeanor and will not be apprehended unless immediately arrested or that further personal and

property damage may likely be done unless immediately arrested. He may lawfully make an arrest acting under a warrant even though the officer does not have the warrant in his possession at the time of the arrest, but, if the person arrested so requests, the warrant shall be shown to him as soon as practicable. He may lawfully arrest when advised by any other peace officer in the state that a warrant has been issued for the individual.

**105-133. Warrant for Assault Upon Officer.** No member of the police force shall be permitted to apply for warrant for an assault upon himself without first reporting the case to the chief of police and obtaining from him or from the mayor permission in writing to make such application.

**105-137. Assistance to Officers By Citizens.** It shall be the duty of all persons in the city, when called upon by any police officer or patrolman to promptly aid and assist him in the execution of his duties. Whoever shall neglect or refuse to give such aid and assistance shall forfeit a penalty of not exceeding $100 in the discretion of the court or magistrate convicting. And if the person offending be a licensed hackman, cabman or drawman, or the driver of any hackney coach, cab, omnibus, dray or wagon or other vehicle, the court or magistrate convicting shall be authorized to give judgment that the license of the said person or of the owner of such vehicle be cancelled and revoked.

**105-138. Resisting or Obstructing Officer.**
1.         DEFINITIONS. In this section:
a.         "Obstructs" includes without limitation knowingly giving false information to an officer or knowingly placing physical evidence with the intent to mislead an officer in the performance of the officer's duty, including the service of any summons or civil process.
b.         "Officer" means a peace officer or other public officer or public employee having the authority by virtue of the officer's position or employment to take another into custody.
2.         PROHIBITION. No person shall knowingly resist or obstruct an officer while the officer is doing any act in an official capacity and with lawful authority.
3.         PENALTY. Any person violating this section shall upon conviction forfeit not less than $100 nor more than $500, together with the costs of prosecution and in default of payment shall be

Case 2:26-cv-01293-NJ     Filed 07/23/26     Page 35 of 37     Document 1-1

imprisoned in the county jail or house of correction for a period not to exceed 20 days, or until the forfeiture and costs are paid; and for violations occurring between the hours of 8:00 p.m. and 5:00 a.m. upon a street designated as a cruising area under s. 101-20.5, including the land within the street lines whether or not improved, shall upon conviction forfeit not less than $200 nor more than $1,000, together with the costs of prosecution and in default of payment shall be imprisoned in the county jail for a period not to exceed 40 days, or until the forfeiture and costs are paid.

**105-139. Protection of Election Officials.**

**1.** FINDINGS. The common council finds election officials are bullied and threatened, and polling places are disrupted by behaviors that undermine free and fair elections.

**2.** DEFINITIONS. For purposes of this section:

a. "Election official" means an individual who is charged with any duties related to the conduct of an election.

b. "Polling place" means any facility where votes are cast in a primary or general election under the provisions of this chapter, including any hall, passageway, sidewalk or approach providing immediate access to the facility where votes are cast.

c. "Polling times" means the hours of operation of a polling place, including any time an election official is preparing to open a polling place to voters, or processing votes and supporting documents after the polling place is closed to voters.

d. "Telecommunication device" means any instrument, equipment, machine or other device that facilitates telecommunication, including but not limited to, a computer, computer network, computer chip, computer circuit, scanner, telephone, cellular telephone, pager, personal communications device, radio, transponder, receiver, modem or device that enables the use of a modem.

e. "Telecommunication message" means any transfer of signs, signals, writing, images, sounds, data or intelligence of any nature transmitted with a telecommunications device.

**3.** PROHIBITIONS. No person, while at a polling place during polling times, shall:

a. Engage in violent, abusive, indecent, profane, boisterous, unreasonably loud or otherwise disorderly conduct which is likely to cause or provoke a civil disturbance.

b. Send a telecommunication message to a telecommunication device that contains any violent, abusive, indecent or profane language, or an image, or any other message intended to harass, annoy or offend, which is likely to cause or provoke a civil disturbance.

**4.** EXCEPTION. No provision of this section shall be construed to restrict the lawful possession of a firearm.

**5.** PENALTY. Any person violating this section shall, upon conviction, be subject to a forfeiture of $1,000, together with the costs of prosecution, and in default of payment of the forfeiture and costs, shall be imprisoned as provided by law.

