# EXHIBIT D

**EVAN C. GOYKE**
City Attorney

**MARY L. SCHANNING**
**ROBIN A. PEDERSON**
**NAOMI E. SANDERS**
**JULIE P. WILSON**
Deputy City Attorneys



Milwaukee City Hall • 200 East Wells Street • Milwaukee, Wisconsin 53202-3551
Telephone: 414.286.2601 • TDD: 414.286.2025 • Fax: 414.286.8550

KATHRYN Z. BLOCK
THOMAS D. MILLER
PETER J. BLOCK
ANDREA J. FOWLER
JOANNA FRACZEK
HANNAH R. JAHN
MEIGHAN M. ANGER
ALEXANDER R. CARSON
GREGORY P. KRUSE
ALEX T. MUELLER
ALEXANDER D. COSSI
KATHERINE A. HEADLEY
SHEILA THOBANI
STACY J. MILLER
JORDAN M. SCHETTLE
THERESA A. MONTAG
ALEXANDER E. FOUNDOS
TRAVIS J. GRESHAM
JOSEPH M. DOBBS
WILLIAM K. HOTCHKISS
CLINT B. MUCHE
TYLER M. HELSEL
ZACHARY A. HATFIELD
MEGHAN C. MCCABE
CYNTHIA HARRIS ORTEGA
KEVIN P. TODT
NATHANIEL E. ADAMSON
MATTEO REGINATO
JOSHUA B. CRONIN
ROBERT W. SANDERS
ELIZABETH K. MILES
LAURI A. ROLLINGS
Assistant City Attorneys

July 17, 2026

*VIA EMAIL ONLY*

Brett A. Shumate
Assistant Attorney General
Civil Division

Brad D. Schimel
First Assistant United States Attorney for the
Eastern District of Wisconsin

Dear Counsel:

In your letter of July 10, 2026, you sought "assurances that neither your offices, the Milwaukee Police Department, nor any other entity in Milwaukee plans to enforce Milwaukee Code of Ordinances § 105-140 . . . against federal law enforcement officers." Letter from Assistant Attorney General Brett A. Shumate & First Assistant U.S. Attorney Brad D. Schimel to Mayor Cavalier Johnson & City Attorney Evan Goyke (July 10, 2026) ("Letter") at 1. For my part, as the City Attorney, the only assurances I can offer you are that § 105-140 ("the Ordinance") is a vital public safety measure, that I will not advise my clients to exempt federal law enforcement officers from enforcement of the Ordinance against them, and that my office will prosecute any validly issued citation for acts in violation of the Ordinance.

Masked and unidentified law enforcement, at whatever level, increases the risk of dangerous interactions with the public, undermines accountability and police-community relations, and stokes confusion, fear, and intimidation. MCO § 105-140-1-2. It also heightens the risk that bad actors will harm others by impersonating officers, or that individuals might resist legitimate law enforcement actions where they otherwise would not due to the fear that they are facing an imposter. *Id.*

You express great concern for the safety of federal law enforcement officers throughout your letter, but not once do you express any similar concern for the safety of the public. We should all be able to agree that the residents and visitors of the City of Milwaukee deserve at least some consideration for their well-being from their Department of Justice. In enacting the Ordinance, the Mayor and Common Council of the City of

Milwaukee acted to protect the safety and welfare of the residents and visitors of the City, without restricting or interfering with federal law enforcement officers' ability to perform their lawful duties. MCO § 105-140-2-b. (officers shall not interpret the Ordinance to "prohibit, restrict, or interfere with the lawful and proper exercise of federal law enforcement").

The federal government, however, insists that we must take it at its word that discretionary masking and identification are essential to immigration enforcement functions. We do not agree and, respectfully, the City and the public have a right to know if masked, armed, and unidentified men seizing people on our streets are who they say they are. The Department of Justice's own Federal Bureau of Investigation issued a bulletin warning that criminals posing as ICE agents committed robberies, kidnappings, and sexual assaults in several states. Dell Cameron & Caroline Haskins, *FBI Warns of Criminals Posing as ICE, Urges Agents to ID Themselves*, WIRED (Nov. 4, 2025, 2:30 p.m.), https://www.wired.com/story/fbi-warns-of-criminals-posing-as-ice-urges-agents-to-id-themselves/.

