**UNITED STATES DISTRICT COURT FOR THE**
**EASTERN DISTRICT OF WISCONSIN**

---

UNITED STATES OF AMERICA,

Plaintiff,

v. Case No. 26-cv-1293

CITY OF MILWAUKEE, CAVALIER JOHNSON, Mayor of Milwaukee, in his official capacity; EVAN GOYKE, City Attorney, in his official capacity; JEFFREY NORMAN, Chief of Police, Milwaukee Police Department, in his official capacity,

Defendants.

---

# CITY OF MILWAUKEE'S ANSWER, AFFIRMATIVE DEFENSES, AND JURY DEMAND

---

NOW COMES Defendant City of Milwaukee, by its attorney, Evan C. Goyke, City Attorney, represented by Deputy City Attorney Robin Pederson, Assistant City Attorney Thomas Miller, and Assistant City Attorney Clint B. Muche, and, as and for its answer to the plaintiff's complaint, admit, deny, allege and state as follows:

## INTRODUCTION

1. For centuries, the Supreme Court has reaffirmed that States have no authority whatsoever to regulate the Federal Government. *United States v. Washington*, 596 U.S. 832, 838 (2022) (The Supremacy Clause "prohibit[s] state laws that *either* 'regulat[e] the United States directly *or* discriminat[e] against the Federal Government . . . .'"); *Mayo v. United States*, 319 U.S. 441, 445 (1943) (The Supremacy Clause renders "the activities of the Federal Government . . . free from regulation by any state."); *McCulloch v. Maryland*, 17 U.S. (4 Wheat.) 316, 427 (1819). A state law that directly regulates the Federal Government is invalid. *See Mayo*, 319 U.S. at 445.

**RESPONSE:** The averments in this paragraph consist of legal conclusions to which no response is required, but if further answer is required the City of Milwaukee states that the cases cited speak for themselves and deny anything beyond the text of the cases.

2. Despite that well-established principle, Milwaukee recently enacted an ordinance that purports to do exactly what constitutional law says it cannot: regulate how federal law enforcement officers carry out their official duties in that City.

**RESPONSE:** The City of Milwaukee admits only that the Milwaukee Common Council passed File No. 251797 on April 21, 2026; the remaining allegations in this paragraph are legal conclusions to which no response is required, but if further response is required, denied.

3. Specifically, on April 21, 2026, the Common Council of the City of Milwaukee passed Common Council File No. 251797 (hereinafter the "Ordinance" or "Section 105-140"), which is codified at Milwaukee Code of Ordinances § 105-140. The Ordinance became effective on May 9, 2026.

**RESPONSE:** Admitted.

4. Section 105-140 purports to require that no federal law enforcement officer "may wear a face covering while interacting with the public in the performance of the officer's duties," except during extreme weather and certain limited types of operations.

**RESPONSE:** The averments in this paragraph consist of legal conclusions to which no response is required, but if further answer is required the City of Milwaukee states that the Ordinance speaks for itself and deny anything in this paragraph beyond the text of the Ordinance.

5. Section 105-140 also purports to require federal law enforcement officers, "[w]hen acting in an official capacity," to "[d]isplay on their uniforms the name or widely recognized initials of the officer's agency and the officer's last name, badge number, or identification number," or alternatively "verbally provide their agency affiliation and last name, badge number, or identification number" upon request, with limited exceptions.

**RESPONSE:** The averments in this paragraph consist of legal conclusion to which no response is required, but if further answer is required the City of Milwaukee states that the Ordinance speaks for itself and deny anything in this paragraph beyond the text of the Ordinance.

6. Boldly, Section 105-140 subjects federal officers to civil liability for noncompliance. Specifically, Section 105-140 provides that "[a]ny person who willfully or

knowingly violates [the Ordinance] shall, upon conviction thereof, be subject to a forfeiture of not less than $5,000, nor more than $10,000."

**RESPONSE:** The averments in this paragraph consist of legal conclusions to which no response is required, but if further answer is required the City of Milwaukee states that the Ordinance speaks for itself and deny anything in this paragraph beyond the text of the Ordinance.

7. The Ordinance thus purports to directly regulate federal law enforcement officers by mandating them to comply with municipal uniform and identification requirements and penalizing those officers for complying with federal laws governing their official duties.

**RESPONSE:** The averments in this paragraph consist of legal conclusions to which no response is required, but if further answer is required the City of Milwaukee states that the Ordinance speaks for itself and deny anything in this paragraph beyond the text of the Ordinance.

8. Members of the Milwaukee Common Council lauded the Ordinance's targeting of federal officers. Alderman Alex Brower indicated that the Ordinance is "a means of preventing masked ICE [(U.S. Immigration and Customs Enforcement)] agents in Milwaukee[.]"[1] Alderwoman JoCasta Zamarripa announced: "If they continue to work here in a secret capacity with full masks on like I've seen, then we are asking MPD [(Milwaukee Police Department)] and the city attorney to act as the enforcement entity and write citations to ICE."[2]

**RESPONSE:** The City of Milwaukee admits that this paragraph contains partial recitations of public statements by two members of the Milwaukee Common Council but deny that these recitations are necessarily accurate or complete. As further answer, Alderman Brower's statement referred to an earlier version of the Ordinance, and Defendant affirmatively asserts that the Ordinance as adopted speaks for itself and deny any characterizations inconsistent with its text.

