**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF WISCONSIN**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF MILWAUKEE,<br><br>Defendant. | No. 26-cv-1293-LA |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION**
**FOR JUDGMENT ON THE PLEADINGS**

Pursuant to Local Civil Rule 7.1(b)(1), the United States respectfully submits this memorandum setting forth the reasons and supporting authorities why its Motion for Judgment on the Pleadings should be granted.

## TABLE OF CONTENTS

INTRODUCTION ..... 1

BACKGROUND ..... 2

I. Federal Law ..... 2

II. Milwaukee Law ..... 2

STANDARD OF REVIEW ..... 5

ARGUMENT ..... 7

I. The United States has pre-enforcement standing ..... 7

II. The Ordinance violates the Supremacy Clause and the United States is entitled to equitable relief ..... 8

A. The Ordinance violates the intergovernmental immunity doctrine. ..... 8

B. The United States is entitled to permanent injunctive and declaratory relief. ..... 15

CONCLUSION ..... 17

## INTRODUCTION

Under the Supremacy Clause of the U.S. Constitution, States have no authority to directly regulate the Federal Government without Congress's express approval. *M'Culloch v. Maryland*, 17 U.S. (4 Wheat.) 316, 436 (1819) ("States have no power, by taxation or otherwise, to retard, impede, burden, or in any manner control, the operations of the constitutional laws enacted by Congress."); *McHenry County v. Raoul*, 44 F.4th 581, 592 (7th Cir. 2022) ("States may not regulate the federal government directly."). Yet Milwaukee has enacted an ordinance, section 105-140 of the Milwaukee Code, that does exactly that: it prohibits federal law enforcement officers from wearing facial coverings while performing federal duties, compels them to identify themselves, and threatens them with substantial monetary penalties for noncompliance. These restrictions strike at the heart of federal law enforcement operations—dictating how federal officers may appear, interact with the public, and carry out their mission.

Courts across the country have uniformly invalidated similar enactments as unconstitutional direct regulations of the Federal Government. *See, e.g.*, *United States v. California* (*California III*), No. 26-926, 2026 WL 3071018 (9th Cir. Oct. 14, 2026) (designated for publication); *United States v. Virginia*, No. 3:26-CV-545, 2026 WL 2411521 (E.D. Va. Aug. 18, 2026), *appeal docketed*, No. 26-1874 (4th Cir. Sep. 14, 2026); *United States v. New York*, No. 1:26-CV-1360, 2026 WL 2225423 (N.D.N.Y. Aug. 3, 2026); *United States v. City of Philadelphia*, 838 F. Supp. 3d 436 (E.D. Pa. 2026). Those decisions leave no doubt that municipalities may not force federal officers to conform with local uniform and identification requirements.

This case fits squarely within that settled law, and the pleadings establish the Ordinance's invalidity. The United States readily satisfies pre-enforcement standing because the City has declared its intention to prosecute federal officers for performing their duties in ways the Ordinance forbids. On the merits, the Ordinance directly regulates the Federal Government in

violation of the intergovernmental immunity doctrine. The United States is entitled to a permanent injunction because the Ordinance threatens ongoing and irreparable harm to federal law enforcement operations. For these reasons, judgment on the pleadings is warranted.

## BACKGROUND

### I. FEDERAL LAW

"The President has a constitutional duty to 'take Care that the Laws be faithfully executed.'" Compl. ¶ 20, Dkt. No. 1; Answer ¶ 20, Dkt. No. 20; *see also* U.S. Const. art. II, § 3. The United States "enforces federal laws through its Executive agencies." Compl. ¶ 15; Answer ¶ 15. "Those agencies include but are not limited to the Department of Justice (DOJ) and its component law enforcement agencies" such as "the Federal Bureau of Investigation (FBI) and the Drug Enforcement Administration (DEA)" as well as "the Department of Homeland Security (DHS) and its component law enforcement agencies" such as "U.S. Immigration and Customs Enforcement" and "U.S. Customs and Border Protection." Compl. ¶ 15; Answer ¶ 15. For example, DEA "enforces federal controlled-substances laws." Compl. ¶ 25; Answer ¶ 25. FBI "investigates violations of laws, terrorist activities, and cybercrimes among other duties." Compl. ¶ 26; Answer ¶ 26. And DHS "enforces federal immigration laws, including the Immigration and Nationality Act." Compl. ¶ 27; Answer ¶ 27.