**105-140. Law Enforcement Identification.**

**1.** FINDINGS. a. The use of facial coverings and disguises by law enforcement officers significantly affects the public's perception of law enforcement, officer-community interactions, and accountability.

b. Persons reasonably may experience fear or intimidation when approached by officers whose faces are obscured. Such reactions can heighten defensive behavior and unnecessarily escalate the tension inherent in many interactions between law enforcement officers and members of the public.

c. Facial coverings limit the visibility of facial expressions, which are an essential component of nonverbal communication. In high-stress or emotionally charged interactions, a person's inability to read an officer's expression may lead to a misinterpretation of tone or intent, increasing the risk of conflict.

d. When officers are not readily identifiable, the risk of impersonation of an officer increases. Unable to reliably distinguish actual law enforcement officers from impostors, persons may fear complying with the lawful authority of actual law enforcement officers, again increasing the risk of conflict. Further, the increased risk of impersonation of an officer increases the physical risk to persons who submit to the purported authority of an impostor.

e. There have been reported incidents of individuals impersonating law enforcement officers to harass or unlawfully detain others, which undermines public trust in law enforcement, particularly among vulnerable individuals and communities, and poses a threat to public safety.

Case 2:26-cv-01293-NJ    Filed 07/23/26    Page 36 of 37    Document 1-1

f. While certain situations may require the use of face coverings or masks to provide protection against environmental hazards, facial coverings used by a law enforcement officer during an interaction with the public should not obscure their identity in a manner that impairs review of, and accountability for, official actions; nor should such coverings be used in a manner that enables or conceals discriminatory or unlawful conduct.

g. Ensuring that law enforcement officers are clearly identifiable during public interactions promotes accountability and strengthens police-community relations.

**2.** PURPOSE. a. This section is enacted under the City's legitimate police powers to promote public safety, prevent impersonation and fraud, and ensure transparency and accountability in law enforcement operations within its jurisdiction.

b. Nothing in this section shall be interpreted to prohibit, restrict, or interfere with the proper exercise of state or federal law enforcement.

**3.** DEFINITIONS. a. "Law enforcement officer" has the meaning specified in s. 165.85(2)(c), Wis. Stats., and includes any employee or agent of the United States government who has authority to carry firearms and make warrantless arrests and whose duties involve the enforcement of criminal, customs, or immigration laws of the United States.

b. "Face covering" means any opaque mask, garment, or other item that conceals or obscures the facial identity of an individual, including a balaclava, tactical mask, neck gaiter, ski mask, or any similar type of facial covering or face-shielding item. It does not include any of the following:

b-1. A translucent face shield or clear mask that does not conceal the wearer's facial identity.

b-2. A medical mask to protect against transmission of disease or infection, or any other mask or device necessary to protect against exposure to any toxin, gas, smoke, or any other hazardous environmental condition, including air-purifying respirators, full or half masks, or self-contained breathing apparatuses.

b-3. A helmet used to protect the wearer's head during transportation.

**4.** PROHIBITION OF FACE COVERINGS. No law enforcement officer may wear a face covering while interacting with the public in the performance of the officer's duties.

**5.** IDENTIFICATION. When acting in an official capacity, all law enforcement officers shall do one or more of the following:

a. Display on their uniforms the name or widely recognized initials of the officer's agency and the officer's last name, badge number, or identification number.

b. Upon request, verbally provide their agency affiliation and last name, badge number, or identification number.

**6.** EXCEPTIONS. a. Notwithstanding sub. 4, face coverings may be worn to provide protection against cold or other extreme weather during assignments requiring a law enforcement officer to be outdoors for long periods of time.

b. The provisions of subs. 4 and 5 shall not apply to the following:

b-1. A law enforcement officer engaged in an undercover operation.

b-2. A special weapons and tactics team officer wearing protective gear while performing his or her special weapons and tactics team responsibilities.

**7.** PENALTY. Any person who willfully or knowingly violates this section shall, upon conviction thereof, be subject to a forfeiture of not less than $5,000, nor more than $10,000.

**For legislative history of chapter 105, contact the Municipal Research Library.**

Case 2:26-cv-01293-NJ    Filed 07/23/26    Page 37 of 37    Document 1-1