The Ordinance prohibits local, state, and federal law enforcement officers from wearing a facial covering that obscures their identity while interacting with the public. The Ordinance requires that local, state, and federal law enforcement officers *either* display their identification on their uniform *or*, upon request, verbally provide their agency affiliation and last name, badge number, or identification number; however, the Ordinance also provides several exceptions.

The Ordinance is a lawful exercise of the City's police powers to act for the health, safety, and welfare of the public under the Tenth Amendment to the United States Constitution and fits squarely within the American tradition. As one federal judge, appointed by President Ronald Reagan, explained: "In all our history we [as Americans] have never tolerated an armed masked secret police." *Am. Ass'n of Univ. Professors v. Rubio*, 802 F. Supp. 3d 120, 174 (D. Mass. 2025) ("masks are associated with cowardly desperados and the despised Ku Klux Klan").

Rather than comply with the City's common sense safety measure, the federal government insists that federal officers "will continue to wear masks and not use individual identifiers *in their discretion.*" Letter at 3 (emphasis added). The federal government's practice in the absence of any governing statute or regulation is to let the individual officers decide for themselves whether masking and not identifying themselves is necessary to do their job. Unfortunately, in the case of federal immigration officers, in particular, that unbounded discretion, coupled with guns and a lack of accountability, has had tragic consequences in cities across the country, most recently in Houston, Texas and Biddeford, Maine. Madeleine Ngo et al., *ICE Ordered*

*to Cease Most Vehicle Stops After 2 Killings in a Week*, N.Y. Times (July 14, 2026), https://www.nytimes.com/2026/07/14/us/ice-agents-traffic-stops.html.

While ICE's recent deployment action in Milwaukee thankfully did not result in loss of life, masked and unidentified immigration officers nonetheless engaged in unnecessarily aggressive tactics as described by the Milwaukee Journal Sentinel: "The videos showed ICE agents boxing in cars, pointing guns and Tasers at people, breaking car windows, and pinning people on the ground. Many drove in unmarked vehicles and wore face coverings. Most of the arrests took place in public areas . . . ." Eva Wen et al., *Videos Show Shift in Milwaukee ICE Tactics to Forceful, Public Arrests*, Milwaukee J. Sentinel (July 8, 2026, 11:02 a.m.), https://www.jsonline.com/story/news/investigations/2026/07/08/videos-show-surge-of-wisconsin-ice-arrests-included-guns-tasers/90825634007/. Videos also showed that masked and unidentified officers took such actions notwithstanding the individual's cooperation and in at least one case did so in front of young children. *Id.*

Unable to cite to any federal statute or regulation authorizing masked and unidentified officers, the federal government claims that any state or local measures that impact this unrestrained personal discretion violate the Supremacy Clause, as applied through the intergovernmental immunity doctrine; however, "the Supremacy Clause was not intended to be a shield for 'anything goes' conduct by federal law enforcement officers." *Kentucky v. Long*, 837 F.2d 727, 746 (6th Cir. 1988). "An employee of the United States does not secure a general immunity from state law while acting in the course of his employment." *Johnson v. Maryland*, 254 U.S. 51, 56 (1920).

The Ordinance neither directly regulates the federal government nor discriminates against it in violation of the intergovernmental immunity doctrine. We are aware that a panel of the Ninth Circuit Court of Appeals issued an injunction pending appeal of California's law enforcement identification requirement. *United States v. California*, 173 F.4th 1060 (9th Cir. April 22, 2026). We do not agree with that panel's reasoning, nor with the two federal district courts that relied on the Ninth Circuit's decision in their own preliminary rulings, which you reference. Letter at 1 ("The United States Department of Justice has sought injunctions against numerous substantively identical laws across the country and *so far* has prevailed in each." (emphasis added)). No federal court has issued a final ruling on the validity of an ordinance similar to MCO § 105-140, much less, a ruling that is binding upon the City of Milwaukee.