9. Courts have uniformly enjoined materially similar state and local laws as unconstitutional direct regulation of the Federal Government. *See, e.g., United States v. California*, 173 F.4th 1060, 1069 (9th Cir. 2026); *United States v. Commonwealth of Virginia*, No. 3:26-cv545,

---

[1] Alex Brower, *Statement on committee approval of law enforcement ICE identification ordinance* (Mar. 12, 2026), https://city.milwaukee.gov/ImageLibrary/Groups/ccCouncil/News/2026/District-03/03-Statement-on-committee-approval-of-file-number-251797.pdf.

[2] Ben Jordan, *ICE says it will not comply with Milwaukee's federal agent mask ban ordinance, alderwoman wants accountability* (June 29, 2026), https://perma.cc/83V8-X4XB.

2026 WL 1909995, at *15 (E.D. Va. July 2, 2026); *United States v. City of Philadelphia*, No. 2:26-cv-4208, 2026 WL 1906075, at *14 (E.D. Pa. July 2, 2026).

**RESPONSE:** The averments in this paragraph consist of legal conclusions to which no response is required, but if further answer is required the City of Milwaukee states that the cited cases speak for themselves and any characterization thereof is denied.

10. Nevertheless, in the face of this overwhelming authority, on July 17, 2026, the City Attorney of Milwaukee reaffirmed the City's intent to enforce its unconstitutional law stating: "We will not advise our clients to exempt federal law enforcement officers from the Ordinance and we will prosecute properly cited offenders." *See* City Attorney Response Letter, *infra* ¶ 41.

**RESPONSE:** The City of Milwaukee states that the City Attorney's letter speaks for itself and deny anything in this paragraph beyond the text of the letter.

11. This Court should join the growing number of others that are putting an end to this type of blatant unconstitutional regulation of the Federal Government and invalidate and enjoin Section 105-140.[3]

**RESPONSE:** The averments in this paragraph consist of legal conclusions to which no response is required, but if further answer is required, denied.

## JURISDICTION AND VENUE

12. The Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1345.

**RESPONSE:** Admitted.

13. Venue is proper under 28 U.S.C. § 1391(b)(1) because all defendants reside in this district.

**RESPONSE:** Admitted.

14. The Court has the authority to provide the relief requested under 28 U.S.C. §§ 1651, 2201, and 2202, and its inherent equitable powers.

**RESPONSE:** The averments in this paragraph consist of legal conclusions to which no response is required, but if further answer is required, denied.

[3] The United States has grave concerns over the constitutionality of other components of Milwaukee's "ICE Out" legislation and reserves the right to bring additional challenges in the future.

## PARTIES

15. Plaintiff, the United States of America, enforces federal laws through its Executive agencies. Those agencies include but are not limited to the Department of Justice (DOJ) and its component law enforcement agencies—e.g., the Federal Bureau of Investigation (FBI) and the Drug Enforcement Administration (DEA)—and the Department of Homeland Security (DHS) and its component law enforcement agencies—e.g., U.S. Immigration and Customs Enforcement (ICE) (which includes Homeland Security Investigations (HSI)) and U.S. Customs and Border Protection (CBP).

**RESPONSE:** Admitted.

16. Defendant City of Milwaukee is a municipality within the State of Wisconsin.

**RESPONSE:** Admitted.

17. Defendant Cavalier Johnson is the Mayor of Milwaukee. Under Milwaukee City Charter § 3-01, the Mayor is the City's chief executive officer and is charged with ensuring that City ordinances "are duly observed and enforced." The Mayor is also the head of the police department with responsibility for ensuring that City officers discharge their respective duties. Milwaukee City Charter § 3-01. Mayor Johnson signed Ordinance § 105-140 into law. He is being sued in his official capacity.

**RESPONSE:** The City of Milwaukee admits only that Defendant Cavalier Johnson is the Mayor of Milwaukee and that, based on Plaintiff's representation, he is being sued in his official capacity; the remaining averments in this paragraph consist of legal conclusions to which no response is required.

18. Defendant Evan Goyke is the City Attorney of Milwaukee. The City Attorney's Office prosecutes ordinance violations in Milwaukee Municipal Court. On July 17, 2026, City Attorney Goyke advised the United States Department of Justice before this action was filed that he would not provide assurances against enforcement of § 105-140 and affirmed that his office would prosecute any violations of the Ordinance. *See* City Attorney Response Letter, *infra* ¶ 41. He is being sued in his official capacity.

**RESPONSE:** The City of Milwaukee admits that Defendant Evan Goyke is the City of Milwaukee's City Attorney; that, based on Plaintiff's representation, he is being sued in his official capacity; and that the July 17 Letter speaks for itself and deny anything in this paragraph beyond the text of the letter.

19. Defendant Jeffrey Norman is the Chief of Police of the Milwaukee Police Department. Under Wis. Stat. §§ 62.09(13)(a) and 62.50(23), the Chief of Police commands the police force and is responsible for enforcing City ordinances. He is being sued in his official capacity.