### II. MILWAUKEE LAW

The City passed the Ordinance on April 21, 2026, and it became effective on April 22, 2026.[1] Compl. ¶ 29, Dkt. No. 1; Answer ¶ 29, Dkt. No. 20; *see also* Milwaukee, Wis., Code § 105-140 (2026). The Ordinance defines "Law enforcement officer" to include "any employee or agent

[1] The text of the Ordinance is attached as Exhibit A to the Complaint. *See* Compl., Ex. A, Dkt. No. 1-1. The Complaint references Exhibit A and quotes from the Ordinance. *See* Compl. ¶¶ 32–39. The Answer asserts in response to such references "that the Ordinance speaks for itself" and that the City "den[ies] anything beyond the text of the Ordinance." Answer ¶¶ 32–39.

of the United States government who has authority to carry firearms and make warrantless arrests and whose duties involve the enforcement of criminal, customs, or immigration laws of the United States." Compl. ¶ 32; Answer ¶ 32; *see also* § 105-140(3). The Ordinance further states that "[a]ny person who willfully or knowingly violates" its provisions "shall, upon conviction thereof, be subject to a forfeiture of not less than $5,000, nor more than $10,000." Compl. ¶ 39; Answer ¶ 39; *see also* § 105-140(7).

The Ordinance prohibits federal law enforcement officers from wearing masks. The Ordinance states that "[n]o law enforcement officer may wear a face covering while interacting with the public in the performance of the officer's duties." Compl. ¶ 33; Answer ¶ 33; *see also* § 105-140(4). The Ordinance defines "Face covering" to mean "any opaque mask, garment, or other item that conceals or obscures the facial identity of an individual, including a balaclava, tactical mask, neck gaiter, ski mask, or any similar type of facial covering or face-shielding item." Compl. ¶ 34; Answer ¶ 34; *see also* § 105-140(3)(b). A face covering does not include "[a] translucent face shield or clear mask that does not conceal the wearer's facial identity"; "[a] medical mask to protect against transmission of disease or infection, or any other mask or device necessary to protect against exposure to any toxin, gas, smoke, or any other hazardous environmental condition, including air-purifying respirators, full or half masks, or self-contained breathing apparatuses"; or "[a] helmet used to protect the wearer's head during transportation." Compl. ¶ 34; Answer ¶ 34; *see also* § 105-140(3)(b-1), (b-2), (b-3).

The Ordinance also mandates that federal law enforcement officers identify themselves. The Ordinance states that "[w]hen acting in an official capacity, all law enforcement officers shall do one or more of the following": (1) "[d]isplay on their uniforms the name or widely recognized initials of the officer's agency and the officer's last name, badge number, or identification number";

and (2) "[u]pon request, verbally provide their agency affiliation and last name, badge number, or identification number." Compl. ¶ 37; Answer ¶ 37; *see also* § 105-140(5).

The Ordinance contains limited exceptions. The Ordinance does not apply to "[a] law enforcement officer engaged in an undercover operation" or "[a] special weapons and tactics team officer wearing protective gear while performing his or her special weapons and tactics team responsibilities." Compl. ¶ 36; Answer ¶ 36; *see also* § 105-140(6)(b). The Ordinance further provides that "face coverings may be worn to provide protection against cold or other extreme weather during assignments requiring a law enforcement officer to be outdoors for long periods of time." Compl. ¶ 35; Answer ¶ 35; *see also* § 105-140(6)(a).

Federal law enforcement officers will not comply with the Ordinance, and the City intends to prosecute such officers for violating the Ordinance. In a letter to the City dated July 10, 2026, the Department of Justice stated that "federal officers . . . will continue to wear masks and not use individual identifiers in their discretion."[2] Compl. ¶ 40; Answer ¶ 40. In response, the City Attorney stated in a letter to the Department of Justice dated July 17, 2026, that he "will not advise [his] client to exempt federal law enforcement officers from enforcement of the Ordinance against them, and that [his] office will prosecute any validly issued citation for acts in violation of the Ordinance."[3] Compl. ¶ 41; Answer ¶ 41. The City Attorney has also concluded the Ordinance "is legal and enforceable." Compl. ¶ 31; Answer ¶ 31. And it has been publicly reported that the City

---

[2] The text of DOJ's letter to the City is attached as Exhibit C to the Complaint. *See* Compl., Ex. C, Dkt. No. 1-3. The Complaint references Exhibit C and quotes from the letter. *See* Compl. ¶ 40. The Answer admits "that the Department of Justice wrote a letter dated July 10, 2026 and that its written text speaks for itself." Answer ¶ 40.