The Ordinance does not interfere with or take control of federal officers' law enforcement operations. *See United States v. California*, 819 F. Supp. 3d 1109, 1126 (C.D. Cal. Feb. 9, 2026) *inj. pending appeal granted* 173 F.4th 1060 (9th Cir. April 22, 2026). Discretionary masking and identification are not essential to the functions of federal immigration officers. The Milwaukee Journal Sentinel's coverage shows that

some officers were masked while others at the same scene were unmasked, undermining any claim that masks are essential to federal law enforcement functions or that it is necessary for each individual officer to have the discretion to make their own personal decision to mask.

You justify the discretionary masking practice as a reasonable response to massive increases in assaults on officers and incidents of doxxing. Critics, however, have found these claims specious. *See* James Queally & Brittny Mejia, *Attacks on ICE up 1000%? Trump administration claim not backed up by court records*, Los Angeles Times (Dec. 1, 2025, 3:00 a.m.), https://www.latimes.com/california/story/2025-12-01/dhs-1000-percent-increase-attacks-on-ice-agents-times-analysis; *see also* Joe Lancaster, *Tom Homan Defends Masked ICE Agents by Claiming Threats Are Up 'Over 8,000 Percent'*, Reason (Feb. 17, 2026, 1:10 p.m.), https://reason.com/2026/02/17/tom-homan-justifies-masked-ice-agents-because-threats-are-up-over-8000-percent/. The efforts of the federal government to justify discretionary masking in the face of valid safety concerns about the use of masks by officers, as set forth in your letter, are wholly insufficient in our estimation, which adds to the suspicion that there is an ulterior reason and motivation for the practice. *See, e.g., Am. Ass'n of Univ. Professors*, 802 F. Supp. 3d at 174 (characterizing DHS testimony regarding reasons for masking as "disingenuous, squalid and dishonorable. ICE goes masked for a single reason – to terrorize Americans into quiescence").

Such threats to officers, if substantiated, would indeed be serious and should therefore not be discounted. This, however, does not support the claim that discretionary masking and concealment is essential. The federal district court got it right when it reasoned: "A rule that prohibits law enforcement officers from wearing masks or requires them to have visible identification does not facilitate or enable criminals to harm law enforcement officers." *California*, 819 F. Supp. 3d 1109, 1127. Similarly, if masking and identity concealment are essential, why would the federal government leave this up to the discretion of the individual officer? The response to such conduct is to charge the criminal, not to transform law enforcement into an anonymous force.

In the absence of any federal statute or regulation authorizing or requiring masking and identity concealment, the Ordinance only incidentally affects the mode of carrying out the officers' duties without prohibiting the federal government from enforcing federal immigration law. In that way the Ordinance is akin to traffic laws that are also enforceable against federal officers, subject potentially to immunities. *California,* 819 F. Supp. 3d 1109, 1126; *Texas v. DHS*, 123 F.4th 186, 206-07 (5th Cir. 2024) (citing *Johnson*, 254 U.S. at 56-57).

Brett A. Shumate, Assistant Attorney General
Brad D. Schimel, First Assistant U.S. Attorney
July 17, 2026
Page **5** of **5**

In closing, this office approved the Ordinance as legal and enforceable. Neither the preliminary court rulings in other jurisdictions nor your letter convince us to change that opinion. We will not advise our clients to exempt federal law enforcement officers from the Ordinance and we will prosecute properly cited offenders.

Very truly yours,

EVAN C. GOYKE
City Attorney

C:     Mayor Cavalier Johnson
       Common Council President Jose G. Perez
       Chief of Police Jeffrey B. Norman

2026-000265/00000000002800