**RESPONSE:** The City of Milwaukee admits only that Defendant Jeffrey Norman is the Chief of Police of the Milwaukee Police Department and that, based on Plaintiff's representation, he is being sued in his official capacity; the remaining averments in this paragraph consist of legal conclusions to which no response is required.

## LEGAL AND FACTUAL BACKGROUND

### FEDERAL LAW ENFORCEMENT

20. The President has a constitutional duty to "take Care that the Laws be faithfully executed." U.S. Const. art. II § 3.

**RESPONSE:** Admitted.

21. Subordinate officers in various federal agencies, including DOJ, DHS, and their components, assist the President in discharging that duty. *See Seila L. LLC v. Consumer Fin. Prot. Bureau*, 591 U.S. 197, 203–04 (2020); *see also Tennessee v. Davis*, 100 U.S. 257, 263 (1879) (stating that the Federal Government "can act only through its officers and agents").

**RESPONSE:** The averments in this paragraph consist of legal conclusions to which no response is required, but if further answer is required the City of Milwaukee states that the cited cases speak for themselves and deny anything beyond the text of the cases.

22. Federal law empowers the Executive to provide for and dictate the conduct of federal law enforcement officers in carrying out their official duties. *See, e.g.*, 5 U.S.C. § 301 (authorizing the head of an Executive or military department to "prescribe regulations for the government of his department [and] the conduct of its employees"); 28 U.S.C. § 509 (vesting all functions of other officers, agencies, and employees of DOJ in the Attorney General); 8 U.S.C. § 1103(a)(2) (giving the Secretary of Homeland Security the power to "control, direct[], and supervis[e]" all DHS employees).

**RESPONSE:** The averments in this paragraph consist of legal conclusions to which no response is required, but if further answer is required the City of Milwaukee states that the cited statutes speak for themselves and deny anything beyond the text of the statutes.

23. Federal law similarly empowers the Executive to provide for and dictate federal law enforcement officers' uniforms and equipment when carrying out their official duties. See, e.g., 5 U.S.C. § 5901 (directing the head of each federal agency to furnish its employees a uniform or an allowance for a uniform); 29 U.S.C. § 668 (requiring heads of federal agencies to, as part of their occupational safety and health programs, acquire, maintain, and require the use of safety equipment, personal protective equipment, and devices reasonably necessary to protect employees); 10 U.S.C. § 723(b)(1) (providing exception to certain identification requirements to individuals who "do not wear a uniform or other distinguishing clothing or equipment in the regular performance of their official duties").

**RESPONSE:** The averments in this paragraph consist of legal conclusions to which no response is required, but if further answer is required the City of Milwaukee states that the cited statutes speak for themselves and deny anything beyond the text of the statutes.

24. Because the Federal Government's authority to execute the laws "extend[s] over the whole territory of the Union, acting upon the States and upon the people of the States," federal officers "must act within the States." *Davis*, 100 U.S. at 263. Accordingly, federal law enforcement officers carry out their duties within the several states and their localities, including the City of Milwaukee.

**RESPONSE:** The averments in this paragraph consist of legal conclusions to which no response is required, but if further answer is required the City of Milwaukee states that the cited case speaks for itself and deny anything beyond the text of that case.

25. For example, the DEA enforces our Nation's controlled substances laws. *See generally* The Controlled Substances Act, *codified as amended at* 21 U.S.C. §§ 801, *et seq.* In carrying out that mission, the DEA investigates and aids in the prosecution of major violators of controlled substances laws; seizes and forfeits assets derived from illicit drug trafficking; and manages a national drug intelligence program in cooperation with federal, state, local, and foreign officials. *See* 28 C.F.R. § 0.100–0.101.[4]

**RESPONSE:** The City of Milwaukee admits only that the Drug Enforcement Administration enforces federal controlled-substances laws; to the extent further answer is required, the City of Milwaukee states that the statute, regulation and website cited in this paragraph (and footnote) speak for themselves and deny any characterizations thereof.

[4] *See also* DEA, Mission Statement, https://perma.cc/Y2FW-H3BV.

26. As another example, the FBI is charged with rooting out violent crime, defending the homeland against terrorist attacks, and investigating and combating cybercrime, among other duties. It carries out this mission through numerous operations throughout the country and in partnership with federal, state, local, and foreign officials. *See id.* § 0.85.[5]

**RESPONSE:** The City of Milwaukee admits only that the Federal Bureau of Investigations investigates violations of laws, terrorist activities, and cybercrimes among other duties; to the extent further answer is required, the City of Milwaukee states that the regulation and website cited in this paragraph (and footnote) speak for themselves and deny any characterizations thereof.

27. DHS, through ICE and CBP, is principally responsible for enforcing our Nation's immigration laws, including the Immigration and Nationality Act (INA), which, pursuant to Congress's power to "establish a uniform Rule of Naturalization," U.S. Const. art. I § 8, cl. 4, make up the framework for the "governance of immigration and alien status," *see Arizona v. United States*, 567 U.S. 387, 395 (2012).

**RESPONSE:** The City of Milwaukee admits only that the Department of Homeland Security enforces federal immigration laws, including the Immigration and Nationality Act; to the extent further answer is required, the City of Milwaukee states that the Act, the Constitution, and the case cited in this paragraph speak for themselves and deny any characterizations thereof.