[3] The text of the City Attorney's letter to DOJ is attached as Exhibit D to the Complaint. *See* Compl., Ex. D, Dkt. No. 1-4. The Complaint references Exhibit D and quotes from the letter. *See* Compl. ¶ 41. The Answer admits that the City Attorney "wrote a letter dated July 17, 2026 and that the text speaks for itself." Answer ¶ 41.

has directed local police to investigate and pursue federal officers for violating the Ordinance.[4] *See* Compl. ¶ 42; Answer ¶ 42.

## STANDARD OF REVIEW

Judgment on the pleadings under Rule 12(c) "is appropriate when, 'after the pleadings are closed,' a court determines that there is no material issue of fact presented and that one party is clearly entitled to judgment." *Flora v. Home Fed. Sav. & Loan Ass'n*, 685 F.2d 209, 211 (7th Cir. 1982) (footnote omitted) (quoting *Freidman v. Washburn Co.*, 145 F.2d 715, 717 (7th Cir. 1944)). Courts examine the pleadings; "documents incorporated by reference to the pleadings"; and relevant, judicially noticeable "matters of public record" to determine whether there is any material issue of fact presented. *United States v. Wood*, 925 F.2d 1580, 1582 (7th Cir. 1991) (citing *Goldman v. Belden*, 754 F.2d 1059, 1065–66 (2d Cir. 1985), and *Louisiana ex rel. Guste v. United States*, 656 F. Supp. 1310, 1314 n.6 (W.D. La. 1986)). When a plaintiff seeks judgment on the pleadings, courts take as true the complaint's "uncontested allegations to which [the defendant] had an opportunity to respond," *Flora*, 685 F.2d at 211; any new allegations in the answer, *see, e.g.*, *Forseth v. Village of Sussex*, 199 F.3d 363 (7th Cir. 2000); and any relevant, judicially-noticeable matters of public record, *see Wood*, 925 F.2d at 1582. Courts view these facts "in a light most favorable to the" defendant. *Id.* at 1581.

The Seventh Circuit has often said it reviews Rule 12(c) motions using "the same standard that [it] reference[s] in reviewing a decision to grant a Rule 12(b)(6) motion to dismiss for failure

[4] The Complaint alleged the City "has reportedly directed the Milwaukee Police Department to pursue federal officers for violations" of the Ordinance. Compl. ¶ 42. In support, the Complaint cites a *Milwaukee Journal Sentinel* article titled "Milwaukee Council Members Request Police Investigate Masked ICE Agents." *Id.* ¶ 42 n.9. The Answer "admits that an article appeared in the Milwaukee Journal Sentinel on July 7, 2026 referencing a written request from members of the City Council to the Milwaukee Police Department and Fire and Police Commission and that the text of that article speaks for itself." Answer ¶ 42.

to state a claim for relief." *Citizens Ins. Co. of Am. v. Wynndalco Enters., LLC*, 70 F.4th 987, 994 (7th Cir. 2023) (citing *Mesa Lab'ys, Inc. v. Fed. Ins. Co.*, 994 F.3d 865, 867 (7th Cir. 2021)). In doing so, the Seventh Circuit has applied the Rule 12(b)(6) standard announced by *Conley v. Gibson*, 355 U.S. 41 (1957), namely, that the movant discharges his or her burden "only if it is beyond doubt that the nonmoving party cannot prove facts sufficient to support its position." *Citizens Ins. Co.*, 70 F.4th at 994 (citing *Mesa Lab'ys*, 994 F.3d at 867). The Seventh Circuit continues to apply *Conley* to Rule 12(c) motions notwithstanding its abrogation by *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). *E.g.*, *Citizens Ins. Co.*, 70 F.4th at 994.

In ruling on a 12(c) motion, the Rule 12(b)(6) standard of review only applies to issues for which the nonmovant has the burden of proof. And the Seventh Circuit recently clarified that when district courts apply the Rule 12(b)(6) standard to Rule 12(c) motions, they must use the new standard established by *Twombly* and *Iqbal*. *See Wolf v. Riverport Ins. Co.*, 132 F.4th 515, 518–19 (7th Cir. 2025). Consequently, a plaintiff satisfies its burden on a Rule 12(c) motion in the Seventh Circuit when the facts in the complaint that the defendant admits, the facts in the answer,[5] and any relevant, judicially noticeable facts together demonstrate that (1) no material facts are in dispute and the plaintiff would otherwise be entitled to judgment as a matter of law; and (2) the defendant's affirmative defenses are not "plausible," *Twombly*, 550 U.S. at 556, *i.e.*, the court cannot "draw the reasonable inference" that the defenses bar judgment for the plaintiff, *Iqbal*, 556 U.S. at 678.