28. The INA confers upon the Executive Branch broad authority to inspect, investigate, arrest, detain, and remove aliens who are unlawfully present in the United States. *See, e.g.*, 8 U.S.C. §§ 1182, 1225–29a, 1231. As part of those enforcement efforts, DHS, through HSI, also investigates transnational crime and threats, including incidents of human smuggling and human trafficking. *See* 8 U.S.C. §§ 1324, 1232.

**RESPONSE:** The City of Milwaukee admits only that the Department of Homeland Security enforces federal immigration laws, including the Immigration and Nationality Act; to the extent further answer is required, the City of Milwaukee states that the statutes cited in this paragraph speak for themselves and deny any characterizations thereof.

[5] *See also* FBI, About, Mission and Priorities, https://www.fbi.gov/about/mission (last visited July 23, 2026).

## MILWAUKEE CODE OF ORDINANCES § 105-140

29. On April 21, 2026, Milwaukee Common Council passed the Ordinance titled "Law Enforcement Identification" (Common Council File No. 251797).[6] Exhibit A. Mayor Johnson signed the Ordinance on April 22, 2026, and it became effective on May 9, 2026.

**RESPONSE:** The averments in this paragraph (and footnote) are admitted.

30. Members of the Milwaukee Common Council have publicly expressed the Ordinance's purpose as targeting federal officers. For example, in a statement by Alderman Alex Brower regarding a prior version of the Ordinance, he noted the legislation is "a means of preventing masked ICE agents in Milwaukee[.]"[7] Alderwoman JoCasta Zamarripa stated, "If they continue to work here in a secret capacity with full masks on like I've seen, then we are asking MPD and the city attorney to act as the enforcement entity and write citations to ICE."[8]

**RESPONSE:** The City of Milwaukee admits that this paragraph contains partial recitations of public statements by two members of the Milwaukee Common Council but deny that these recitations are necessarily accurate or complete, or that they accurately or completely reflect City policy; as further answer, the City of Milwaukee states that the Ordinance speaks for itself and deny any characterizations inconsistent with its text.

31. Prior to its passage, City Attorney Goyke reviewed the proposed ordinance, stating that "[i]t is legal and enforceable." Exhibit B.

**RESPONSE:** Admit.

32. On its face, the Ordinance purports to apply to federal law enforcement officers by defining a "Law enforcement officer" to include "any employee or agent of the United States government who has authority to carry firearms and make warrantless arrests and whose duties involve the enforcement of criminal, customs, or immigration laws of the United States."

---

[6] Section 105-140's stated policy purposes of the Ordinance include "to promote public safety, prevent impersonation and fraud, and ensure transparency and accountability in law enforcement operations . . . ."

[7] Alex Brower, *Statement on committee approval of law enforcement ICE identification ordinance* (Mar. 12, 2026), https://city.milwaukee.gov/ImageLibrary/Groups/ccCouncil/News/2026/ District-03/03-Statement-on-committee-approval-of-file-number-251797.pdf.

[8] Ben Jordan, *ICE says it will not comply with Milwaukee's federal agent mask ban ordinance, alderwoman wants accountability* (June 29, 2026), https://perma.cc/83V8-X4XB.

**RESPONSE:** The averments in this paragraph consist of legal conclusions to which no response is required, but if further answer is required the City of Milwaukee states that the Ordinance speaks for itself and deny anything beyond the text of the Ordinance.

33. The Ordinance provides that "[n]o law enforcement officer may wear a face covering while interacting with the public in the performance of the officer's duties." § 105-140(4).

**RESPONSE:** The averments in this paragraph consist of legal conclusions to which no response is required, but if further answer is required the City of Milwaukee states that the Ordinance speaks for itself and deny anything beyond the text of the Ordinance.

34. The Ordinance defines "Face covering" to mean "any opaque mask, garment, or other item that conceals or obscures the facial identity of an individual, including a balaclava, tactical mask, neck gaiter, ski mask, or any similar type of facial covering or face-shielding item." § 105-140(3)(b). A face covering does not include "[a] translucent face shield or clear mask that does not conceal the wearer's facial identity[,]" "[a] medical mask to protect against transmission of disease or infection, or any other mask or device necessary to protect against exposure to any toxin, gas, smoke, or any other hazardous environmental condition, including air-purifying respirators, full or half masks, or self-contained breathing apparatuses[,]" or "[a] helmet used to protect the wearer's head during transportation." § 105-140(3)(b-1)-(b-3).

**RESPONSE:** The averments in this paragraph consist of legal conclusions to which no response is required, but if further answer is required the City of Milwaukee states that the Ordinance speaks for itself and deny anything beyond the text of the Ordinance.

35. The Ordinance contains limited exceptions. Section 105-140(6)(a) provides that "face coverings may be worn to provide protection against cold or other extreme weather during assignments requiring a law enforcement officer to be outdoors for long periods of time."

**RESPONSE:** The averments in this paragraph consist of legal conclusions to which no response is required, but if further answer is required the City of Milwaukee states that the Ordinance speaks for itself and deny anything beyond the text of the Ordinance.