---

[5] Here, the Answer does not plead any new facts. *See* Answer.

## ARGUMENT

### I. THE UNITED STATES HAS PRE-ENFORCEMENT STANDING.

The City's affirmative defense that the United States "lacks pre-enforcement standing" fails.[6] Answer ¶ 20, Dkt. No. 20. "A party who is the target of an unconstitutional law need not expose himself to liability before challenging its constitutionality if there are 'circumstances that render the threatened enforcement sufficiently imminent.'" *Brown v. Kemp*, 86 F.4th 745, 761 (7th Cir. 2023) (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158–59 (2014)). In other words, "a plaintiff may establish a sufficient threat of an imminent future injury rather than a past injury." *Id.* The United States has pre-enforcement standing if two things are true: (1) the United States has "an intention to engage in a course of conduct arguably affected with a constitutional interest[] but proscribed by" the Ordinance; and (2) "the risk of prosecution is 'credible.'" *Id.* (quoting *Babbitt v. United Farm Workers National Union*, 442 U.S. 289, 298, 299 (1979)). The risk of prosecution is credible if the United States' "fear [of prosecution] is both actual and reasonable." *Id.* Here, the United States easily satisfies both requirements on the pleadings.

As noted above, the Department of Justice has announced that federal officers in Milwaukee "will continue to wear masks and not use individual identifiers in their discretion." Compl. ¶ 40, Dkt. No. 1; Answer ¶ 40. The City Attorney stated that the Ordinance "is legal and enforceable," Compl. ¶ 31; Answer ¶ 31, and that he "will not advise [his] client to exempt federal law enforcement officers from enforcement of the Ordinance against them, and that [his] office will prosecute any validly issued citation for acts in violation of the Ordinance," Compl. ¶ 41;

[6] The City also attempts to plead as affirmative defenses that the "Complaint fails to state a claim upon which relief may be granted" and "name[s] unnecessary or redundant parties including Defendants Cavalier Johnson, Evan Goyke, and Jeffrey Norman." Answer ¶ 20. These defenses also fail. The Complaint states a claim upon which relief may be granted for the reasons discussed *infra*. And the United States voluntarily dismissed Johnson, Goyke, and Norman from this action. Stipulation of Partial Dismissal, Dkt. No. 24.

Answer ¶ 41. And according to public reports, the City has directed its officers to pursue federal officers for violating the Ordinance. *See* Compl. ¶ 42; Answer ¶ 42. Therefore, the United States as pre-enforcement standing because (1) it "inten[ds] to engage in a course of conduct arguably affected with a constitutional interest[] but proscribed by" the Ordinance; and (2) "the risk of prosecution is 'credible.'" *Brown*, 86 F.4th at 761 (quoting *Babbitt*, 442 U.S. at 298, 299).

Several other courts have agreed that the United States has pre-enforcement standing to challenge nearly identical state laws purporting to prohibit federal officers from wearing masks and require them to identify themselves. *See, e.g.*, *New York*, 2026 WL 2225423, at *4 n.2 ("[T]he Court is satisfied that the United States has demonstrated pre-enforcement standing."); *Virginia*, 2026 WL 2411521, at *9 ("[T]he Court finds that the requirement [of pre-enforcement standing] is satisfied."); *City of Philadelphia*, 838 F. Supp. 3d at 449 ("[T]he United States has pre-enforcement standing to challenge the constitutionality of [the mask and identification ordinance]"); *United States v. California* (*California I*), 819 F. Supp. 3d 1109, at 1121–22 (C.D. Cal. 2026) ("[T]he United States has [pre-enforcement] standing to challenge . . . the No Secret Police Act's facial covering prohibition and the No Vigilante Act's visible identification provision."), *rev'd on other grounds by California III*, 2026 WL 3071018.

Accordingly, on the pleadings, the United States has pre-enforcement standing to challenge the Ordinance's application to the Federal Government, and the City cannot plausibly prove otherwise.

## II. THE ORDINANCE VIOLATES THE SUPREMACY CLAUSE AND THE UNITED STATES IS ENTITLED TO EQUITABLE RELIEF

### A. The Ordinance violates the intergovernmental immunity doctrine.

"As every schoolchild learns, our Constitution establishes a system of dual sovereignty between the States and the Federal Government." *Gregory v. Ashcroft*, 501 U.S. 452, 457 (1991).