36. The Ordinance also excepts "[a] law enforcement officer engaged in an undercover operation" or "[a] special weapons and tactics team officer wearing protective gear while performing his or her special weapons and tactics [Special Weapons and Tactics (SWAT)] team responsibilities." § 105-140(6)(b), (b-1)-(b-2).

**RESPONSE:** The averments in this paragraph consist of legal conclusions to which no response is required, but if further answer is required the City of Milwaukee states that the Ordinance speaks for itself and deny anything beyond the text of the Ordinance.

37. The Ordinance also provides that "[w]hen acting in an official capacity, all law enforcement officers shall do one or more of the following:

a. Display on their uniforms the name or widely recognized initials of the officer's agency and the officer's last name, badge number, or identification number.
b. Upon request, verbally provide their agency affiliation and last name, badge number, or identification number."

§ 105-140(5), (a)-(b).

**RESPONSE:** The averments in this paragraph consist of legal conclusions to which no response is required, but if further answer is required the City of Milwaukee states that the Ordinance speaks for itself and deny anything beyond the text of the Ordinance.

38. This identification requirement also contains the limited exception for "undercover operation[s]" and SWAT actions. § 105-140(6)(b), (b-1)-(b-2).

**RESPONSE:** The averments in this paragraph consist of legal conclusions to which no response is required, but if further answer is required the City of Milwaukee states that the Ordinance speaks for itself and deny anything beyond the text of the Ordinance.

39. The Ordinance penalizes "[a]ny person who willfully or knowingly violates" Section 105-140 by providing that they "shall, upon conviction thereof, be subject to a forfeiture of not less than $5,000, nor more than $10,000." § 105-140(7).

**RESPONSE:** The averments in this paragraph consist of legal conclusions to which no response is required, but if further answer is required the City of Milwaukee states that the Ordinance speaks for itself and deny anything beyond the text of the Ordinance.

40. Before commencing this lawsuit, the Department of Justice by a letter dated July 10, 2026, to Mayor Johnson and City Attorney Goyke, advised that "federal officers will not comply with Milwaukee's unconstitutional ordinances and will continue to wear masks and not use individual identifiers in their discretion." Exhibit C. The letter sought "assurances that neither [their] offices, the Milwaukee Police Department, nor any other entity in Milwaukee plans to enforce [Section 105-140] against federal law enforcement officers." *Id.*

**RESPONSE:** The City of Milwaukee admits that the Department of Justice wrote a letter dated July 10, 2026 and that its written text speaks for itself, and deny anything beyond the text of that writing.

41. On July 17, 2026, City Attorney Goyke reaffirmed the City's intent to enforce the Ordinance against federal officers, explaining that he "will not advise [his] clients to exempt federal law enforcement officers from enforcement of the Ordinance against them, and that [his] office will prosecute any validly issued citation for acts in violation of the Ordinance." Exhibit D. Mayor Johnson did not respond.

**RESPONSE:** The City of Milwaukee admits that Defendant Goyke wrote a letter dated July 17, 2026 and that its text speaks for itself, and deny that the partial recitation contained in this paragraph is accurate unless complete.

42. Milwaukee Common Council has reportedly directed the Milwaukee Police Department to investigate and pursue federal officers for violations, including ICE agents.[9]

**RESPONSE:** The City of Milwaukee admits that an article appeared in the Milwaukee Journal Sentinel on July 7, 2026 referencing a written request from members of the City Council to the Milwaukee Police Department and Fire and Police Commission and that the text of that article speaks for itself, and deny anything beyond the text of that article as well as any characterization of the written request referenced therein.

## MILWAUKEE CODE OF ORDINANCES § 105-40 IS UNLAWFUL

43. Notwithstanding the Ordinance's clause that "[n]othing in this section shall be interpreted to prohibit, restrict, or interfere with the proper exercise of state or federal law enforcement[,]"[10] the challenged provisions imposing a facial coverings ban and identification requirements for law enforcement officers constitute unlawful regulation of the Federal Government. *See Washington*, 596 U.S. at 838.

---

[9] David Clarey, *Milwaukee council members request police investigate masked ICE agents* (July 7, 2026), https://www.jsonline.com/story/news/crime/2026/07/07/milwaukee-council-membersrequest-police-investigate-masked-ice-agents/90841445007/?gnt-cfr=1&gca-cat=p&gcauir=true&gca-epti=z11xx55p115550l004450c115550e1190xxv11xx55d--85--b--85--&gcaft=202&gca-ds=sophi.

[10] The Ordinance does not indicate what constitutes "proper exercise of . . . federal law enforcement" nor who determines what is "proper."

**RESPONSE:** The averments in this paragraph consist of legal conclusions to which no response is required, but if further answer is required the City of Milwaukee states that the Ordinance speaks for itself and deny anything beyond the text of the Ordinance.

44. Milwaukee's Ordinance purports to mandate that federal law enforcement officers within Milwaukee comply with municipal prohibitions and requirements on facial coverings and identification and to subject those officers to penalties for complying with federal laws and policies that govern their official duties and actions.

**RESPONSE:** The averments in this paragraph consist of legal conclusions to which no response is required, but if further answer is required the City of Milwaukee states that the Ordinance speaks for itself and deny anything beyond the text of the Ordinance.