Under this system, "the States possess sovereignty concurrent with that of the Federal Government, subject only to limitations imposed by the Supremacy Clause." *Tafflin v. Levitt*, 493 U.S. 455, 458 (1990). Under the Supremacy Clause, "This Constitution, and the Laws of the United States which shall be made in Pursuance thereof . . . shall be the supreme Law of the Land . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. IV, cl. 2.

As *M'Culloch v. Maryland* recognized over two-hundred years ago, "[i]t is of the very essence of supremacy, to remove all obstacles to its action within its own sphere, and so to modify every power vested in subordinate governments, as to exempt its own operations from their own influence." 17 U.S. at 427. As such, "there is a plain repugnance in conferring on one government a power to control the constitutional measures of another, which other, with respect to those very measures, is declared to be supreme over that which exerts the control." *Id.* at 431. It follows that "States have no power, by taxation or otherwise, to retard, impede, burden, or in any manner control, the operations of the constitutional laws enacted by Congress." *Id.* at 436.

The intergovernmental immunity doctrine embodies this core principle. *McHenry County*, 44 F.4th at 592 ("The intergovernmental immunity doctrine dates to the canonical federalism decision in *McCulloch v. Maryland* . . . ."). The doctrine recognizes that the Supremacy Clause "prohibit[s] States from interfering with or controlling the operations of the Federal Government." *United States v. Washington*, 596 U.S. 833, 838 (2022); *see also Mayo v. United States*, 319 U.S. 441, 445 (1943) ("A corollary to [the Supremacy Clause] is that the activities of the Federal Government are free from regulation by any state."). Specifically, the doctrine "prohibit[s] state laws that *either* 'regulat[e] the United States directly *or* discriminat[e] against the Federal Government or those with whom it deals (*e.g.*, contractors)" absent "'clear and unambiguous' authorization" from Congress. *Washington*, 596 U.S. at 838, 840 (second and third alterations in

original) (quoting *North Dakota v. United States*, 495 U.S. 423, 438 (1990) (plurality opinion), and *Goodyear Atomic Corp. v. Miller*, 486 U.S. 174, 180 (1988)).

As relevant here, "States may not regulate the federal government directly." *McHenry County*, 44 F.4th at 592 (quoting *North Dakota*, 495 U.S. at 434). A direct regulation "'places [either] a prohibition' or mandate on the federal government." *CoreCivic, Inc. v. Governor of New Jersey*, 145 F.4th 315, 321 (3d Cir. 2025) (alteration in original) (quoting *Hancock v. Train*, 426 U.S. 167, 180 (1976)); *see also Arizona v. California*, 283 U.S. 423, 451 (1931) ("The United States may perform its functions without conforming to the police regulations of a state."). A direct regulation "lays hold of [federal officers] in their specific attempt to obey orders and requires qualifications in addition to those that the [Federal] Government has pronounced sufficient." *Johnson v. Maryland*, 254 U.S. 51, 57 (1920). "[A] direct regulation regulates the government *qua* government; it controls how the government conducts specifically governmental functions." *California III*, 2026 WL 3071018, at *5.

Moreover, a state law that applies equally to federal and state officers does not avoid intergovernmental immunity. *See Johnson* 254 U.S. at 56–57 ("[E]ven the most unquestionable and most universally applicable of state laws, such as those concerning murder, will not be allowed to control the conduct of a marshal of the United States acting under and in pursuance of the laws of the United States." (citing *Cunningham v. Neagle*, 135 U.S. 1 (1890))). Nor does a state law that regulates federal officers consistent with federal standards avoid intergovernmental immunity. *See United States v. City of Arcata*, 629 F.3d 986, 991–92 (9th Cir. 2010) ("A state or local law that directly regulates the conduct of the federal government . . . is invalid, even if it is no more restrictive than federal law.").

The same is also true of a state law that only incidentally burdens the Federal Government.[7] *See California III*, 2026 WL 3071018, at *5 ("Supreme Court case law compels the rejection of a de minimis exception to the doctrine of intergovernmental immunity." (quoting *United States v. California*, 921 F.3d 865, 883 (9th Cir. 2019))); *see id.* (finding that state law provisions directly regulate the Federal Government because they "'lay[] hold of' federal agencies and officers 'in their specific attempt to obey orders and require[] qualifications in addition to those that the [federal] Government has pronounced sufficient'" (alterations in original) (quoting *Johnson*, 254 U.S. at 57)); *City of Philadelphia*, 838 F. Supp. 3d at 452 (holding that the challenged law "directly regulat[ed] how federal law enforcement officers investigate criminal activity, conduct undercover operations, interact with the public, and enforce federal laws" even if, as the defendant claimed, its law's "impact on a federal function [will be] remote, at best" (alterations in original)).