45. While the Ordinance contains limited exceptions, they do not exclude federal officers from its scope. Moreover, although states and localities do not have authority to determine excepted activities and conduct of federal law enforcement officers, the exceptions nonetheless do not fully address instances in which the identification requirement could impede federal operations, including, for example, surveillance and plainclothes operations.

**RESPONSE:** The averments in this paragraph consist of legal conclusions to which no response is required, but if further answer is required the City of Milwaukee states that the Ordinance speaks for itself and deny anything beyond the text of the Ordinance.

46. Due to the nature of law enforcement operations, federal officers require flexibility to determine when to announce their identities. For example, CBP and ICE have discretion on when they permit their officers and agents to wear facial coverings, whether to add or remove individual identifiers, and what identification is provided to individuals upon request.[11] That is up to the agencies and officers based on the facts and circumstances in a particular case and cannot be subjected to bright-line or conflicting rules made by state or local governments. Removing this flexibility and requiring federal agencies and officers to comply with Milwaukee's stricter facial coverings and identification requirements would undermine officer safety and operational effectiveness.

**RESPONSE:** The averments in this paragraph consist of legal conclusions to which no response is required, but if further answer is required, denied.

[11] For instance, federal regulations provide that "an immigration officer who is authorized to execute an arrest" announce himself and the purpose of the arrest "as soon as it is practical and safe to do so." 8 C.F.R. § 287.8(c)(2)(iii).

47. Denying federal agencies and officers discretion in these areas would chill federal law enforcement, threatening the safety of communities in Milwaukee.

**RESPONSE:** The averments in this paragraph consist of legal conclusions to which no response is required, but if further answer is required, denied.

48. The Ordinance accordingly prevents effective federal law enforcement within Milwaukee and constitutes unlawful direct regulation of the Federal Government.

**RESPONSE:** The averments in this paragraph consist of legal conclusions to which no response is required, but if further answer is required, denied.

**SECTION 105-140 HARMS THE FEDERAL GOVERNMENT AND THE PUBLIC**

49. The United States suffers a sovereign and irreparable injury from Section 105-140, *cf. Arizona v. Yellen*, 34 F.4th 841, 851–53 (9th Cir. 2022); *Vt. Agency of Nat. Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 771 (2000); *United States v. California*, 173 F.4th at 1069 ("[I]rreparable harm necessarily results from allowing California to enforce a law invalid under the doctrine of intergovernmental immunity."); *United States v. Ekblad*, 732 F.2d 562, 563 (7th Cir. 1984) ("The United States has standing to seek relief from actual or threatened interference with the performance of its proper governmental functions."). The United States has sovereign authority to manage federal law enforcement activities and, under the Supremacy Clause, need not cede that authority to Milwaukee (or any municipality) by complying with the City's purported requirements for federal law enforcement officers.

**RESPONSE:** The averments in this paragraph consist of legal conclusions to which no response is required, but if further answer is required, denied; as further answer the City of Milwaukee states the cases cited speak for themselves and deny any characterization inconsistent with the text of those cases.

50. Even beyond the sovereign injury, compliance with Section 105-140 would endanger officers and reduce operational effectiveness by, among other things, subjecting them to standards that conflict with and differ materially from applicable federal standards and policies.

**RESPONSE:** The averments in this paragraph consist of legal conclusions to which no response is required, but if further answer is required, denied.

51. Federal law enforcement agents and officers cannot and will not comply with the challenged Section 105-140, which is unconstitutional and recklessly disregards officer safety, public safety, and federal operational needs.

**RESPONSE:** Based on Plaintiff's representation, the City of Milwaukee admits that federal law enforcement agencies have publicly stated that they will not comply with the Ordinance; the City lacks knowledge or information sufficient to form a belief about whether these agencies "cannot" comply and therefore deny the remaining averments in this paragraph.

52. Law enforcement historically has been a dangerous job but now is even more so. Protecting the personal identities of federal officers and by extension their families is necessary in part due to the increasing threats of targeted harassment and retaliation against federal officers and agents for simply doing their jobs enforcing the laws enacted by Congress. While such threats have always existed, the volatile political environment has increased such threats exponentially, requiring new tactics to mitigate the harms to officer safety and operational effectiveness.

**RESPONSE:** The City of Milwaukee denies that federal law enforcement officers face unique or greater dangers than the dangers faced by state or local law enforcement officers, or that the Ordinance distinguishes between federal and state or local law enforcement officers.

53. For instance, members of the public photograph, film, and publish federal enforcement actions online and include the personal identities of federal officers for the sole purpose of intimidation and harassment. This content is directly used by members of organized crime and transnational criminal organizations in serious and potentially deadly ways.