Under this framework, the Ordinance is invalid as applied to federal law enforcement officers for the same reasons the laws in *California III*, *Virginia*, *New York*, and *City of Philadelphia* were. *See California III*, 2026 WL 3071018; *Virginia*, 2026 WL 2411521; *New York*, 2026 WL 2225423; *City of Philadelphia*, 838 F. Supp. 3d 436; *see also* Compl. 16 (seeking a declaration that the Ordinance "violates the Supremacy Clause . . . as to federal law enforcement officers"), Dkt. No. 1. The Ordinance applies to any "Law enforcement officer," including "any

---

[7] The Ninth Circuit has clarified that *North Dakota v. United States*'s functional approach to claims of intergovernmental immunity only applies "to States' regulation of federal contractors and third-party employers" and not to "direct regulation of the United States's governmental activities"—the issue here. *California III*, 2026 WL 3071018, at *6; *see also Virginia*, 2026 WL 2411521, at *10 (rejecting the State's position "that intergovernmental immunity 'is violated only when a state law forces the federal government to fundamentally alter or abandon its operations, not when it merely affects the manner in which federal employees carry out their duties,'" because "the state may regulate contractors more than it may regulate the Government directly"); *New York*, 2026 WL 2225423, at *9 (rejecting "application of the 'functional approach' analysis in the circumstances presented here").

employee or agent of the United States government who has authority to carry firearms and make warrantless arrests and whose duties involve the enforcement of criminal, customs, or immigration laws of the United States." Compl. ¶ 32; Answer ¶ 32, Dkt. No. 20. The Ordinance also mandates that "[n]o law enforcement officer may wear a face covering while interacting with the public in the performance of the officer's duties." Compl. ¶ 33; Answer ¶ 33. The Ordinance states, "When acting in an official capacity, all law enforcement officers shall . . . [d]isplay on their uniforms the name or widely recognized initials of the officer's agency and the officer's last name, badge number, or identification number" and "[u]pon request, verbally provide their agency affiliation and last name, badge number, or identification number." Compl. ¶ 37; Answer ¶ 37. "Any person who willfully or knowingly violates [the Ordinance] shall, upon conviction thereof, be subject to a forfeiture of not less than $5,000, nor more than $10,000." Compl. ¶ 39; Answer ¶ 39.

The Ordinance thus places both a "prohibition" and a "mandate" on federal officers: They must not wear masks and they must identify themselves. *CoreCivic*, 145 F.4th at 321 (quoting *Hancock*, 426 U.S. at 180). The Ordinance's mask prohibition and identification mandate also "require[] qualifications in addition to those that the [Federal] Government has pronounced sufficient." *Johnson*, 254 U.S. at 57. The Ordinance "controls how the [Federal G]overnment conducts specifically governmental functions," namely, the enforcement of criminal, customs, and immigration laws of the United States by imposing municipal uniform and identification requirements and dictating the circumstances under which exceptions are applicable. *California III*, 2026 WL 3071018, at *5. Indeed, the Ordinance is contrary to the intergovernmental-immunity principle that "[t]he United States may perform its functions without conforming to the police regulations of a [S]tate." *Arizona*, 283 U.S. at 451. Moreover, violating the Ordinance leads to a conviction and forfeiture. *See Tennessee v. Davis*, 100 U.S. 257, 263 (1879) ("If, when thus acting

[on behalf of the Federal Government], and within the scope of their authority, [federal] officers can be arrested and brought to trial in a State court, for an alleged offence against the law of the State, yet warranted by the Federal authority they possess, and if the general government is powerless to interfere at once for their protection,—if their protection must be left to the action of the State court,—the operations of the general government may at any time be arrested at the will of one of its members.").