**RESPONSE:** The City of Milwaukee admits and affirmatively states that no prior case has recognized as reasonable a subjective expectation of privacy in what citizens, including law enforcement officers, knowingly expose to the public,[12] and separate prior cases authorize

[12] *See, e.g., California v. Greenwood*, 486 U.S. 35, 40-41 (1988) (holding that society does not recognize a subjective expectation of privacy in what is publicly exposed as reasonable or legitimate), *California v. Ciraolo*, 476 U.S. 207, 213-14 (1985) (concluding an individual has no legitimate expectation of privacy in open fields accessible to the public), *United States v. Knotts*, 460 U.S. 276, 281-82 (1983) (finding no expectation of privacy in movements traveling along public throughfares in plain view); *United States v. Santana*, 427 U.S. 38, 42 (1976) (holding that a person standing in a public place, such as a threshold, has no reasonable expectation of privacy).

photographing and recording law enforcement officials performing their official duties in public.[13] In further response, the City of Milwaukee lacks knowledge or information sufficient to form a belief as to "sole purpose" for which citizens may photograph or record law enforcement officers engaged in public duties, or whether publicly available content is used by organized crime and/or transnational criminal organizations and therefore deny these allegations.

54. For example, some individuals photograph officers' faces and run them through facial recognition applications that search social media and doxxing sites such as, for example, ICESpy.org. Once a match is made, they often search for family members, including children, and disseminate this information online, allowing people to track, harass, and obstruct law enforcement. This opens officers up to harassment, tracking, and assaults in the performance of their duties in the field.

**RESPONSE:** The City of Milwaukee lacks knowledge or information about the truth of the matters asserted and therefore deny and put Plaintiff to its proof.

55. Federal agents around the country have recently been targeted for harm, including harassment, assault, and murder. These targeted threats have expanded to include extended family members. For example, an FBI agent earlier this year was forced to abandon his FBI vehicle when a crowd of protestors rushed a group of federal law enforcement agents. The crowd subsequently vandalized the vehicle and stole the agent's personal items, including his FBI credentials and driver's license. His name and local address were subsequently posted online. The threats to the agent and his extended family, via social media and U.S. mail, have continued to this day, necessitating the need for FBI protection measures.

**RESPONSE:** The City of Milwaukee lacks knowledge or information about the truth of the matters asserted and therefore deny and put Plaintiff to its proof.

56. Facial coverings can prevent agitators from identifying and tracking officers, especially those using facial recognition or other tools. And while officers almost always wear tags identifying them as federal officers (with the exception of, for example, surveillance, undercover, or plainclothes operations), personal identifiers carry similar risks that can allow agitators to

---

[13] *See, e.g., Irizarry v. Yehia*, 38 F.4th 1282, 1295 (10th Cir. 2022) (holding that the right to record law enforcement performing their official duties in public is clearly established); *Smith v. City of Cumming*, 212 F.3d 1332, 1333 (11th Cir. 2000) (recognizing a constitutional right to photograph or videotape law enforcement activity on public property). *See also Nicodemus v. City of S. Bend*, 137 F.4th 654 (7th Cir. 2025) (acknowledging that citizens have First Amendment rights to observe and/or film public law enforcement activities); *Brown v. Kemp*, 86 F.4th 745 (7th Cir. 2023) (concluding that the right to create audio and video recordings of public officials engaged in official duties is a necessary corollary to the First Amendment's guarantees of free speech and press); *ACLU v. Alvarez*, 679 F.3d 583 (7th Cir. 2012) (finding the government's interest in maintaining privacy was not implicated when law enforcement officers are performing their duties in public places and engaged in public communication).

identify and harass individual officers. Protecting officers' personal identities is particularly important during high-risk enforcement operations involving individuals with violent criminal history, gang affiliations, transnational criminal organizations, and known or suspected terrorists.

**RESPONSE:** The City of Milwaukee lacks knowledge or information about the truth of the matters asserted and therefore deny and put Plaintiff to its proof.

57. Facial coverings and removal of personal identifiers also prevent suspects from identifying officers who may be involved in future enforcement actions. Because suspects who recognize officers may take preemptive actions to evade apprehension and obstruct enforcement efforts, flexibility is critical for maintaining operational effectiveness, especially in areas where repeat offenders or organized criminal networks are prevalent. The existence of websites that contain information regarding individual officers' identities can also undermine undercover operations and plainclothes missions. *See, e.g.*, supra ¶ 54.

**RESPONSE:** The City of Milwaukee lacks knowledge or information about the truth of the matters asserted and therefore deny and put Plaintiff to its proof.

58. Finally, the threat of enforcement for noncompliance will only further exacerbate the chilling effects of these laws. Officers face a choice of whether to wear facial coverings or identify themselves and their agencies when it may be dangerous to themselves, others, and the operation, or face the threat of significant penalties. Either option presents serious risks and harms and purposefully works to chill the enforcement of federal law.

**RESPONSE:** The City of Milwaukee lacks knowledge or information about the truth of the matters asserted and therefore deny and put Plaintiff to its proof.

59. Moreover, enforcement is certainly impending: Section 105-140 has already taken effect; the challenged provisions plainly apply to federal law enforcement officers and carry penalties for noncompliance; numerous officers operating within Milwaukee routinely engage in the very conduct the Ordinance proscribes; and the City has indicated its intent to enforce its provisions against them.

**RESPONSE:** The City of Milwaukee admits that the Ordinance went into effect in May 2026 and that the City Attorney has indicated the office would prosecute "properly cited offenders," but lacks knowledge or information about the truth of the remaining matters asserted and therefore denies the same and puts Plaintiff to its proof.