The City cannot avoid the conclusion that the Ordinance directly regulates the Federal Government by pointing to its exceptions. The Ordinance does not apply to federal officers "engaged in an undercover operation" or "performing . . . special weapons and tactics team responsibilities." Compl. ¶ 36; Answer ¶ 36. And the Ordinance permits federal officers to wear masks "to provide protection against cold or other extreme weather during assignments requiring [them] to be outdoors for long periods of time." Compl. ¶ 35; Answer ¶ 35. But these exceptions do not cure the constitutional problem. Limited carveouts do not alter the fact that the City is regulating federal officers' conduct in the first place. After all, "the burden of the regulation on federal operations, whether substantial or otherwise, is irrelevant because . . . there is no de minimis exception to the United States's immunity from direct regulation." *California III*, 2026 WL 3071018, at *7. Put differently, "[t]he Supremacy Clause prohibits States from directly regulating federal operations even when regulating *state* operations in the same manner" and "even if [the state law] is no more restrictive than federal law." *Id.* at *5.

Courts have uniformly held that even partial or targeted regulation of federal operations violates intergovernmental immunity. *E.g.*, *California III*, 2026 WL 3071018, at *2 (preliminarily enjoining identification law that excepted officers performing "active undercover operations" and "SWAT or tactical team responsibilities"); *Virginia*, 2026 WL 2411521, at *1 (preliminarily

enjoining mask and identification law that exempted "facial coverings used during SWAT duties, facial coverings necessary for underwater use, and facial coverings when necessary to 'protect against exposure to any toxin, gas, smoke . . . or other hazardous or harmful environmental condition,'" and that did not apply to "undercover drug, gang, or surveillance unit officers if the protection of the officers' identity is necessary as determined by the law-enforcement agency for which the officer works" (alteration in original)); *New York*, 2026 WL 2225423, at *3 (preliminarily enjoining identification law that "d[id] not apply to 'officers engaged in active undercover operations, covert surveillance, other investigative activities where identification would compromise such investigation, or protective detail assignments for a designated person or location where visible identification would materially increase a security risk to the officer or the protected individual' or 'officers using personal protective equipment required for medical or emergency response purposes, where such equipment temporarily prevents visible display of identification'"); *City of Philadelphia*, 838 F. Supp. 3d at 442 (preliminarily enjoining mask and identification law that did not apply to masks worn "to prevent the transmission of airborne illnesses"; "for a religious purpose"; "to safeguard the face or head issued as part of duties associated with a Special Weapons and Tactics team"; or "to protect against smoke or hazardous conditions during fire response or similar emergencies").

The dispositive question therefore is not the extent of the regulation or burdens imposed by the Ordinance, but whether the Ordinance is a direct regulation of the Federal Government's operations or personnel. This Court need not look any further than the plain language of the Ordinance itself to conclude that it is. Because the Ordinance directly regulates the Federal Government, it cannot survive unless Congress authorized it. *Mayo*, 319 U.S. at 448. But Congress did not. *See California III*, 2026 WL 3071018, at *2 (stating that similar state identification law

"attempts to directly regulate the United States in its performance of governmental functions, and Congress has not authorized such regulation"). Thus, it matters not whether the Ordinance regulates state and federal officers the same way, *see Johnson*, 254 U.S. 56–57; comports with federal standards, *see City of Arcata*, 629 F.3d at 991–92; and imposes only minimal burdens on the Federal Government, *see California III*, 2026 WL 3071018, at *5. Without Congress's approval, "States have no power, by taxation or otherwise, to retard, impede, burden, or in any manner control, the operations of the constitutional laws enacted by Congress." *M'Culloch*, 17 U.S. at 436. Here, Congress gave no approval, so the Ordinance violates the Supremacy Clause.

**B. The United States is entitled to permanent injunctive and declaratory relief.**

The United States is entitled to permanent injunctive relief. "Permanent injunctive relief is appropriate if the applicant demonstrates" four things: (1) "that it has suffered an irreparable injury"; (2) "that remedies available at law, such as monetary damages, are inadequate to compensate for that injury"; (3) "that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted"; and (4) "that the public interest would not be disserved by a permanent injunction." *Liebhart v. SPX Corp.*, 998 F.3d 772, 779 (7th Cir. 2021) (quoting *eBay Inc. v. MercExchange, LLC.*, 547 U.S. 388, 391 (2006)). And the balance of harms and public interest factors "merge when the [Federal] Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009). Here, the injunction factors are met.