60. The Ordinance also harms public safety because obstructing federal enforcement leaves dangerous individuals at large in Milwaukee, compromises undercover operations that protect the broader community against gangs and trafficking organizations, and risks pushing

federal officers to scale back enforcement in the City—leaving residents with less protection than people in jurisdictions without such ordinances. Bystanders near enforcement actions also face added risk when officers' identities are compelled to be disclosed in real time.

**RESPONSE:** Denied.

61. More broadly, the public has an independent interest in the Federal Government's ability to carry out its enforcement functions without obstruction by Milwaukee's Ordinance.

**RESPONSE:** The averments in this paragraph consist of legal conclusions to which no response is required, but if further answer is required, denied.

## CLAIM FOR RELIEF

### VIOLATION OF THE SUPREMACY CLAUSE—MILWAUKEE CODE OF ORDINANCES §105-140 (UNLAWFUL REGULATION OF THE FEDERAL GOVERNMENT)

62. Plaintiff hereby incorporates paragraphs 1 through 61 of the Complaint as if fully stated herein.

**RESPONSE:** The City of Milwaukee repeats and realleges its responses to paragraphs 1 through 61 as though full set forth herein.

63. The Supremacy Clause of the United States Constitution mandates that "[t]his Constitution, and the Laws of the United States which shall be made in Pursuance thereof . . . shall be the supreme Law of the Land . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2.

**RESPONSE:** The averments in this paragraph consist of legal conclusions to which no response is required, but if further answer is required the City of Milwaukee states that the Constitution speaks for itself and deny anything beyond its text.

64. The Supremacy Clause incorporates principles of intergovernmental immunity, and thus, a state enactment is invalid if it "regulat[es] the United States directly *or* discriminat[es] against the Federal Government or those with whom it deals." *Washington*, 596 U.S. at 838 (citation omitted).

**RESPONSE:** The averments in this paragraph consist of legal conclusions to which no response is required, but if further answer is required the City of Milwaukee states that the cited case speaks for itself and deny anything beyond its text.

65. Section 105-140.4 purports to ban federal law enforcement officers from wearing facial coverings while performing their duties in Milwaukee and subjects those officers to penalties for noncompliance.

**RESPONSE:** The averments in this paragraph consist of legal conclusions to which no response is required, but if further answer is required the City of Milwaukee states that the Ordinance speaks for itself and deny anything beyond its text.

66. Section 105-140.5(a) purports to require federal law enforcement officers to display visible identification while performing their duties in Milwaukee and subjects those officers to penalties for noncompliance.

**RESPONSE:** The averments in this paragraph consist of legal conclusions to which no response is required, but if further answer is required the City of Milwaukee states that the Ordinance speaks for itself and deny anything beyond its text.

67. Section 105-140.5(b) purports to alternatively require federal law enforcement officers to provide their agency affiliation and last name, badge number, or identification number on request while performing their duties in Milwaukee and subjects those officers to penalties for noncompliance.

**RESPONSE:** The averments in this paragraph consist of legal conclusions to which no response is required, but if further answer is required the City of Milwaukee states that the Ordinance speaks for itself and deny anything beyond its text.

68. Milwaukee's enforcement of Section 105-140 against federal law enforcement officers constitutes unlawful regulation of the Federal Government.

**RESPONSE:** The averments in this paragraph consist of legal conclusions to which no response is required, but if further answer is required, denied.

69. Accordingly, Milwaukee Code of Ordinances § 105-140 is invalid under the Supremacy Clause and its application to the Federal Government should be enjoined.

**RESPONSE:** The averments in this paragraph consist of legal conclusions to which no response is required, but if further answer is required, denied.

## AFFIRMATIVE DEFENSES

AS AND FOR AFFIRMATIVE DEFENSES, the City of Milwaukee states and alleges as follows:

1. Plaintiff lacks pre-enforcement standing;
2. Plaintiff's Complaint fails to state a claim upon which relief can be granted;
3. Plaintiff has improperly named unnecessary or redundant parties including Defendants Cavalier Johnson, Evan Goyke, and Jeffrey Norman; and
4. Defendants reserve their rights to assert any additional or different defenses and/or affirmative defenses in response to the Complaint based on information or knowledge obtained during future investigation or discovery.

WHEREFORE, Defendant City of Milwaukee demands judgment as follows:

1. dismissing the complaint of the Plaintiff as against them on its merits, together with costs and disbursements; and

2. for such other and further relief as the Court may deem just and equitable.

**JURY DEMAND**

The City of Milwaukee demands a trial by jury of all issues so triable.

Dated and signed at Milwaukee, Wisconsin this 4th day of September, 2026.

EVAN GOYKE
City Attorney

s/Clint B. Muche
CLINT B. MUCHE
Assistant City Attorney
State Bar No. 1131629
THOMAS D. MILLER
Assistant City Attorney
State Bar No. 1030538
ROBIN A. PEDERSON
Deputy City Attorney
State Bar No. 1045759

*Attorneys for Defendant City of Milwaukee*

ADDRESS:
800 City Hall
200 East Wells Street
Milwaukee, WI 53202
Tel: (414) 286-2601
Fax: (414) 286-8550
Email: cmuche@milwaukee.gov
tmiller@milwaukee.gov
rpderson@milwaukee.gov