*First*, with respect to the first two permanent-injunction factors, the United States has suffered an irreparable injury that no remedy at law can adequately compensate. "The existence of a continuing constitutional violation constitutes proof of an irreparable harm . . . ." *Preston v. Thompson*, 589 F.2d 300, 303 n.3 (7th Cir. 1978). And where a municipality violated the constitution by "enacting the [challenged law] in the first place," "the *only* appropriate remedy is a declaration that [a challenged law] is invalid and an injunction forbidding its enforcement." *Ezell*

*v. City of Chicago*, 651 F.3d 684, 699 n.10 (7th Cir. 2011). Here, the City has threatened to enforce the Ordinance against the Federal Government, and the Ordinance violates the Supremacy Clause. This constitutional violation will persist unless this Court enjoins the City from enforcing the Ordinance against federal law enforcement officials. *See California III*, 2026 WL 3071018, at *8 (stating "*irreparable harm necessarily results* from allowing California to enforce a law we hold is invalid, ab initio, under the Supremacy Clause" (emphasis added)). The United States thus satisfies the first two permanent-injunction factors.

*Second*, the next two, merged permanent-injunction factors also favor the United States. "Enforcing a constitutional right is in the public interest," *Whole Women's Health All. v. Hill*, 937 F.3d 864, 875 (7th Cir. 2019), and "[f]rustration of federal statutes and prerogatives are not," *United States v. Alabama*, 691 F.3d 1269, 1301 (11th Cir. 2012); *see also Preston*, 589 F.2d at 303 n.3 ("The existence of a continuing constitutional violation constitutes proof of an irreparable harm, *and its remedy certainly would serve the public interest*." (emphasis added)). Here, the City's threatened enforcement of the Ordinance frustrates the Federal Government's sovereign prerogatives such as the enforcement of federal criminal law in Milwaukee. The merged balance-of-hardships and public-interest factors accordingly favor the United States.

Courts have repeatedly recognized that the United States is entitled to an injunction preliminarily enjoining state laws that directly regulate the Federal Government. *See, e.g.*, *California III*, 2026 WL 3071018; *Virginia*, 2026 WL 2411521; *New York*, 2026 WL 2225423; *City of Philadelphia*, 838 F. Supp. 3d 436. And "in granting or denying a *preliminary* injunction, the court . . . decide[s] only the plaintiffs' *likelihood of success on the merits*, whereas in granting or denying a *permanent* injunction, it . . . decide[s] their *actual success on the merits*." *Lacy v. Cook County*, 897 F.3d 847, 859 (7th Cir. 2018) (citing *Michigan v. U.S. Army Corps of Eng'rs*,

667 F.3d 765, 782 (7th Cir. 2018)). Here, on the pleadings, United States succeeds on the merits of its claim that the Ordinance directly regulates the Federal Government. The United States is likewise entitled to permanent injunctive relief here.

The United States is also entitled to declaratory relief. Where, as here, a plaintiff succeeds on the merits of a constitutional challenge to a statute and the other permanent-injunction factors are met, "the *only* appropriate remedy is" permanent injunctive relief "and a declaration that the [challenged law] is invalid." *Ezell*, 651 F.3d at 699 n.10; *see also Ellis v. Dyson*, 421 U.S. 426, 432 (1975) (explaining that "where there is simply a threatened prosecution" for violating a state law, "the opportunity for adjudication of constitutional rights in a federal forum, as authorized by the Declaratory Judgment Act, becomes paramount" (citing *Steffel v. Thompson*, 415 U.S. 452, 462–63 (1974))). For the reasons above, the United States prevails on its constitutional challenge. It is therefore entitled to a declaration declaring the Ordinance is invalid under the Supremacy Clause.

On the pleadings, the United States is entitled to judgment as a matter of law. *See California III*, 2026 WL 3071018, at *6 (concluding that "[t]he United States is . . . likely—*indeed, certain*—to succeed on the merits of its facial challenge to" California's identification law (emphasis added)).

## **CONCLUSION**

The Court should grant the United States' motion for judgment on the pleadings and issue judgment for the United States.

Dated: October 30, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

CODY M. POPLIN
Deputy Assistant Attorney General

HILARY K. PERKINS
Director

JACQUELINE COLEMAN SNEAD
Deputy Director

*/s/ Alexander William Furtaw*
Alexander William Furtaw (District of Columbia Bar No. 90036368)
Trial Attorney
Enforcement & Affirmative Litigation Branch
U.S. Department of Justice
450 5th Street, NW
Washington, D.C. 20001
Tel.: (202) 598-5667
Email: Alexander.W.Furtaw@usdoj.gov

*/s/ Pooja Majmundar*
Pooja Majmundar (DC Bar No. 1779930)
Trial Attorney
Enforcement & Affirmative Litigation Branch
U.S. Department of Justice
450 5th Street, NW
Washington, D.C. 20001
Telephone: (202) 598-0280
Email: Pooja.D.Majmundar@usdoj.gov

*Attorneys for the United States of America*